Philip S. Van Der Weele, OSB #863650
phil.vanderweele@klgates.com
K&L GATES LLP
One SW Columbia Street, Suite 1900
Portland, Oregon 97204
Telephone: (503) 228-3200

Aaron Gott (admitted *pro hac vice*)
aaron.gott@bonalawpc.com
BONA LAW PC
331 2nd Avenue, Suite 420
Minneapolis, MN 55401
Telephone: (612) 968-7758

James Lerner (admitted *pro hac vice*)
james.lerner@bonalawpc.com
287 Park Avenue South, Suite 422
New York, NY 10010
Telephone: (212) 634-6861

***Counsel for Plaintiff***

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| PHARMACYCHECKER.COM LLC,<br><br>*Plaintiff*,<br>vs.<br><br>LEGITSCRIPT LLC,<br><br>*Defendant*. | Civil Action No.3:22-cv-00252-MHS<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Judge Michael H. Simon |

# TABLE OF CONTENTS

FACTUAL BACKGROUND ................................................................................. 1

PROCEDURAL BACKGROUND ......................................................................... 6

LEGAL STANDARD ........................................................................................... 7

ARGUMENT ......................................................................................................... 8

   I.   THE COMPLAINT SUFFICIENTLY PLEADS LEGITSCRIPT'S
   PARTICIPATION IN THE CONSPIRACY .................................................. 8

     A.  Rule 12(b)(6) Only Requires Plausible Grounds to Infer an Antitrust
     Conspiracy .......................................................................................... 9

     B.  The Complaint Alleges a Context that Plausibly Suggests LegitScript
     Joined the Conspiracy ....................................................................... 10

   II.  THE CLAIM AGAINST LEGITSCRIPT IS NOT BARRED BY THE STATUTE
   OF LIMITATIONS ..................................................................................... 14

     A.  An Antitrust Claim Accrues Each Time a Plaintiff Is Injured by an Act of a
     Conspirator ........................................................................................ 15

     B.  PharmacyChecker.com's Claim Accrued When It Was Injured by the
     Conspirators' Acts in 2018 and 2019 ............................................... 15

CONCLUSION.................................................................................................... 18

# <u>TABLE OF AUTHORITIES</u>

**Cases**          **Page(s)**

*Am. Med. Ass'n v. United States,*
130 F.2d 233 (D.C. Cir. 1942), *aff'd*, 317 U.S. 519 (1943) .................................... 13

*Am. Tobacco v. United States,*
328 U.S. 781 (1946) ...................................................................................... 9

*In re Animation Workers Antitrust Litig.,*
87 F. Supp. 3d 1195 (N.D. Cal. 2015) .......................................................... 15, 16

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ...................................................................................... 7

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ............................................................................ 8, 9, 10, 11

*Beneficial Standard Life Ins. Co. v. Madariaga,*
851 F.2d 271 (9th Cir. 1988) .......................................................................... 16

*In re Citric Acid Litig.,*
191 F.3d 1090 (9th Cir. 1999) ........................................................................ 11

*Colo. ex rel. Woodard v. Ramsour Bros.,*
No. 84-CV-802, 1986 U.S. Dist. LEXIS 23011, 1986 WL 7823 (D.
Colo. July 9, 1986) ...................................................................................... 15

*ES Dev. v. RWM Enters.,*
939 F.2d 547 (8th Cir. 1991) ...................................................................... 9, 10

*In re Flash Memory Antitrust Litig.,*
643 F. Supp. 2d 1133 (N.D. Cal. 2009) ............................................................ 8

*Kendall v. Visa U.S.A., Inc.,*
518 F.3d 1042 (9th Cir. 2008) ...................................................................... 9, 12

*Kline v. Coldwell, Banker & Co.,*
508 F.2d 226 (9th Cir. 1974) .......................................................................... 12

*Laumann v. NHL,*
56 F. Supp. 3d 280 (S.D.N.Y. 2014) ................................................................ 14

*Lazy Y Ranch Ltd. v. Behrens,*
546 F.3d 580 (9th Cir. 2008) .......................................................................... 7

*In re Musical Instruments & Equip. Antitrust Litig.*,
   798 F.3d 1186 (9th Cir. 2015) ........................................................................ 10, 11

*Natkin v. Am. Osteopathic Ass'n*,
   No. 16-CV-1494, 2019 U.S. Dist. LEXIS 67853, 2019 WL 1763242
   (D. Or. Apr. 22, 2019) ........................................................................................ 17

*SmileDirectClub, Ltd. Liab. Co. v. Sulitzer*,
   No. 20-55735, 2022 U.S. App. LEXIS 6940 (9th Cir. Mar. 17, 2022) ................. 12

*In re Text Messaging Antitrust Litigation*,
   630 F.3d 622 (7th Cir. 2010) ............................................................................. 11

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   586 F. Supp. 2d 1109 (N.D. Cal. 2008) ............................................................... 8

*Theatre Enters., Inc. v. Paramount Film Distrib. Corp.*,
   346 U.S. 537 (1954) ............................................................................................. 9

*United States v. Falstaff Brewing Corp.*,
   410 U.S. 526 (1973) ........................................................................................... 10

*United States v. Lischewski*,
   No. 18-cr-00203-EMC-1, 2019 U.S. Dist. LEXIS 88195 (N.D. Cal.
   May 24, 2019) ..................................................................................................... 14

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
   401 U.S. 321 (1971) ..................................................................................... 15, 16

## Statutes and Rules

15 U.S.C. § 1 .............................................................................................. 1, 7, 15

15 U.S.C. § 15b ............................................................................................ 15, 16

Fed. R. Civ. P. 12 .......................................................................................*passim*

## Other Authorities

6 Areeda & Hovenkamp, *Antitrust Law* ¶ 1425 (2d ed. 2003) .................................... 11

LegitScript's motion to dismiss offers arguments that have already been made, considered, and rejected in the Southern District of New York as to four other defendants. For LegitScript they fare no better: PharmacyChecker.com's complaint alleges sufficient facts to plausibly suggest that LegitScript joined an unlawful conspiracy to restrain trade and thus states a claim for relief under Section 1 of the Sherman Act. Moreover, the statute of limitations does not bar PharmacyChecker.com's claim, as the Southern District of New York already held: while the conspiracy began more than a decade before the case, PharmacyChecker.com's claim did not accrue until it first suffered its claimed damages from overt acts in 2018 and 2019. And, because the conspiracy continues— as does PharmacyChecker.com's injury—so does the claim accrual. The Court should therefore deny LegitScript's motion.

## FACTUAL BACKGROUND

This case is about a decade-long scheme among direct competitors and a network of organizations funded by pharmaceutical manufacturers, large pharmacy chains, and other pharmacy interests to restrain trade in the markets for online pharmacy verification services and comparative drug pricing information, which harmed competition and injured PharmacyChecker.com.

***LegitScript & Its Co-Conspirators.*** LegitScript is a for-profit, privately managed verification and monitoring service for online pharmacies, and is the only private service recognized by The National Association of Board of Pharmacies

("NABP"). ¶9.[1] LegitScript is a direct competitor of PharmacyChecker.com. ¶¶9, 28. Its co-conspirators are associations comprising or funded by pharmaceutical manufacturers, pharmacies, and pharmacists, and are defendants in the action pending in the Southern District of New York. ¶¶6–10, 13.

NABP is an association of boards of pharmacies controlled by private pharmacists and pharmacies and a direct competitor of PharmacyChecker.com (and LegitScript) in the online pharmacy verification market. ¶¶6, 31. The Alliance of Safe Online Pharmacies ("ASOP") is an alliance of pharmacy and pharmaceutical interests founded by LegitScript, the American Pharmacists Association, Eli Lilly & Co., and the National Association of Chain Drug Stores. ¶7. The Center for Safe Internet Pharmacies Ltd. ("CSIP") is a collection of internet commerce gatekeepers, including Google and Microsoft Bing, which ASOP and LegitScript organized. ¶8. And the Partnership for Safe Medicines, Inc. ("PSM") has orchestrated a wide-reaching campaign against lower-cost foreign drug imports funded by PhRMA and its members. ¶10.

*Plaintiff*. PharmacyChecker.com promotes and protects consumer health by evaluating the practices of online pharmacies, both in the United States and abroad. ¶5. It operates a rigorous accreditation program to inform consumers of legitimate pharmacies that observe safe pharmacy practices and provides drug-price comparison information allowing consumers worldwide to find the lowest prices for their medicine, whether dispensed in the United States or abroad. ¶¶5, 27, 30.

---

1.    All paragraph references are to the Amended Complaint filed October 21, 2019 (Dkt. 82).

This information is valuable to consumers and other market participants for many reasons. **First**, it helps consumers make their own purchasing decisions by providing information about the safety and prices of medicine bought through pharmacy websites worldwide. ¶¶92, 107c, 134. **Second**, it informs the public more broadly that drug prices in the United States are in many cases artificially inflated. Consumers can use that information when deciding whether to purchase and whether to pressure the drug companies or pharmacies to lower prices, or even to raise concerns with government officials. ¶¶15, 21. **Third**, some consumers of the information use it as data for research purposes or to support their policy-advocacy efforts. ¶45. **Fourth**, it facilitates competition for the pharmacy websites that participate in the program. ¶107f. **Fifth**, by providing detailed and transparent pricing information worldwide, it makes it harder for pharmaceutical manufacturers to coordinate or otherwise conspire on pricing because of increased pricing transparency.

PharmacyChecker.com does not buy, sell, process orders for, import, or distribute prescription medicine. ¶60. It plays no role in the ordering or dispensing of prescription medicine, either in the United States or abroad. *Id.*

**Concerted Action**. LegitScript, its co-conspirators, and the pharmaceutical and pharmacy interests behind them, mobilized a well-organized effort by creating a network of mostly nonprofit organizations with euphemistic names, common ties, and a unified purpose: to cut off consumer access to information about safe online pharmacies and comparative drug pricing information. ¶25. They implemented this

strategy through misinformation campaigns and private "shadow regulation," restraining competition in the relevant and related markets. *Id.*

PharmacyChecker.com is one of the conspiracy's prime targets, as an adversary whose very existence is antagonistic to their goals of keeping consumers captive and in the dark about that captivity. ¶27. By blocking consumers' access to PharmacyChecker.com, LegitScript and its co-conspirators control the markets for information about pharmacy safety and drug prices, which serves their broader goals in the related prescription drug market(s). The conspirators have engaged in a sophisticated, years-long, multi-faceted scheme to achieve these ends. Among other things, the conspirators:

- Lobbied Google, Bing, and Yahoo! to terminate contracts with PharmacyChecker.com for verification services and, instead, enter into agreements with LegitScript or NABP. ¶78.

- Repeatedly tried to blacklist PharmacyChecker.com by labeling it a rogue drug website dangerous to public health. In 2010, NABP added PharmacyChecker.com to its "Not Recommended Sites" list which, according to NABP, includes sites "with serious and blatant violations posing a significant danger to patient health." ¶79. In December 2018, NABP again added PharmacyChecker.com to its Not Recommended Sites list despite previously removing it from the list. ¶87.

- Jointly developed a new gatekeeping function: a global top-level domain—.pharmacy—and created the eligibility requirements while working

with CSIP members to implement new restrictions to prevent non-.pharmacy websites from advertising, receiving merchant payments, and participating in other important aspects of Internet commerce. ¶80.

•    Asked the International Corporation for Assigned Names and Numbers ("ICANN") to require private domain registrars to take down any pharmacy website that is not approved by LegitScript or NABP (they were unsuccessful). ¶81.

•    Coerced U.S. pharmacy websites not to do business with PharmacyChecker.com or even to share prices of pharmaceutical products with PharmacyChecker.com or risk losing their certifications. ¶¶82–83.

•    Persuaded security vendors to categorize and filter PharmacyChecker.com as "not safe," "malicious," or "pornography." ¶84. Such classifications are used to deny access by users subject to parental controls, firewalls, and enterprise network filters. *Id*.

•    Engaged in a sustained and coordinated misinformation campaign designed to harm PharmacyChecker.com and mislead consumers. These efforts included "jointly issu[ing] false and misleading paid news release[s]" and publishing similar materials, often repeating the same false information asserted by co-conspirators. ¶¶85–86. These messages appeared in press releases, promoted search results, blog posts, and newspaper advertisements. ¶85.

Page 5-    OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

- After NABP re-added PharmacyChecker.com to its blacklist, the conspirators convinced CSIP members, including Google and Bing, to incorporate the Not Recommended Sites list by downranking its search results or adding warning messages designed to paint PharmacyChecker.com as unsafe and unlawful. ¶¶92–93, 95. CSIP adopted its own blacklist like the Not Recommended Sites list and gave access to CSIP members through a data-sharing portal managed by LegitScript. ¶94.

## PROCEDURAL BACKGROUND

PharmacyChecker.com filed its complaint on August 13, 2019 in the U.S. District Court for the Southern District of New York, and then filed an amended complaint on October 21, 2019. Dkts. 1, 82. PharmacyChecker.com alleged an antitrust conspiracy against five defendants—NABP, ASOP, CSIP, PSM, and LegitScript. *See id.*

The defendants jointly moved to dismiss PharmacyChecker.com's claims under Rule 12(b)(6). *See* Dkt. 101. The defendants challenged the substantive allegations of antitrust conspiracy and the claims on statute of limitations grounds, as well as the complaint's market definitions and PharmacyChecker.com's antitrust injury. *See id.* ASOP, PSM, and LegitScript each also filed supplemental 12(b)(6) motions expanding on those arguments. Dkts. 98, 105, 121. Additionally, LegitScript argued under Rule 12(b)(2) that it was not subject to personal jurisdiction in the Southern District of New York. Dkt. 121.

The S.D.N.Y. court, the Honorable Kenneth M. Karas presiding, rejected the arguments of the defendants' joint motion, as well as the supplemental 12(b)(6)

motions of ASOP and PSM, in finding that PharmacyChecker.com had sufficiently alleged a claim under Section 1 of the Sherman Act. Dkt. 129 at 23. Specifically, the S.D.N.Y. court concluded PharmacyChecker.com had sufficiently alleged the existence of a conspiracy, that the conspirators undertook a *per se* illegal group boycott, and that PharmacyChecker.com suffered antitrust injury. *Id.* at 23, 30, 52. It also concluded that PharmacyChecker.com sufficiently pleaded that NABP, ASOP, CSIP, and PSM had each participated in that conspiracy. *Id.* at 30, 46, 49.

But the S.D.N.Y. court granted LegitScript's motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction on the basis that New York's long-arm statute did not provide for jurisdiction over LegitScript. Dkt. 129 at 9–21. Because of that determination, the court did not specifically assess whether the conspiracy allegations relating to LegitScript were sufficient. Rather than amend the complaint, PharmacyChecker.com moved to sever and transfer the claim against LegitScript to this district, where LegitScript is subject to personal jurisdiction. Dkt. 129 at 20–21; Dkt. 154. The S.D.N.Y. court granted the motion and transferred PharmacyChecker.com's claims against LegitScript to this District. Dkt. 219. LegitScript then moved to dismiss. Dkt. 238.

## LEGAL STANDARD

On a motion to dismiss, the Court should accept all allegations as true and construe them in the light most favorable to the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "In general, the inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008) (citation omitted). A

complaint alleging an antitrust conspiracy thus must merely present "enough factual matter (taken as true) to suggest that an agreement was made" in order to "raise a reasonable expectation that discovery will reveal evidence of an illegal agreement." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The touchstone is plausibility. "Specific facts are not necessary; the statement need only give the defendants fair notice of what the claim is and the grounds upon which it rests." *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1141 (N.D. Cal. 2009) (citations omitted).

LegitScript repeatedly asks the Court to construe allegations and draw inferences ***against*** PharmacyChecker.com and to prematurely resolve factual disputes in its favor. This is improper at the motion to dismiss stage, and particularly so for antitrust claims, which are fact-intensive, making them ill-suited for resolution on a Rule 12(b)(6) motion. *See, e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1132 (N.D. Cal. 2008) ("Defendants may renew their arguments regarding notice and due diligence in a motion for summary judgment upon a fuller factual record, as these are fact-intensive inquiries inappropriate for resolution at this preliminary stage of the litigation.").

## ARGUMENT

## I.    THE COMPLAINT SUFFICIENTLY PLEADS LEGITSCRIPT'S PARTICIPATION IN THE CONSPIRACY

LegitScript does not argue there was no conspiracy, and for good reason: the S.D.N.Y. court already decided that the amended complaint sufficiently alleged an antitrust conspiracy—a *per se illegal* group boycott—of PharmacyChecker.com. Instead, LegitScript argues that the allegations relating to it—despite being

sufficient as to each of the other defendants—are insufficient. But the complaint provides myriad detailed allegations of LegitScript's participation in the conspiracy. And that is more than enough to meet the applicable standard: plausibility.

## A. Rule 12(b)(6) Only Requires Plausible Grounds to Infer an Antitrust Conspiracy

To state a claim under Section 1, a plaintiff must allege facts showing "(1) a contract, combination or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain trade or commerce . . . ; (3) which actually injures competition." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008). The question prompting Section 1 liability is "whether the challenged anticompetitive conduct 'stems from [lawful] independent decision or from an agreement, tacit or express.'" *Twombly*, 550 U.S. at 553 (quoting *Theatre Enters., Inc. v. Paramount Film Distrib. Corp.*, 346 U.S. 537, 540 (1954)). Therefore, a claim brought under Section 1 must contain sufficient factual matter, taken as true, to plausibly "suggest that an agreement was made." *Id.* at 556.

"Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of an illegal agreement." *Kendall*, 518 F.3d at 1047. "No formal agreement is necessary to constitute an unlawful conspiracy." *Am. Tobacco v. United States*, 328 U.S. 781, 809 (1946). Indeed, conspiracy may be inferred from the behavior of the alleged conspirators. *See, e.g.*, *ES Dev. v. RWM Enters.*, 939 F.2d 547, 553–54 (8th Cir. 1991) ("[A]ntitrust plaintiff may prove the existence of a combination or conspiracy by providing either direct or

circumstantial evidence sufficient to 'warrant a finding that the conspirators had a unity of purpose or common design and understanding, or meeting of the minds in an unlawful arrangement' "); *United States v. Falstaff Brewing Corp.*, 410 U.S. 526, 534 n.13 (1973) ("circumstantial evidence is the lifeblood of antitrust law").

**B.    The Complaint Alleges a Context that Plausibly Suggests LegitScript Joined the Conspiracy**

LegitScript does not deny the existence of an antitrust conspiracy, which the S.D.N.Y. court already found was sufficiently alleged. Instead, LegitScript insists that nothing links ***it*** to that conspiracy, arguing that its conduct is simply "independent" or "parallel" action from which the Court cannot infer an unlawful agreement. Despite LegitScript's suggestion, parallel action is not irrelevant to the inquiry. To the contrary, parallel action is central to it, particularly in cases involving circumstantial evidence—which is typical of antitrust cases, given that such agreements are unlawful. *See Falstaff Brewing*, 410 U.S. at 534 n.13 ("[C]ircumstantial evidence is the lifeblood of antitrust law.").

Courts simply require more than ***just*** parallel action for a claim to survive a motion to dismiss. As Judge Karas noted, "[t]o plausibly allege a conspiracy through circumstantial evidence, Plaintiff may allege, first, parallel action and, second, the parallel action 'must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action.' " Dkt. 129 at 32 (quoting *Twombly*, 550 U.S. at 557); *see also In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1194 (9th Cir. 2015) (the Ninth

Circuit requires parallel conduct and "plus factors" in cases of circumstantial evidence) (citing *In re Citric Acid Litig.*, 191 F.3d 1090, 1102 (9th Cir. 1999)).

These so-called plus factors are sufficient if they place the parallel behavior in a context that raises the "suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." *Twombly*, 550 U.S. at 556–57 (quoting 6 Areeda & Hovenkamp, *Antitrust Law* ¶ 1425, at 167–185 (2d ed. 2003)). A complaint should plead facts suggesting the conduct "would probably not result from chance, coincidence, independent responses to common stimuli, or mere interdependence unaided by an advance understanding among the parties." *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 628 (7th Cir. 2010).

Here, "plus factors" abound showing that LegitScript not only joined the conspiracy—it was one of its key architects.

***First***, LegitScript brought two of the conspirators into existence. LegitScript launched ASOP with pharmaceutical and pharmacy interests, including Eli Lilly and the National Association of Chain Drug Stores. ¶67a. And LegitScript also founded CSIP, whose members include key internet gatekeepers such as Facebook, Google, Mastercard, and Microsoft. ¶67b. ASOP publicly stated LegitScript "has had a foundational role in establishing our organization's key efforts" (¶68), which include "requiring Internet search engines, domain name registrars, and other 'gatekeepers' to stop enabling rogue Internet drug outlets" (which they have since designated PharmacyChecker.com). ¶70. A representative of Eli Lilly also stated in an email to an Obama administration official that "ASOP is the manner in which Lilly (and

PhRMA as an observer) is working with other key stakeholders to . . . collaborate to address the problem of online drug sellers/counterfeits, as we cannot do this as one company, or as PhRMA alone." ¶69. The email went on to specifically list NABP, PSM, and LegitScript as among those key stakeholders. While LegitScript's membership alone is not enough, these allegations show that LegitScript "actively participated in an individual capacity in the scheme." *SmileDirectClub, LLC v. Sulitzer*, No. 20-55735, 2022 U.S. App. LEXIS 6940, at \*15 (9th Cir. Mar. 17, 2022) (citing *Kline v. Coldwell, Banker & Co.*, 508 F.2d 226, 232 (9th Cir. 1974)); *Kendall*, 518 F.3d at 1048.

**Second**, LegitScript forged relationships with internet search companies to persuade them to exclude PharmacyChecker.com. PharmacyChecker.com alleges that "LegitScript sought out contracts from internet gatekeepers and others . . . to perform verifications for those companies . . . with the intention of excluding international pharmacies from the marketplace." ¶66.

**Third**, LegitScript provided technical support to at least one co-conspirator to support its efforts to exclude PharmacyChecker.com and other so-called "rogue" sites. The complaint alleges that, after LegitScript helped establish CSIP, CSIP operated a website—www.verifybeforeyoubuy.org—that it promoted as "Powered by LegitScript." ¶68. The CSIP website featured "a LegitScript search box" and provided pharmacy search results that were "verified by LegitScript." *Id.* CSIP also had a data-sharing portal for its members that was managed by LegitScript. ¶94.

*Fourth*, LegitScript worked with its co-conspirators to erect additional barriers to exclude PharmacyChecker.com and others. PharmacyChecker.com alleges that LegitScript jointly developed a new global domain name system—".pharmacy"— to be administered by NABP and which was desired to serve as a gatekeeping function. ICANN was also separately lobbied by NABP to require private domain registrars to take down any pharmacy website that was not approved by NABP or its direct competitor, LegitScript. ¶81. There are other examples in the complaint showing NABP's actions against interest by endorsing and persuading others to use LegitScript's services. *See, e.g.*, ¶¶73b, 78.

Thus, the above shows that LegitScript's challenge conduct was more than just independent or parallel action. Further belying LegitScript's assertion of independent action is its concession of "coordination" between it and other co-conspirators, though LegitScript suggests it was "lawful." Dkt. 238 at 12–13. LegitScript's concession of concerted activity with the other conspirators eviscerates its argument that nothing but independent conduct is alleged.

Moreover, LegitScript's suggestion that its conduct was "lawful" is not only incorrect—and deviates from the facts alleged—but it is also irrelevant. Courts have consistently held that otherwise lawful conduct can support a conspiracy claim where it is undertaken in furtherance of the conspiracy and in pursuit of the conspiracy's aim. *See Am. Med. Ass'n v. United States*, 130 F.2d 233, 251 (D.C. Cir. 1942), *aff'd*, 317 U.S. 519 (1943) ("[I]t is elementary that if the object of a conspiracy is criminal, then evidence of conduct - otherwise lawful - but which is intended to achieve that

criminal objective may properly be received to prove the conspiracy."); *Laumann v. NHL*, 56 F. Supp. 3d 280, 289 (S.D.N.Y. 2014) ("A business decision may be lawful when made unilaterally but unlawful when made pursuant to an agreement."); *United States v. Lischewski*, No. 18-cr-00203-EMC-1, 2019 U.S. Dist. LEXIS 88195, at *9 n.2 (N.D. Cal. May 24, 2019) ("a means of furthering a conspiracy can be lawful."); *see also* Dkt. 129 at 43 (holding that while some of PSM's statements may not only be lawful but protected from liability under *Noerr-Pennington* doctrine, they "may be considered as evidence of conspiracy").

PharmacyChecker.com's complaint pleads sufficient facts to plausibly suggest that LegitScript agreed to join an unlawful conspiracy that LegitScript does not deny was sufficiently alleged as to the S.D.N.Y. defendants. That is all that is required under Rule 12(b)(6).

## II.    THE CLAIM AGAINST LEGITSCRIPT IS NOT BARRED BY THE STATUTE OF LIMITATIONS

A claim accrues at the time of a plaintiff's ***injury***, not simply when an antitrust conspiracy began. And as Judge Karas concluded, all of the conduct giving rise to PharmacyChecker.com's damages occurred ***after*** August 13, 2015 (four years before PharmacyChecker.com filed its complaint). Indeed, PharmacyChecker.com's alleged injury did not occur until December 2018, when it was added to NABP's Not Recommended Sites list, well within the four-year limitations period. ¶87. It is true that LegitScript and its co-conspirators have been part of an ongoing conspiracy for more than a decade. While relevant to PharmacyChecker.com's substantive claims, it does not affect the limitations inquiry.

A.    **An Antitrust Claim Accrues Each Time a Plaintiff Is Injured by
      an Act of a Conspirator**

The statute of limitations for Sherman Act claims is four years. 15 U.S.C.

§ 15b. "In the context of a continuing conspiracy to violate the antitrust laws, . . . each

time a plaintiff is injured by an act of the defendants a cause of action accrues to him

to recover the damages caused by that act and . . . , as to those damages, the statute

of limitations runs from the commission of the act." *Zenith Radio Corp. v. Hazeltine*

*Research, Inc.*, 401 U.S. 321, 338 (1971) (citation omitted).

Further, "[e]vidence of claims which cannot give rise to liability because of a

statute of limitations may be introduced to show the nature of the transactions under

scrutiny and to establish a continuing course of conduct." Dkt. 129 at 62 (quoting

*Colo. ex rel. Woodard v. Ramsour Bros.*, No. 84-A-802, 1986 U.S. Dist. LEXIS 23011,

at *17 (D. Colo. July 9, 1986)).

B.    **PharmacyChecker.com's Claim Accrued When It Was Injured
      by the Conspirators' Acts in 2018 and 2019**

LegitScript is correct that the amended complaint pleads a conspiracy that has

stretched for more than eleven years, and many allegations detail conduct that

occurred more than four years before the complaint was filed. But LegitScript's

argument confuses the important distinction between allegations of conspiracy and

claims for damages. PharmacyChecker.com seeks damages for injuries that have

occurred within the four-year statute of limitations period, and that is what matters.

The statute of limitations does not apply to allegations; it applies to claims.

And a claim accrues at the time of a plaintiff's *__injury__*. *See In re Animation Workers*

*Antitrust Litig.*, 87 F. Supp. 3d 1195, 1208 (N.D. Cal. 2015) (Under "controlling

Supreme Court and Ninth Circuit authority, Plaintiffs' antitrust claim[] began to

accrue at the time of injury."). As the Supreme Court stated in *Zenith Radio*:

> Generally, [an antitrust cause] of action accrues and the statute begins
> to run when a defendant commits an act that injures a plaintiff's
> business . . . . This much is plain from the treble-damage statute
> itself. . . . [E]ach time a plaintiff is injured by an act of the defendants a
> cause of action accrues to him to recover the damages caused by that act
> and that, as to those damages, the statute of limitations runs from the
> commission of the act.

401 U.S. at 338; *see also Beneficial Standard Life Ins. Co. v. Madariaga*, 851 F.2d

271, 274–75 (9th Cir. 1988) ("In other actions governed by 15 U.S.C. §15b, the

plaintiff's knowledge is generally irrelevant to accrual, which is determined according

to the date on which injury occurs."). "Simply put, both the Ninth Circuit and the U.S.

Supreme Court have long assumed as a basic principle of antitrust law that antitrust

claims accrue at the time of injury." *Animation*, 87 F. Supp. 3d at 1209.

LegitScript repeats the same statute of limitations argument, almost verbatim,

that the S.D.N.Y. court already rejected when it held that "[a]ll of the conduct that

allegedly gave rise to damages claims occurred after August 13, 2015." Dkt. 129 at

6. [2] The complaint alleges overt acts by the conspirators aimed at

PharmacyChecker.com between December 2018 and July 2019. In December 2018,

PharmacyChecker.com was added to NABP's Not Recommended Sites list. ¶87. Then

in June and July 2019, the conspirators began running advertisements targeting

PharmacyChecker.com and stating, "Choose a Safe Pharmacy" and "It's not worth

the risk." ¶93. And, in July 2019, users of the Bing search engine began seeing a red

---

2.    August 13, 2015 is four years before the complaint was filed on August 13,
2019. Dkt. 1.

caution shield and "WARNING" box when trying to click on search results for pages from PharmacyChecker.com and PharmacyCheckerBlog.com. ¶95. Text in the box read: "Warning. The National Association of Boards of Pharmacy (NABP) includes this site on its Not Recommended list. We recommend that you learn more and verify your pharmacy before making online health purchases." *Id*.

And PharmacyChecker.com's alleged injury did not occur until 2019, when these warnings and ads, which threatened and discouraged potential visitors to PharmacyChecker.com, and diverted them instead to NABP- and LegitScript-approved sites. ¶¶95, 109–112. The conspirators convinced CSIP members, including Google and Bing, to incorporate the Not Recommended Sites list by downranking its search results or adding warning messages designed to paint PharmacyChecker.com as unsafe and unlawful. ¶¶92–93, 95. These actions devastated PharmacyChecker.com's search results and internet traffic, driving its traffic down 76%, resulting in a substantial loss of ad revenue. ¶95.

Further, where LegitScript "allegedly played a role in the conspiracy and the [complaint] does not allege a date, there is no basis for the Court to [dismiss] on statute of limitations grounds." Dkt. 129 at 62 (citing *Natkin v. Am. Osteopathic Ass'n*, No. 16-CV-1494, 2019 U.S. Dist. LEXIS 67853, at *49 (D. Or. Apr. 22, 2019) ("The fact that no date is alleged . . . means that [Defendants] cannot rely on the statute of limitations on a motion to dismiss."). Here, as Judge Karas recognized, many relevant allegations are "undated," including that LegitScript potentially

Page 17-    OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

"persuaded vendors to categorize PharmacyChecker.com as not safe, malicious, or pornography . . . ." Dkt. 129 at 63 n.24 (citing ¶¶ 84, 85(g)).

Finally, to the extent that alleged acts occurred before August 13, 2015, those allegations are relevant and permissible. Indeed, they speak to other elements of PharmacyChecker.com's antitrust claim. But they do not affect the statute of limitations analysis. In fact, Judge Karas rejected the very same argument that LegitScript repeats here—that allegations pre-dating August 13, 2015 should not be considered—concluding that those allegations can serve "as evidence of a continuing conspiracy." Dkt. 129 at 63.

PharmacyChecker.com has been repeatedly injured by a conspiracy that has been ongoing for years, and its claim has re-accrued each time it has been reinjured. Nevertheless, PharmacyChecker.com alleges its claim first accrued in 2018, when it was first injured by the conspiracy. Thus, however one views it, PharmacyChecker.com's claim is timely.

## CONCLUSION

For these reasons, PharmacyChecker.com respectfully askes the Court to deny LegitScript's motion to dismiss.

Respectfully submitted,

Dated: April 8, 2022

_s/ Aaron Gott_
Aaron Gott (admitted _pro hac vice_)
aaron.gott@bonalawpc.com
BONA LAW PC
331 2nd Avenue, Suite 420
Minneapolis, MN 55401
Telephone: (612) 968-7758

James Lerner (admitted *pro hac vice*)
BONA LAW PC
287 Park Avenue South, Suite 422
New York, NY 10010
james.lerner@bonalawpc.com

Philip S. Van Der Weele, OSB #863650
phil.vanderweele@klgates.com
K&L GATES LLP
One SW Columbia Street, Suite 1900
Portland, Oregon 97204
Telephone: (503) 228-3200

*Counsel for Plaintiff*
*PharmacyChecker.com*

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of April, 2022, the foregoing Plaintiff's Response in Opposition to Defendant's Motion to Dismiss was filed electronically with the Clerk of the Court using the CM/ECF system which will send a notification of such filing to all counsel of record in this matter.

By: <u>s/ Aaron Gott</u>
Aaron Gott (admitted *phv*)
Bona Law PC
331 Second Avenue South,
Suite 420
Minneapolis, MN 55401
aaron.gott@bonalawpc.com
(612) 284-5001