Richard P. Sybert, OSB No. 833714
rsybert@grsm.com
Direct Dial: (619) 230-7768
Hannah Brown (*Pro Hac Vice*)
hbrown@grsm.com
Matthew Mejia (*Pro Hac Vice*)
mmejia@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97201
Tel: (503) 222-1075
Fax: (503) 616-3600

John T. Mills (*Pro Hac Vice*)
jtmills@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
One Battery Park Plaza, 28th Floor
New York, NY  10004
Tel: (212) 269-5500
Fax: (212) 269-5505

*Attorneys for Defendant LegitScript LLC*

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| PHARMACYCHECKER.COM LLC**,**<br><br>                              Plaintiff,<br><br>         vs.<br><br>LEGITSCRIPT LLC,<br><br>                              Defendant. | Case No. 3:22-cv-00252-SI<br><br>**DEFENDANT LEGITSCRIPT LLC'S MOTION FOR SUMMARY JUDGMENT**<br><br>**Oral argument requested** |

**L.R. 7-1 CERTIFICATION**

Pursuant to LR 7-1(a)(1), LegitScript LLC ("LegitScript")'s counsel conferred by telephone with counsel for Plaintiff PharmacyChecker.com LLC ("PCC") on April 28, 2023 and May 2, 2023.  The parties were unable to resolve the issues.

**MOTION**

LegitScript moves for summary judgment on PCC's Amended Complaint in its entirety pursuant to Federal Rule of Civil Procedure 56 on the basis that issue preclusion bars PCC from re-litigating its antitrust claim in this Court when the exact claim has already been rejected in the Southern District of New York.  Alternatively, LegitScript moves for summary judgment on the same grounds as the defendants in the New York action, because PCC has not suffered any cognizable injury under the Sherman Act and therefore lacks standing as the primary purpose of PCC's business is to enable consumers to illegally buy drugs from foreign pharmacies.

**MEMORANDUM IN SUPPORT**

## I.    INTRODUCTION

PCC initially brought this case against LegitScript, National Association of Boards of Pharmacy ("NABP"), Alliance for Safe Online Pharmacies ("ASOP"), Center for Safe Internet Pharmacies Ltd. ("CSIP") and Partnership for Safe Medicines, Ltd. ("PSM") in the Southern District of New York ("SDNY").  When Judge Karas in SDNY determined that the court did not have personal jurisdiction over LegitScript, PCC "severed" the case as to LegitScript and transferred it to this Court.  Thus, the operative Amended Complaint in the New York Lawsuit and the instant action are exactly the same – each and every factual allegation is the same, and each and every harm allegedly suffered by PCC is founded upon these same factual allegations.

Following completion of discovery in the New York action, NABP, ASOP, CSIP and PSM moved for summary judgment arguing that PCC lacked antitrust standing because the primary purpose of its business is to facilitate illegal conduct by others, namely assisting consumers in the United States in importing prescription drugs for their personal use from pharmacies located in other countries.  Judge Karas granted that motion.  Despite the fact that the claims against LegitScript in this case are <u>exactly the same</u> as those dismissed against the other alleged co-conspirators, and despite the fact that Judge Karas used and applied Ninth Circuit law

---

DEFENDANT LEGITSCRIPT LLC'S MOTION
FOR SUMMARY JUDGMENT – 2

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

in his opinion, PCC contends this Court should come to a different result.  PCC is effectively asking this Court to serve as an appellate judge for SDNY.  This is improper.

Because the claims brought against LegitScript in this case are the same as those in SDNY in which Judge Karas entered judgment against PCC, LegitScript moves for summary judgment under the doctrine of issue preclusion.  Further, and alternatively, LegitScript requests that this Court grant its summary judgment motion due to PCC's lack of standing to maintain its claim under the Sherman Act because PCC's business is completely or almost completely geared toward facilitating illegality.

## II.    STATEMENT OF FACTS

On August 13, 2019, PCC filed its original Complaint in SDNY against ASOP, CSIP, NABP, and PSM, (altogether "New York Defendants"), as well as LegitScript. *PharmacyChecker.com LLC v. National Association of Boards of Pharmacy et al.*, No. 7:19-cv-07577-KMK (SDNY) ("New York Case" or "New York Action").  On August 14, 2019, PCC moved for a preliminary injunction against NABP and CSIP to try to prevent them from continuing conduct that allegedly harms competition, curtails access to prescription medicine on the internet, and posing a threat to PCC's business, reputation, and goodwill.  (ECF Nos. 15–20, 33, 36-38, 40–42, 53–57.)  On September 12, 2019, for reasons stated on the record, the SDNY denied the motion.  (ECF No. 73.)

On October 21, 2019, PCC filed its Amended Complaint, still in SDNY.  (ECF No. 82.) On March 13, 2020, LegitScript, together with ASOP, CSIP, NABP and PSM filed a joint motion to dismiss the Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF Nos. 100–103.)  On that same date, LegitScript also filed a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF Nos. 106, 108–109, 112, 119–121.)

After briefing and oral argument, on March 30, 2021, the SDNY court granted LegitScript's motion to dismiss for lack of personal jurisdiction and denied the motion for failure to state a claim.  (ECF No. 129.)  The SDNY court's dismissal of the claim against LegitScript for lack of personal jurisdiction was without prejudice and provided PCC an opportunity to file a

DEFENDANT LEGITSCRIPT LLC'S MOTION
FOR SUMMARY JUDGMENT – 3

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

second amended complaint within 30 days (ECF No. 129 at 20–21), but PCC chose not to do so and instead sought leave to file a motion to sever and transfer the claim against LegitScript to this Court. (ECF Nos. 139, 141, 144.) PCC thereafter filed that motion, (ECF Nos. 154–156, 165, 168), and the motion was granted, (ECF No. 219).

In February 2022, Judge Karas transferred to this Court PCC's claim against LegitScript. (ECF No. 225), *PharmacyChecker.com LLC v. LegitScript LLC*, 3:22-cv-00252-SI (D. Or.) ("Oregon Case" or "Oregon Action"). In March 2022, LegitScript moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 238.) In July 2022, this Court denied that motion and set a case management schedule. (*See* ECF Nos. 244; 251.)

Simultaneously, the parties in the New York Action engaged in discovery focused on the issue of whether PCC has standing to bring its claim against the New York Defendants. In June 2022, the New York Defendants moved for summary judgment as to PCC's antitrust claim, arguing and citing substantial evidence that PCC lacked antitrust standing. (ECF No. 263, New York Action.) The New York Defendants argued that PCC lacked antitrust standing because the primary purpose of its business is to facilitate illegal conduct by others—namely, assisting consumers in the United States in importing prescription drugs for their personal use from certified pharmacies located in other countries. (*Id.*) PCC opposed the motion. (ECF Nos. 270, 281, 283, New York Action.)

While awaiting decision from SDNY, on November 7, 2022, LegitScript filed a motion to stay the Oregon Action until after the SDNY court decides the motion for summary judgment. (ECF No. 252, Oregon Action.) The court denied the motion on December 8, 2022, finding LegitScript had not met its burden of establishing a need for a stay. (ECF No. 256, Oregon Action.) The Court also noted that it was unclear whether PCC's business was entirely illegal, thus lacking antitrust standing, or whether resolution of that question will require a determination by a jury. (*Id.*) However, the Court indicated that it would not address this issue in its order on the motion to stay. (*Id.* at 5-6.)

In regards to issue preclusion, the Court found,"[i]t is premature for this Court to order a stay on the grounds that collateral estoppel, or issue preclusion, might apply[,] [as the] parties have not yet fully briefed collateral estoppel, . . . there are several factors in the collateral

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

estoppel analysis that have not yet occurred, [and] "[t]here is no motion with similar issues now pending before this Court, and the issue in the New York Lawsuit has not yet been fully litigated or decided."" (*Id.* at 5 n.2.) That is now no longer the case.

## III.    SUMMARY OF SDNY OPINION

On March 28, 2023, after exhaustive briefing and evidentiary presentation, the SDNY court issued an order granting Defendants' motion for summary judgment, (ECF No. 346, New York Action), with a redacted version made available to the public on April 17, 2023, (ECF No. 351 (hereinafter "SDNY MSJ Decision").) The court found that PCC indeed lacks antitrust standing, finding the Eighth's Circuit reasoning in *In re Canadian Imp. Antitrust Litig.*, 470 F.3d 785, 787 (8th Cir. 2006) to be persuasive and that personal importation of prescription drugs is illegal under current federal law. (SDNY MSJ Decision at 41-51.)[1]

PCC argued that its verification and accreditation system "filters out unlawful importations with requirements consistent with lawful importation" and cited provisions in its "Verification Program Accreditation Standards and Guide" that it argued correlate with the FDA's guidance. (*Id.* at 50.) The court disagreed, finding PCC did not establish that its accreditation program actually followed the listed guidance. (*Id.* at 50-51.) The court also found unpersuasive PCC's argument that its accreditation guidelines comport with the Medicare Prescription Drug, Improvement, and Modernization Act ("MMA") and therefore its actions were authorized. (*Id.* at 44-51.) The court found that PCC would still not be able to import prescription drugs from international pharmacies even if PCC's accreditation guidelines comported with the MMA, because § 384(j) of the Federal Food, Drug and Cosmetic Act not only has not been invoked by the Secretary of Health and Human Services, but, even if it had been invoked, the potential provisions only apply to Canada, not all international personal importation. (*Id.* at 44-51); *see also* 21 U.S.C. § 384(j) ("The Secretary [of Health and Human Services] may grant to individuals, by regulation or on a case-by-case basis, a waiver of the prohibition of importation of a prescription drug or device or class of prescription drugs or devices, under such conditions as the Secretary determines to be appropriate.").

---

[1] LegitScript lodged the redacted MSJ order with this Court at ECF No. 268-1.

DEFENDANT LEGITSCRIPT LLC'S MOTION
FOR SUMMARY JUDGMENT – 5

GORDON REES SCULLY MANSUKHANI, LLP
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

The SDNY court further held that PCC's revenue stream is highly indicative of how much of PCC's business is derived from illegality or facilitating illegality.  (SDNY MSJ Decision at 51-64.)  Specifically, based on the evidence presented and "the Court's finding here that personal importation of prescription drugs is illegal under current federal law, it follows that the overall breakdown of [PCC's] revenue is crucial: [PCC's] enterprise is necessarily 'completely or almost completely illegal, or completely or almost completely geared toward facilitating illegality' if the majority of its revenue stems from facilitating the purchase of foreign drugs by U.S. consumers."  (*Id.* at 52.)  The court found that the largest share of PCC's revenue were from click fees from U.S. consumers to foreign pharmacies.  (*Id.* at 55.)

The court therefore held that the New York Defendants met their burden to prove that PCC's enterprise is "completely or almost completely geared towards facilitating illegality," because PCC "makes easier" the illegal importation of drugs by directing U.S. consumers to foreign pharmacies where they can purchase prescription medication in violation of federal law. (*Id.* at 62-64.)  Of note, in reaching its decision, the court relied upon cases within the Ninth Circuit, adopting the Central District of California's holding in *Pearl Music Co., Inc. v. Recording Indus. Ass'n of Am., Inc.*, 460 F. Supp. 1060 (C.D. Cal. 1978), and distinguishing the Ninth Circuit's holding in *Memorex Corp. v. IBM Corp.*, 555 F.2d 1379 (9th Cir. 1977), as discussed *infra*. (*Id.* at 55.)  The court found that PCC did not have standing to maintain its claim pursuant to § 1 of the Sherman Act and granted the New York Defendants' motion for summary judgment.  (*Id.* at 64.)

Based on this decision, LegitScript brings the current motion for summary judgment based on issue preclusion.  Alternatively, LegitScript submits that the same issues and the same evidence and facts as in the New York Action suggest that the same conclusion should be reached here.  At a minimum, the recent decision should be highly persuasive.

## IV.    LEGAL STANDARD

Summary judgment is appropriate where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment is not proper if material factual issues exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U .S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324. A nonmoving party cannot defeat summary judgment by relying on the allegations in the complaint, or with unsupported conjecture or conclusory statements. *Hernandez v. Spacelabs Medical, Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). Thus, summary judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The court must view the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Life Ins. Co. of North America*, 638 F.2d 136, 140 (9th Cir. 1981). However, deference to the nonmoving party has limits. A party asserting that a fact cannot be true or is genuinely disputed must support the assertion with admissible evidence. Fed. R. Civ. P. 56(c). The "mere existence of a scintilla of evidence in support of the [party's] position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## V.    ANALYSIS

### A.    Issue Preclusion Applies and the Issues Necessarily Decided in the New York Action Regarding PCC's Claim Under the Sherman Act Arising from an Alleged Conspiracy May Not Be Relitigated in this Action

Issue preclusion, also known as collateral estoppel, has the effect of "foreclosing relitigation of a matter that has been litigated and decided." *Gospel Missions of Am. v. City of Los Angeles*, 328 F.3d 548, 553 (9th Cir. 2003). Issue preclusion "has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his

privy and of promoting judicial economy by preventing needless litigation." *Masson v. New Yorker Magazine, Inc.*, 85 F.3d 1394, 1400 (9th Cir. 1996). It "is designed to 'bar [ ] successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination.'" *Paulo v. Holder*, 669 F.3d 911, 918 (9th Cir. 2011).

The party asserting issue preclusion needs to prove four elements: "(1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated and decided in the prior proceeding; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessary to decide the merits." *Howard v. City of Coos Bay*, 871 F.3d 1032, 1041 (9th Cir. 2017). Each element is analyzed below.

### 1.    The Issues Raised In This Oregon Action Are Identical to the Issues Raised in the New York Action

Courts apply four factors to evaluate whether the issue is identical between the previous action and the action in which the party is seeking to apply issue preclusion:

> (1) is there a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first?

> (2) does the new evidence or argument involve the application of the same rule of law as that involved in the prior proceeding?

> (3) could pretrial preparation and discovery related to the matter presented in the first action reasonably be expected to have embraced the matter sought to be presented in the second?

> (4) how closely related are the claims involved in the two proceedings?

*Howard*, 871 F.3d at 1041. These factors are not applied mechanistically. *Id.* (citing *Syverson v. Int'l Bus. Machs. Corp.*, 472 F.3d 1072, 1080–81 (9th Cir. 2007) (mentioning only three of the four factors); *Cent. Delta Water Agency v. United States*, 306 F.3d 938, 953 (9th Cir. 2002) (evaluating whether the facts were identical without discussing the factors). All factors weigh in favor of finding that the issues in the New York Action and the Oregon action are identical.

<u>Substantial Overlap</u>. First, there is a substantial overlap between the arguments advanced in both proceedings. In the New York Action, PCC brought a claim under the Sherman Act, 15 U.S.C. § 1, for injunctive relief and damages arising from an alleged conspiracy among the New

DEFENDANT LEGITSCRIPT LLC'S MOTION
FOR SUMMARY JUDGMENT – 8

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

York Defendants and LegitScript to suppress competition in the markets for online pharmacy verification services and comparative drug pricing information.  (ECF Nos. 1, 82, New York Action.)  This Amended Complaint is ***the same complaint*** in the Oregon Action because PCC's claim against LegitScript was severed and transferred from SDNY to the District of Oregon. (*See* Oregon Docket.)

Further, the New York Defendants moved for summary judgment in the New York Action, arguing that PCC lacked antitrust standing because the primary purpose of its business was to facilitate illegal conduct by others in the importation of prescription drugs for personal use from international pharmacies.  (*See* ECF Nos. 263, 270, 346, 351, New York Action.).  LegitScript has not only made these arguments in the New York Action, but LegitScript even took part in the March 13, 2020 Joint Motion to Dismiss in the New York Action, wherein LegitScript and the New York Defendants argued that PCC could not plead an antitrust injury because its business model facilitated illegal conduct.  (*See* ECF No. 101, New York Action.) LegitScript has continued to raise this same argument in the Oregon Action as well.  (*See*, *e.g.*, ECF No. 252 at 10 ["[T]he claim against the defendants in the New York Litigation and the claim against LegitScript here are the same exact claim[.]"].)

Therefore, there is not only substantial overlap between the arguments between the first and second proceeding, but the arguments raised in both cases are exactly the same.

<u>Analysis of the issue here involves application of the same rule of law as the New York Action</u>.  As already discussed, the main issue raised in both cases involves PCC's antitrust standing and whether its business was completely or almost completely geared toward facilitating illegality.  In the New York Action, the court found that New York Defendants met their burden in proving that PCC's enterprise was "completely or almost completely geared towards facilitating illegality," thus had no standing to maintain its claim pursuant to § 1 of the Sherman Act.  (SDNY MSJ Decision at 52–55, 64.)  In support of this finding, the SDNY court held that it was clear that "no matter how one slices this pie, click fees from U.S. consumers to foreign pharmacies represents the largest share of [PCC]'s revenue" and that there is "no source of revenue that could come even close to the costs per clicks generated by U.S. consumers."  (*Id.* at 55.)  In analyzing whether PCC's largest share revenue involve click fees from U.S.

DEFENDANT LEGITSCRIPT LLC'S MOTION
FOR SUMMARY JUDGMENT – 9

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

consumers to foreign pharmacies, the SDNY court equated the New York Action to Central District of California case *Pearl Music Co., Inc. v. Recording Indus. Ass'n of Am., Inc.*, 460 F. Supp. 1060 (C.D. Cal. 1978), finding that the "almost total magnitude of this illegal conduct by [PCC] [made its] miniscule conduct that may be legal, insignificant[.]" (*Id.* at 55.) The court also found the case is distinguishable from *Memorex Corp. v. IBM Corp.*, 555 F.2d 1379 (9th Cir. 1977).

In *Memorex Corp.*, the defendant contended that plaintiff had not suffered an antitrust injury because plaintiff's presence in the market was a result of the plaintiff's theft of trade secrets from defendant. 555 F.2d at 1380–1381. The defendant argued that plaintiff's unlawful market presence established the absence of injury to plaintiff. *Id.* at 1381. However, the Ninth Circuit held that illegality is not a defense to an antitrust action when the illegal acts of the plaintiff are directed against the defendant, emphasizing that public policy ensures private actions deter defendants who commit a public wrong by violating antitrust laws. *Id.* at 1382. The court reasoned that a plaintiff's private wrongdoing should not bar its antitrust action against a defendant who has committed a public wrong by violating the antitrust laws. *Id.* Of course, the plaintiff was still fully subject to "civil and criminal penalties for [its] own illegal conduct." *Id.* at 1383. The reasoning behind this finding is that where the illegal act by the plaintiff is directed against the defendant, the defendant should not use this fact to reduce his liability for his own breach of public policy, but should bring a counterclaim based on the plaintiff's breach of public policy. *See id.* at 1382–83. Other courts have cited *Memorex*, finding it to stand for the proposition that the "defense of unclean hands does not apply to antitrust claims." *Broadcom Corp. v. Qualcomm Inc.*, No. 08CV1607 WQH LSP, 2009 WL 650576, at *11 (S.D. Cal. Mar. 2009) (citing *Memorex Corp.*, 555 F.2d at 1381–84).

*Pearl Music Co.* involved plaintiffs that sold pirated prerecorded tapes, conduct which was a crime under federal law and the laws of forty-nine states. 460 F. Supp. at 1061–62. Distinguishing *Memorex Corp.*, the court found that the plaintiffs' conduct was wholly illegal, as it was directed against the public in violation of clear federal and state statutory criminal prohibitions. *Id.* at 1068. The court then concluded that plaintiffs had no standing or capacity to maintain antitrust action because plaintiffs engaged in a business which is, by its very nature,

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

entirely illegal.  460 F. Supp. at 1068.  The court held that the "almost total magnitude of this illegal conduct by plaintiffs makes their miniscule conduct that may be legal, insignificant, and, in any event, none of such miniscule and possibly legal conduct rises to the level of the legitimate activities of *Memorex* and *Calnetics*." *Id.*  The court distinguished *Memorex*, indicating that the *Memorex* court limited the scope of its decision to situations in which the wrongful conduct had been directed against the defendant in a private sense, rather than a public wrong caused by massive and all-pervasive violations of the law, as were present in *Pearl*.  *Id.* The court indicated that the plaintiffs in *Pearl* were engaged in "wholly illegal enterprises which are directed against the public in violation of clear federal and state statutory criminal prohibitions, and as such, should not be able to assert or claim that they have rights protected by the anti-trust laws." *Id.*

In both the New York and Oregon Actions, the issue is whether the plaintiff's alleged unlawful conduct is enough to prevent the plaintiff from raising its antitrust claim.  Both *Memorex* and *Pearl Music* apply to both the New York Action and Oregon Action because they both provide analysis of whether there is antitrust standing when the plaintiff is alleged to also have engaged in wrongdoing that may have led to its own damages.

The parties' pretrial preparation and discovery in SDNY embraced the issue here.  Third, the pretrial preparation and discovery that occurred the New York Action embraced the very issue being raised in this action.  Substantial discovery was conducted in the New York Action regarding whether PCC lacked antitrust standing, all which was extensively addressed in the summary judgment proceedings in SDNY.  (SDNY MSJ Decision at 51–64) (citing parties' statement of material facts which includes citations to discovery, as well as other exhibits and declarations referring to discovery in determining that the New York Defendants met their burden in proving that PCC's enterprise is completely or almost completely geared towards facilitating illegality); *see also Rimini St., Inc. v. Oracle Int'l Corp.*, 473 F. Supp. 3d 1158, 1193 (D. Nev. 2020) ("Additionally, the pretrial preparation and discovery in [the first action] embraced this issue as substantial discovery was conducted regarding [plaintiff's] local hosting process, and the parties briefed the issue extensively at the dispositive motion phase [in the first action].").

For example, in reviewing PCC's revenue share from international pharmacies, the SDNY court cited PCC's and New York Defendants' statement of material facts, which includes citations to discovery.  (SDNY MSJ Decision at 53–64) (citing ECF Nos. 265-1 [SDNY Defendants' local rule 56.1 statement of material facts in support of their MSJ]; 270-1 [PCC's Local Rule 56.1 statement of material facts in opposition to MSJ]; 283-1 [SDNY Defendants' reply to plaintiff's local rule 56.1 statement of material facts], New York Action.)  Other exhibits and declarations referring to discovery that were cited in the SDNY decision include the Farrar Report, Kent Am. Report, New York Defendants' Ex. 6 (PCC's Consumer Support Page), New York Defendants' Ex. 64 (Sealed), New York Defendants' Ex. 71 (Sealed), New York Defendants' Ex. 73 (Sealed), New York Defendants' Ex. 81 (Sealed), New York Defendants' Ex. 82 (Sealed).  (*See* SDNY MSJ Decision at 53–55, 57, 59–61.) Because LegitScript was originally part of the New York Action and is being sued for the same conduct, it has the same interests and arguments as the New York Defendants.  The pretrial preparation and discovery that was conducted in the New York Action therefore would be embraced here in the Oregon Action and to resolve the standing issue in this motion.

The claims involved in the two proceedings are the same.  Finally, as indicated above, the claims involved in the two proceedings are not only closely related, but they are exactly the same claims.

Therefore, the issue in both matters is identical in both actions: PCC and its lack of antitrust standing due to PCC's enterprise that is completely or almost completely geared towards facilitating illegality.

### 2.    The Issues Raised in this Oregon Action Were Actually Litigated and Decided in the New York Action

"Another prerequisite to the application of collateral estoppel is that the disputed issue must have been actually litigated in the prior proceeding."  *In re Gottheiner*, 703 F.2d 1136, 1140 (9th Cir. 1983).  "[A]n issue is actually litigated when an issue is raised, contested, and submitted for determination[.]"  *Janjua v. Neufeld*, 933 F.3d 1061, 1066 (9th Cir. 2019); *see also* Restatement (Second) of Judgments § 27, cmt. (d) (1982) ("When an issue is properly raised, by the pleadings or otherwise, and is submitted for determination and is determined, the issue is actually litigated[.]"); 18 James Wm. Moore et al., Moore's Federal Practice § 132.03(2)(a)

---

DEFENDANT LEGITSCRIPT LLC'S MOTION
FOR SUMMARY JUDGMENT – 12

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

(2018) ("The 'actually litigated' requirement simply requires the issue to have been raised, contested by the parties, submitted for determination by the court, and determined.")).  "In determining whether an issue was 'actually litigated and determined' in an earlier adjudication, the court is 'allowed to draw necessary inferences from the prior adjudication[.]'"  *Disimone v. Browner*, 121 F.3d 1262, 1268 (9th Cir. 1997) (quoting *Westinghouse Elec. Corp. v. General Circuit Breaker & Elec. Supply, Inc.*, 106 F.3d 894, 901 (9th Cir. 1997)).

The disputed issue as to antitrust standing in the Oregon Action was litigated in the prior SDNY proceeding.  (*See* ECF Nos. 263, 270, 346, 351, New York Action.)  The SDNY opinion indicated that PCC brought the New York Action alleging that the New York Defendants unlawfully conspired to restrain trade in violation of § 1 of the Sherman Act.  (SDNY MSJ Decision at 2.)  In a footnote, the SDNY opinion indicated that PCC also raised this exact same claim against LegitScript, however, the claim was severed and transferred to the District of Oregon.  (*Id.* at 2 n1.)  The SDNY opinion noted that the court was tasked with addressing the limited issue of whether PCC's business was "completely illegal or geared toward illegality," and thus lacking antitrust standing.  (*Id.* at 25–26.)  The court analyzed the three arguments that the New York Defendants raised in regard to the issue of illegality: (1) whether the personal importation of prescription drugs from foreign online pharmacies is unambiguously illegal, (2) whether almost all of PCC's revenue is derived from accredited international online pharmacies that sell to U.S. consumers, and (3) whether PCC's "primary mission" is to facilitate U.S. consumers' unlawful importation of foreign pharmaceuticals.  (*Id.* at 26.)  The analysis of these elements was full and fair, citing copious argument and evidence.

Consequently, there is no doubt that present issue was actually litigated in the New York Action because the SDNY court spent a great deal of time analyzing PCC's revenue share from international pharmacies in determining that PCC's enterprise is completely or almost completely geared towards facilitating illegality.  (*See* SDNY MSJ Decision at 51–64.)  The SDNY decision could not have been rationally grounded upon any issue other than that which LegitScript seeks to foreclose from consideration in this Oregon Action, as the Court granted the New York Defendants' Motion for Summary Judgment on Plaintiff's Sherman Act § 1 claim due to lack of standing after finding PCC's enterprise to be completely or almost completely geared

DEFENDANT LEGITSCRIPT LLC'S MOTION
FOR SUMMARY JUDGMENT –  13

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

towards facilitating illegality.  Indeed, an issue is "essential and actually litigated to a final decision on the merits" when the court has granted summary judgment on that issue.  *Coningsby v. Oregon Dep't of Educ.*, No. 3:16-CV-00627-HZ, 2016 WL 4844078, at *7 (D. Or. Sept. 2016), aff'd sub nom. *M.C. by & through D.C. v. Oregon Dep't of Educ.*, 695 F. App'x 302 (9th Cir. 2017).

### 3.    PCC Had a Full and Fair Opportunity to Litigate the Issue Raised in the New York Action Regarding Antitrust Standing

The party against whom the estoppel is being asserted must have been accorded a full and fair opportunity to litigate in the prior court proceeding the very issue it now seeks to relitigate. *See Howard*, 871 F.3d at 1041.  Under Oregon law, a contested case hearing and formal adjudication proceedings "meets the threshold for a full and fair opportunity to litigate a question." *Kolander v. Weeks*, 916 F. Supp. 1042, 1048 (D. Or. 1996) (memorandum of legal points and authorities considered and dealt with on the merits constitutes a full and fair opportunity to present argument under Oregon law (citation omitted)).  There is no requirement that the parties be the same in both instances; issue preclusion may be invoked in a case involving the plaintiff and a non-party to the first action. *Yufa v. Hach Ultra Analytics*, No. 1:09-CV-3022-PA, 2014 WL 2450749, at *4 (D. Or. May 2014).

PCC makes the very same allegations against LegitScript as it did against the New York Defendants, *i.e.*, that LegitScript and the New York Defendants unlawfully conspired to restrain trade in violation of § 1 of the Sherman Act, 15 U.S.C. § 1.  (*See* ECF No. 82, New York Action.)  PCC participated in the litigation as the plaintiff in the New York Action and actively opposed the New York Defendants' summary judgment motion, arguing that: (1) the court should not add a new antitrust injury requirement, (2) the New York Defendants did not meet their initial burden under the geared-towards-facilitating standard, and in any event, (3) factual disputes preclude summary judgment.  (ECF No. 270, New York Action.)  Moreover, the parties fully briefed the New York Defendants' summary judgment motion.  (ECF Nos. 263, 269, 270, 281, 283.)  The New York Defendants' motion for summary judgment spanned 28 pages an included 104 exhibits.  (ECF No. 265, New York Action.)  PCC's opposition spanned 37 pages and included 43 exhibits.  (ECF No. 270.)  Further, the New York Defendants' Reply spanned 17 pages and included an additional 21 exhibits.  (ECF No. 283, New York Action.)

Also, it is readily apparent from the SDNY court's opinion that the summary judgment procedure was of sufficient quality, extensiveness, and fairness.  The opinion is lengthy and detailed, spanning 65 pages and discusses each issue at length.  The content of the opinion demonstrates that the court carefully and thoughtfully addressed each of PCC's arguments.  (*See generally* SDNY MSJ Decision.)  There is no reason to doubt the quality, extensiveness, or fairness of procedures followed in the New York Action.  Therefore, the third element in proving issue preclusion is present here.  *See Dillingham v. Scruggs*, No. 16-CV-03267-YGR (PR), 2018 WL 2938521, at *11 (N.D. Cal. June 2018) ("All elements of collateral estoppel are present here, as Defendants have shown [that]  there was a full and fair opportunity to litigate the issue in the prior proceeding [where] both parties fully briefed the issue [on summary judgment.])"), *aff'd*, 787 F. App'x 450 (9th Cir. 2019); *Yufa*, 2014 WL 2450749, at *4 (finding that both the previous case and present case shared a plaintiff and that the previous case's decision carefully addressed each of plaintiff's arguments, therefore there was "no reason to doubt the quality, extensiveness, or fairness of the procedures followed in the prior litigation."); *In re Wright*, 355 B.R. 192, 204 (Bankr. C.D. Cal. 2006) ("Issue preclusion may apply despite the fact that the prior determination is based upon an unopposed motion for summary judgment rather than a trial.") (citing *Stevenson v. Sears, Roebuck & Co.*, 713 F.2d 705, 712 (Fed. Cir. 1983) and *U.S. v. Gottheiner*, 703 F.2d 1136, 1140 (9th Cir. 1983)).

Because it was permitted an opportunity to, and did, oppose Defendants' motion for summary judgment and present its arguments to the SDNY court, PCC had a full and fair opportunity to litigate the issue of antitrust standing in the New York action and the issue of antitrust standing was actually litigated in the New York action.

### 4.    The Issues Were Necessary to Decide the New York Action

This element requires that the resolution of the issue was essential to a final judgment in the prior case.  *Yufa*, 2014 WL 2450749, at *4.  In order for a previously-decided issue to have preclusive effect, the interpretation of the issue had to be the reason for the loss in the prior case on the issue.  *See id.*

This factor has also been met.  In this Oregon Action, LegitScript contends that PCC lacks standing on its antitrust claim.  That is the exact issue that was analyzed in the SDNY

---

DEFENDANT LEGITSCRIPT LLC'S MOTION
FOR SUMMARY JUDGMENT – 15

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

decision.  The relevant issue in the New York Action was necessarily decided regarding PCC's antitrust standing and whether the primary purpose of its business was to facilitate illegal conduct by assisting United States consumers in the importation of prescription drugs for their personal use from international pharmacies.  (ECF No. 263, New York Action.)  The SDNY court specifically addressed whether PCC's enterprise is completely illegal or geared toward illegality by looking to the federal standards for illegality and PCC's revenue share from international pharmacies.  (*See* SDNY MSJ Decision at 41–64.)  The Court found that the New York Defendants met their burden in proving that PCC's enterprise was "completely or almost completely" geared towards facilitating illegality and that PCC lacked standing to maintain its claim pursuant to § 1 of the Sherman Act.  (*Id.* at 52–55, 64.)  The antitrust standing issue was essential to the SDNY's judgment because the SDNY court dismissed New York Defendants ASOP, CSIP, and PSM from the case due to PCC's lack of standing.  (*See id.* at 64.)[2]

## 5.    Conclusion

As indicated above, PCC is barred from pursuing in this case issues addressed and resolved in the New York case regarding PCC's lack of antitrust standing.  Accordingly, LegitScript respectfully requests that the Court finds that issue preclusion applies and that the issues necessarily decided in the New York Action may not be relitigated in this action.  For this reason, LegitScript respectfully requests that the Court grant summary judgment dismissing PCC's Amended Complaint because PCC is barred in this Oregon Action from pursuing its claim under the Sherman Act, 15 U.S.C. § 1, for injunctive relief and damages arising from an

---

[2] The fact that PCC may or will appeal the SDNY decision does not affect the finality of the SDNY decision.  The Ninth Circuit and the District of Oregon both have held that collateral estoppel still applies when there is a pending appeal.  *See, e.g., Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 882 (9th Cir. 2007) ("We have held that a final judgment retains its collateral estoppel effect, if any, while pending appeal.") (citing *Tripati v. Henman*, 857 F.2d 1366, 1367 (9th Cir.1988)); *CollegeNET, Inc. v. ApplyYourself, Inc.*, No. CV-02-1359-HU, 2008 WL 4793683, at *3 (D. Or. Oct. 28, 2008) ("Final judgment in the XAP case was filed on October 17, 2008.  This Judgment is final for purposes of applying collateral estoppel, notwithstanding that plaintiff may file a motion for judgment as a matter of law (JMOL) or an appeal.  'The law is well settled that the pendency of an appeal has no effect on the finality or binding effect of a trial court's holding[.]'").  The Oregon state courts have also followed this rule.  *See, e.g., Berg on behalf of Est. of Higbee v. Benton*, 297 Or. App. 323, 328 (2019) ("[I]n Oregon '[t]he pendency of an appeal does [not] prevent a judgment from operating as res judicata or collateral estoppel'—i.e., issue preclusion.").

DEFENDANT LEGITSCRIPT LLC'S MOTION
FOR SUMMARY JUDGMENT – 16

GORDON REES SCULLY MANSUKHANI, LLP
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

alleged conspiracy among LegitScript and the New York Defendants to suppress competition in the markets for online pharmacy verification services and comparative drug pricing information.

**B.      PCC Lacks Standing Because It Has No Antitrust Injury**

Alternatively, even if this Court finds issue preclusion does not apply, an independent analysis by this Court of the same issues, the same facts, and the same evidence should lead to a similar conclusion as the SDNY MSJ Decision.  PCC still lacks standing to maintain its claim under the Sherman Act because PCC's business is completely or almost completely geared toward facilitating illegality, thus unable to suffer an antitrust injury.

**1.      Legal Standard: Standing**

To obtain judicial relief from a federal court, every plaintiff must demonstrate that he has suffered "an invasion of a legally protected interest."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  In an antitrust case, the plaintiff must plead sufficient facts to establish "antitrust injury," that is, "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful."  *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990).  No person, however, can have any legally protected right to conduct an activity that is prohibited by law, or to benefit from it.  *See, e.g.*, *Aijay Associates, Inc. v. Bush*, 891 F.2d 894, 898 (Fed. Cir. 1989) ("Because appellants have no right to conduct foreign commerce in products excluded by Congress, they have [...] no right capable of judicial enforcement and thus have suffered no injury capable of judicial redress.").

It is American law's general legal principle, which has frequently been applied in antitrust cases, not to provide relief for an injury related to the conduct of an illegal business activity.  *E.g.*, *Snake River Valley Electric Ass'n v. Pacificorp*, 357 F.3d 1042, 1050 n.8 (9th Cir. 2004) ("[E]ven if PacifiCorp acted anti-competitively by refusing to wheel [power to the association], there is no injury to [the association] because it could not have taken any of PacifiCorp's customers absent affirmative action by the PUC, because of the general prohibition of customer piracy[.]"); *Ratino v. Med. Serve. of the District of Columbia*, 718 F.2d 1260, 1263 (4th Cir. 1983) (antitrust law does not forbid an alleged conspiracy to thwart implementation of "illegal" contract); *Modesto Irrigation Dist. v. Pac. Gas & Elec. Co.*, 309 F. Supp. 2d 1156, 1169–70 (N.D. Cal. 2004) ("Courts have long recognized that 'an action under the antitrust laws

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

will not lie where the business conducted by the plaintiff, and alleged to have been restrained by the defendant, was itself unlawful.'"), aff'd sub nom. *Modesto Irrigation Dist. (MID) v. Pac. Gas & Elec. Co.*, 158 F. App'x 807 (9th Cir. 2005).

### 2.    The Relevant Facts Have Already Been Decided in the SDNY Decision

This issue is fully briefed in the SDNY court, with both parties presenting ample evidence and expert opinion.  LegitScript incorporates that briefing hereby reference. (New York Action: ECF Nos. 263–265 (motion for summary judgment and exhibits); 269–272 (opposition, exhibits, and declarations) 281, 283 (reply and exhibits).)[3]

### 3.    A Plaintiff Lacks Antitrust Standing if its Business is "Completely or Almost Completely Geared Toward Facilitating Illegality

Alleged "anticompetitive behavior [that] discourage[s] only unlawful importation of drugs and not lawful activity the Sherman Act was designed to protect" is not "an injury of the type that the antitrust laws were designed to remedy."  *Canadian Import*, 470 F.3d at 788, 791. *Canadian Import* involved a claim by a putative class of plaintiffs alleging that drug manufacturers conspired in violation of the Sherman Act to "suppress the importation of Canadian prescription drugs for personal use."  *Id.* at 787.  Similar to PCC's allegations in this case, the class in *Canadian Import* alleged that defendants created "blacklists" of pharmacies suspected of selling to U.S. consumers.  *See id.* at 788.  The district court dismissed the conspiracy claim under Rule 12(b)(6) for lack of antitrust injury and standing, holding that because the "FDA repeatedly has expressed the view that virtually all importation of drugs into the United States by individual customers violates the FFDCA," the plaintiffs' alleged injury was "caused by the federal statutory and regulatory scheme adopted by the United States government, not by the conduct of the defendants."  *Id.* at 788–89, 791.  Just like *Canadian Import*, PCC's claimed injury is predicated on facilitating the illegal importation of drugs from foreign countries in clear violation of U.S. law.  (*See* SDNY MSJ Decision at 51–64.)  Thus, *Canadian Import* is instructive on the issue at hand in this case—LegitScript's alleged "suppression" of PCC's

---

[3] LegitScript's counsel requested PCC's counsel provide them with unredacted copies of the briefing and exhibits.  To date there has been no response.  *See* Sybert Dec., ¶¶ 2-3.

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

facilitation of foreign drug importation described in the complaint is not the type of injury the antitrust laws are intended to protect.

Further, cases from the Ninth Circuit have yielded similar results to the Second Circuit regarding antitrust standing.[4]  Specifically, as noted above, a party lacks antitrust standing if its business is completely or almost completely geared toward facilitating illegality.  In *Pearl Music*, the court granted defendant's motion for summary judgment after having found that plaintiffs engaged in duplicating and selling pirated prerecorded tapes.  460 F. Supp. 1060, 1060–66 (C.D. Cal. 1978).  The *Pearl Music* court found that plaintiffs had no standing or capacity to maintain an antitrust action because plaintiffs' conduct was wholly illegal as directed against public in violation of clear federal and state statutory criminal prohibitions.  *Id.* at 1068.  The court held that "almost total magnitude of this illegal conduct by plaintiffs makes their miniscule conduct that may be legal, insignificant, and, in any event, none of such miniscule and possibly legal conduct rises to the level of the legitimate activities of Memorex and Calnetics." *Id.*  The court stated that *Memorex* limited its scope to situations in which the wrongful conduct had been directed against the defendant in a private sense, rather than a public wrong caused by massive and all-pervasive violations of the law.  *Id.*  The court then held that the situation where the *Memorex* court rejected a defense based on wrongful conduct directed against private parties did not apply because the plaintiffs in *Pearl Music* engaged in wholly illegal enterprises that were directed against the public in violation of clear federal and state statutory criminal prohibitions.  *Id.*

This case is directly relevant to the Oregon Action because PCC has engaged in a business — the unlawful facilitation of drugs from international pharmacies — which by its very

_____

[4] In fact, the Southern District of New York relied on the Central District of California's *Pearl Music Co.* in both of its decision for motion to dismiss and summary judgment in eventually determining that PCC's enterprise is necessarily "completely or almost completely illegal, or completely or almost completely geared toward facilitating illegality" because a majority of its revenue stems from facilitating the purchase of foreign drugs by U.S. consumers.  *See PharmacyChecker.com v. Nat'l Ass'n of Boards of Pharmacy*, No. 19-CV-7577 (KMK), 2023 WL 2973038, at *25 (S.D.N.Y. 2023); *PharmacyChecker.com, LLC v. Nat'l Ass'n of Boards of Pharmacy*, 530 F. Supp. 3d 301, 330 (S.D.N.Y. 2021).

DEFENDANT LEGITSCRIPT LLC'S MOTION
FOR SUMMARY JUDGMENT – 19

nature, is entirely illegal.  (*See* ECF Nos. 265 at 15–19; 283 at 11–13, New York Action; SDNY MSJ Decision at 51–64.)  Thus, both PCC and the plaintiffs in *Pearl Music* were engaged in "wholly illegal enterprises which are directed against the public" in violation of federal and state statutes, thus this Court may find similarly to *Pearl Music*, *i.e.*, that PCC should not be able to assert or claim that it has rights protected by antitrust laws.  (*See* ECF Nos. 265 at 19–31; 283 at 13–19, New York Action.)  Unlike *Memorex*, this case involves a public wrong caused by PCC's massive and all-pervasive violation of the law.

In *Realnetworks, Inc. v. DVD Copy Control Ass'n, Inc.*, the court found that plaintiff did not allege a viable antitrust injury and thus did not have standing to bring a private claim under the Sherman Act.  No. C 08-4548 MHP, 2010 WL 145098, at *6 (N.D. Cal. Jan. 2010).  Plaintiff was a corporation that engaged in the business of developing, manufacturing and selling platforms for the delivery of digital media, and its subsidiary, RealNetworks Home Entertainment, Inc., developed and distributed products called "Vegas" and "Facet," collectively referred to as "RealDVD."  *Id.* at *1.  Defendants included two movie studios and a trade association that were responsible for developing, evaluating and licensing technologies to participants at various levels in the DVD industry.  *Id.*  The trade association defendant licensed Content Scramble System ("CSS") technologies, which prevents illegal duplication of movies. *Id.*  Plaintiff developed a product that allowed consumers to copy DVDs and store them on their computers.  *Id.*  When studios that produced DVD movies refused plaintiff's request for licenses that would permit consumers to use the device, the plaintiff sued the studios alleging an unlawful group boycott under the Sherman Act.  *Id.* at *2.  Defendants argued that any injury to the plaintiff was caused by plaintiff's own illegal behavior and the court's injunction issued previously, rather than any anticompetitive behavior.  *Id.* at *4.  The court agreed and held that the plaintiff's "purported injury" flowed not from the defendants' conduct, but "from its own decision to manufacture and traffic in a device that is almost certainly illegal."  *Id.* at *6.  The court held that it did not need to reconcile *Memorex* and the authorities cited by the defendants because: "The court does not here hold that Real is barred from maintaining an antitrust claim because it has engaged in illegal activity; rather, the court holds that Real has failed to allege a plausible antitrust injury.  Even if Real were free to circumvent CSS technology, RealDVD

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

would have been enjoined due to its circumvention of non-CSS encryption devices.  Real alleges no viable antitrust injury and therefore does not have standing to bring a private claim under the Sherman Act."

Similarly, here, PCC's alleged injury did not flow from LegitScript's conduct, it flows from its own conduct.  Just as in *Realnetworks, Inc.*, there is no plausible antitrust injury because even if LegitScript was a part of the alleged conspiracy, PCC's conduct would still be illegal and unprotectable under antitrust laws.  (*See* SDNY MSJ Decision at 41–51.)

Similarly, courts outside the Ninth Circuit have dismissed antitrust complaints for lack of antitrust injury where the plaintiff's business model was built around the facilitation of unlawful conduct.  In *Maltz v. Sax*, the plaintiff made gambling "punch boards" at a time when gambling was illegal.  134 F.2d 2, 5 (7th Cir. 1943).  Defendants argued that the plaintiff could not maintain a claim because "the use and sale" of the boards was unlawful.  *Id.* at 3.  Similar to PCC, the plaintiff in *Maltz* argued that his business of making boards was 100% legal and he could thus prove injury to his business protectable under the antitrust laws.  *Id.* at 4.  However, the court rejected this argument and held that while "making and selling gambling machines" was not <u>itself</u> illegal, "[plaintiff's] business was the making and selling goods which could only <u>be used by purchasers</u> in furtherance of the business of gambling" and plaintiff therefore had "no legal right in [the] business [and] no legal rights to protect."  *Id.* at 5 (emphasis added).

While this Court previously cited *Memorex Corp. v. IBM Corp.*, 555 F.2d 1379, 1382 (9th Cir. 1977) and *In re Dealer Mgmt. Sys. Antitrust Litig.*, 313 F. Supp. 3d 931, 946 (N.D. Ill. 2018) for the proposition that courts "generally have held that a plaintiff's wrongdoing is not a defense to an antitrust suit," (ECF No. 256 at 5) these cases are highly distinguishable.

Unlike in *Memorex*, PCC's illegal acts were not directed at LegitScript specifically, but are a violation of U.S. labeling requirements that prohibited the importation of foreign drugs. (*See* SDNY MSJ Decision at 41–51.)  *Memorex* held that a plaintiff's <u>private</u> wrong does not eliminate antitrust standing against the defendant.  However, PCC's illegal conduct is a <u>public</u> wrong as a violation of U.S. labeling requirements and was not directed against LegitScript or the New York defendants.  Indeed, the Southern District of New York's analysis cited to *Canadian Import* to indicate that:

DEFENDANT LEGITSCRIPT LLC'S MOTION
FOR SUMMARY JUDGMENT –  21

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

> [t]he United States Food and Drug Administration ("FDA") repeatedly has expressed the view that virtually all importation of drugs into the United States by individual consumers violates the FFDCA, because the drugs are not approved in accordance with 21 U.S.C. § 355, are not labeled as required by 21 U.S.C. § 352, or are dispensed without a valid prescription in contravention of 21 U.S.C. § 353(b)(1).

*Id.* at 42.  The SDNY court stated that "foreign pharmaceuticals—manufactured and distributed abroad and later imported into the United States—are 'unapproved' drugs," which would mean that it is illegal to import into the United States.  *See id.* at 43.  The SDNY court also noted that "[b]ecause foreign labeling differs from domestic labeling, approval granted to a particular product to be distributed in the United States does not constitute approval of another drug—even one with the same chemical composition—to be distributed [internationally] with different labeling, and then imported into the United States.  *Id.* (citing *Canadian Import*, 470 3d. at 780–90).  While PCC attempted to distinguish *Canadian Import*, the SDNY court indicated that *Canadian Import* still found that it was illegal to import drugs since "the Canadian prescription drugs at issue [were] not labeled in conformity with federal law."  *Id.* at 49–50.

*In re Dealer Mgmt. Sys. Antitrust Litig.* is also distinguishable because that court found that plaintiff's as-alleged practices were legal independent of defendants' challenged conduct.  See *In re Dealer Mgmt. Sys. Antitrust Litig.*, 313 F. Supp. 3d at 948. The opposite has been proven as to PCC's business.  (*See* SDNY MSJ Decision at 41–51.)

PCC has suggested that Judge Karas's enunciation of the correct legal standard is somehow novel or inapplicable here.  That suggestion is incorrect.  Finding no antitrust standing for a plaintiff who admittedly created an enterprise to supply "information," including links to buy drugs, to U.S. consumers for the "primary" purpose of facilitating illegal drug importation is not a novel rule of law.  As previously indicated, ample law supports the Court's standing requirement that, "where the plaintiff's enterprise is … completely or almost completely geared towards facilitating illegality, the plaintiff cannot plead antitrust injury."  (*See* ECF Nos. 129 at 23–26 (citing cases) New York Action; SDNY MSJ Decision at 63.)  This law includes *Maltz* and *Pearl Music* detailed above.  *Monarch Marking Systems Inc. v. Duncan Parking Meter Maintenance Co.* also supports the core principle that a business whose primary purpose relates to illegal conduct lacks standing.  No. 82-C-2599, 1988 WL 23830, at *1 (N.D. Ill. Mar. 1988).

---

DEFENDANT LEGITSCRIPT LLC'S MOTION
FOR SUMMARY JUDGMENT – 22

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

The court in *Monarch Marking Sys.* initially dismissed plaintiff's claim for lack of standing when the court presumed that "virtually all" of the counterclaimants' enterprise was devoted to illegal conduct. *Id.* However, on reconsideration, the court found standing where up to 70% of counterclaim-plaintiff's enterprise was potentially lawful. *Id.* at n.2. Therefore, this Court's standing requirement does not add any novel antitrust standing burden inconsistent with precedent.

Accordingly, the Court's holding that PCC cannot establish antitrust standing if "the primary purpose of Plaintiff's business is to facilitate unlawful importation" is well grounded in law.

### 4.    Facilitating Importation of Drugs Is Illegal

Personal importation of prescription drugs is illegal under current federal law.  PCC's own website admits this: *see* https://www.pharmacychecker.com/askpc/is-it-legal-to-order-medication-online-from-other-countries/#! ("It's not legal, under most circumstances, to order and import medicine from a pharmacy in another country, according to the U.S. Food and Drug Administration (FDA).").

The importation of prescription drugs is governed by the Federal Food, Drug, and Cosmetic Act, which prohibits the "introduction or delivery for introduction into interstate commerce of any food, drug, device, or cosmetic that is adulterated or misbranded[,]" as well any introduction into interstate commerce of any new drug that is not manufactured pursuant to FDA approval.  *See* 21 U.S.C. § 331(a), (d); *see also* 21 U.S.C. § 355(a).  "The United States Food and Drug Administration ("FDA") repeatedly has expressed the view that virtually all importation of drugs into the United States by individual consumers violates the FFDCA" because "the drugs are not approved in accordance with 21 U.S.C. § 355, are not labeled as required by 21 U.S.C. § 352, or are dispensed without a valid prescription in contravention of 21 U.S.C. § 353(b)(1)."  *Canadian Import*, 470 F.3d at 788–89.

Sections 352, 353, and 355 of Title 21 of the United States Code work in conjunction with the other statutory standards and FDA regulations to create a system that excludes noncompliant and potentially unsafe pharmaceuticals.  *Canadian Import*, 470 F.3d at 790.  Foreign pharmaceuticals, *i.e.*, those manufactured and distributed abroad and later imported into

---

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

the United States, are "unapproved" drugs within the meaning of 21 U.S.C. § 355.  *See Pharm. Rsch. & Manufacturers of Am. v. Dep't of Health & Hum. Servs.*, No. CV 20-3402 (TJK), 2023 WL 1795644, at *1 (D.D.C. Feb. 6, 2023) (stating that "the domestic drug supply chain is strictly monitored . . . . to maintain a 'closed system designed to guarantee safe and effective drugs for consumers in the United States.' [. . .] And that closed system 'has effectively precluded importation of [prescription] drugs.'"); *Canadian Import*, 470 F.3d at 789; *Vermont v. Leavitt*, 405 F. Supp. 2d 466, 473 (D. Vt. 2005) ("Any drug, even a foreign version of an FDA approved drug, will be an unapproved drug unless it meets all United States packaging, labeling and dosage requirements."); Personal Importation, Food & Drug Admin. (last updated January 10, 2023), https://www.fda.gov/industry/import-basics/personal-importation ("If a drug is approved for use in another country but is an unapproved new drug in the U.S. it is illegal to import."); *United States v. Rx Depot Inc.*, 290 F. Supp. 2d 1238, 1245 (N.D. Okla. 2003) (finding that the defendants violated the FFDCA "each time" they introduce an unapproved Canadian drug in violation of 21 U.S.C. § 355).  In fact, *Canadian Import* noted that the FDA "repeatedly has expressed the view that virtually all importation of drugs into the United States by individual consumers violates the FFDCA."  470 F.3d at 788–79; *see also Pharm. Rsch. & Mfrs. of Am.*, 2023 WL 1795644, at *2 ("The statutory drug-importation scheme has thus lain dormant for most of its history, and importing drugs from Canada or elsewhere has remained effectively illegal.").

### 5.    PCC's Business Is Illegal

PCC admitted that its business model is built on "accrediting" and providing price comparisons that include foreign pharmacies not bound by FDA regulations that cannot legally sell into the United States.  (*See, e.g.*, ECF No. 82 at ¶¶ 40–41, Amend. Compl. (conceding that Plaintiff accredits "foreign" pharmacies and that it is "a recognized authority [...] about online pharmacies, particularly those that sell medicine internationally[.]")  PCC describes its business model as "unique" because unlike LegitScript, PCC recommends non-U.S.-based online pharmacy websites to consumers, with the effect of facilitating importation.  (*See id.* at ¶ 33.)

As indicated in the SDNY court's decision, PCC's business is thus completely or almost completely geared toward facilitating illegality because the majority of PCC's revenue stems

---

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

from facilitating the purchase of foreign drugs by U.S. consumers. *See PharmacyChecker.com v. Nat'l Ass'n of Boards of Pharmacy*, No. 19-CV-7577 (KMK), 2023 WL 2973038, at *25–*30 (S.D.N.Y. Mar. 28, 2023). PCC's defense stated on its website that individuals are not typically prosecuted for importation of medicine, does not make its business legal. *See* https://www.pharmacychecker.com/askpc/is-it-legal-to-order-medication-online-from-other-countries/#!

Accordingly, PCC therefore has not established and cannot establish that LegitScript's alleged conduct caused harm of the kind the antitrust laws were intended to prevent, whether it be to PCC's own business or to consumers. PCC's alleged harm flows from "its own decision" to facilitate conduct "that is almost certainly illegal." *See Realnetworks*, 2010 WL 145098, at *1. It is the "reality of the regulated environment," *i.e.*, the illegality of foreign drug importation under federal and state law, which caused any alleged "injury" to PCC or to the market, not LegitScript's alleged conduct. (*See*, *e.g.*, SDNY MSJ Decision at 50 ("By creating the comprehensive regulatory system [. . .] Congress has effectively precluded importation of these drugs absent the sort of special authorization contemplated by 21 U.S.C. § 384." [. . .] As such, and as relevant to the instant Motion, the Court finds that personal importation of prescription drugs is illegal under current federal law.").) Therefore, because the importation of drugs from international pharmacies is illegal and PCC's enterprise is completely or almost completely geared toward facilitating illegality, PCC lacks standing in bringing its antitrust claim and LegitScript respectfully requests that the Court grant LegitScript's motion for summary judgment.

///

DEFENDANT LEGITSCRIPT LLC'S MOTION
FOR SUMMARY JUDGMENT – 25

## VI.    CONCLUSION

For the reasons stated above, LegitScript respectfully requests that the Court find that LegitScript is entitled to summary judgment on PCC's claim under the Sherman Act, 15 U.S.C. § 1, as PCC's claim is barred under issue preclusion and PCC lacks antitrust standing.


Dated:  June 1, 2023                                  GORDON REES SCULLY
                                                      MANSUKHANI, LLP


                                        By: *s/ Richard P. Sybert*
                                           Richard P. Sybert, OSB No. 833714
                                           rsybert@grsm.com
                                           John T. Mills (*Pro Hac Vice*)
                                           jtmills@grsm.com
                                           *Attorneys for Defendant LegitScript, LLC*

DEFENDANT LEGITSCRIPT LLC'S MOTION
FOR SUMMARY JUDGMENT –  26

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

## CERTIFICATE OF SERVICE

I hereby certify that on this **1st** day of **June, 2023**, the foregoing **DEFENDANT LEGITSCRIPT LLC'S MOTION FOR SUMMARY JUDGMENT** was filed electronically with the Clerk of the Court using the CM/ECF system which will send a notification of such filing to all counsel of record in this matter.

GORDON REES SCULLY MANSUKHANI LLP

By: *s/ Richard P. Sybert*
    Richard P. Sybert, OSB No. 833714
    rsybert@grsm.com
    John T. Mills (pro hac vice)
    jtmills@grsm.com
    Hannah Brown (pro hac vice)
    hbrown@grsm.com
    Matthew Mejia (pro hac vice)
    mmejia@grsm.com
    Attorneys for Defendant
    LEGITSCRIPT, LLC

GORDON REES SCULLY MANSUKHANI, LLP
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600