Philip S. Van Der Weele, OSB #863650
phil.vanderweele@klgates.com
K&L GATES LLP
One SW Columbia Street, Suite 1900
Portland, Oregon 97204
Telephone: (503) 228-3200

Aaron Gott (admitted *pro hac vice*)
aaron.gott@bonalawpc.com
BONA LAW PC
331 2nd Avenue, Suite 420
Minneapolis, MN 55401
Telephone: (612) 968-7758

James Lerner (admitted *pro hac vice*)
james.lerner@bonalawpc.com
BONA LAW PC
287 Park Avenue South, Suite 422
New York, NY 10010
Telephone: (212) 634-6861

***Counsel for Plaintiff***

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| PHARMACYCHECKER.COM LLC,<br><br>        *Plaintiff*,<br>  vs.<br><br>LEGITSCRIPT LLC,<br><br>        *Defendant*. | Civil Action No.3:22-cv-00252-SI<br><br>PLAINTIFF'S OPPOSITION TO DEFENDANT LEGITSCRIPT LLC'S MOTION FOR SUMMARY JUDGMENT<br><br> REDACTED<br><br>ORAL ARGUMENT REQUESTED<br><br>Judge Michael H. Simon |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT ........................................................................ 1

BACKGROUND ................................................................................................ 2

LEGAL STANDARD ........................................................................................ 7

ARGUMENT .................................................................................................... 8

   I.   LEGITSCRIPT CANNOT MEET THE REQUIREMENTS FOR ISSUE
   PRECLUSION ............................................................................................ 8

     A. There Is No Final Judgment ........................................................... 9

     B. The Issues Are Not Identical ......................................................... 10

   II.  AN INDEPENDENT ANALYSIS ALSO REQUIRES THAT SUMMARY
   JUDGMENT BE DENIED ......................................................................... 12

     A. LegitScript's Independent Motion Is Procedurally Deficient ...................... 13

     B. LegitScript's Motion Fails on the Merits ....................................... 15

       1. Antitrust standing is not removed by a plaintiff's conduct ....................... 15

       2. The relevant authorities rightly focus on whether the cause of
       plaintiff's injury was a legal barrier or defendant's anticompetitive
       conduct ......................................................................................... 19

       3. Even if the Court concludes that "completely or almost completely
       geared toward facilitating" is the correct test, LegitScript has not met it ... 24

CONCLUSION ................................................................................................ 29

CERTIFICATE OF COMPLIANCE ................................................................ 1

# TABLE OF AUTHORITIES

**Cases**                                                             **Page(s)**

*Allied Tube & Conduit Corp. v. Indian Head, Inc.,*
486 U.S. 492 (1988) .............................................. 21

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,*
459 U.S. 519 (1983) .............................................. 18

*Authenticom, Inc. v. CDK Glob., LLC (In re Dealer Mgmt. Sys., Antitrust Litigation),*
313 F. Supp. 3d 931 (N.D. Ill. 2018) ............................... 21, 22

*Bhan v. NME Hosps., Inc.,*
929 F.2d 1404 (9th Cir. 1991) ..................................... 7

*Biocad JSC v. F. Hoffmann-La Roche,*
942 F.3d 88 (2d Cir. 2019) (Katzmann, C.J., concurring)..................... 21

*Calnetics Corp. v. Volkswagon of Am., Inc.,*
532 F.2d 674 (9th Cir. 1976) ............................. 11, 12, 16, 17

*In re: Canadian Import Antitrust Litigation,*
470 F.3d 785 (8th Cir. 2006) ...................................... 20, 21

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ............................................ 14, 15

*Clark v. Bear Stearns & Co.,*
966 F.2d 1318 (9th Cir. 1992) ....................................... 8

*Dean v. Gonzales,*
No. 2:10-cv-1355 MCE KJN P, 2014 U.S. Dist. LEXIS 78283 (E.D. Cal. June 6, 2014)............................................. 14

*Giles v. GMAC,*
494 F.3d 865 (9th Cir. 2007) .................................. 7, 8, 24

*High Tech Gays v. Def. Indus. Sec. Clearance Off.,*
895 F.2d 563 (9th Cir. 1990) ..................................... 7, 13

*Ill. Brick Co. v. Illinois,*
431 U.S. 720 (1977) ......................................... 23, 24, 26

*Joe Hand Promotions, Inc. v. Steak*,
    No. 2:12-cv-1930-JAD-PAL, 2014 U.S. Dist. LEXIS 43431 (D. Nev.
    Mar. 31, 2014) ................................................................................................ 13, 14

*Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, Inc.*,
    340 U.S. 211 (1951), *overruled on other grounds by Copperweld
    Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984) ........................... 15, 16, 17

*Maltz v. Sax*,
    134 F.2d 2 (7th Cir. 1943) .............................................................................. 22, 23

*McKissick v. City of Reno*,
    No. 3:17-cv-00458-MMD-CBC, 2019 U.S. Dist. LEXIS 119567 (D.
    Nev. July 18, 2019) ............................................................................................... 14

*Memorex Corp. v. IBM Corp.*,
    555 F.2d 1379 (9th Cir. 1977) .................................................. 11, 12, 16, 17, 23, 26

*Minn. Mining & Mfg. Co. v. N.J. Wood Finishing Co.*,
    381 U.S. 311 (1965) .............................................................................................. 18

*Modesto Irrigation Dist. v. Pac. Gas & Elec. Co.*,
    309 F. Supp. 2d 1156 (N.D. Cal. 2004), *aff'd*, 158 F. App'x 807 (9th
    Cir. 2005) .............................................................................................................. 19

*Monarch Marking Sys. Inc. v. Duncan Parking Meter Maint. Co.*,
    No. 82 C 2599, 1988 U.S. Dist. LEXIS 2041830 (N.D. Ill. Mar. 8,
    1988) ..................................................................................................................... 20

*Nat'l Soc'y of Pro. Eng'rs v. United States*,
    435 U.S. 679 (1978) .............................................................................................. 18

*Orr v. Bank of Am.*,
    285 F.3d 764 (9th Cir. 2002) ........................................................................... 13, 15

*Pearl Music Co. v. Recording Indus. Ass'n*,
    460 F. Supp. 1060 (C.D. Cal. 1978) ................................................................. 12, 22

*Perma Life Mufflers v. Int'l Parts Corp.*,
    392 U.S. 134 (1968), *overruled on other grounds by Copperweld
    Corp. v. Indep. Tube Corp.*, 467 U.S. 752 (1984) ....................................... 11, 16, 17

*Peterson v. Clark Leasing Corp.*,
    451 F.2d 1291 (9th Cir. 1971) .............................................................................. 10

*Radovich v. NFL*,
    352 U.S. 445 (1957) .............................................................................................. 18

*Realnetworks, Inc. v. DVD Copy Control Ass'n, Inc.*,
 Nos. C 08-4548, C 08-4719 MHP, 2010 U.S. Dist. LEXIS 1433 (N.D.
 Cal. Jan. 8, 2010) ........................................................................................ 19

*Rebotix Repair, LLC v. Intuitive Surgical, Inc.*,
 No. 8:20-cv-2274-VMC-TGW, 2022 U.S. Dist. LEXIS 142861 (M.D.
 Fla. Aug. 10, 2022) ................................................................................ 20, 21

*Ritzen Grp., Inc. v. Jackson Masonry, LLC*,
 140 S. Ct. 582 (2020) ................................................................................... 9

*Semke v. Enid Auto. Dealers Ass'n*,
 456 F.2d 1361 (10th Cir. 1972) ................................................................. 17

*Skilstaf, Inc. v. CVS Caremark Corp.*,
 669 F.3d 1005 (9th Cir. 2012) ..................................................................... 8

*Sw. Pet Prods. v. Koch Indus.*,
 32 F. App'x 213 (9th Cir. 2002) ................................................................ 10

*United States v. Topco Assocs.*,
 405 U.S. 596 (1972) .................................................................................. 18

*Volvo N. Am. Corp. v. Men's Int'l Pro. Tennis Council*,
 857 F.2d 55 (2d Cir. 1988) ........................................................................ 17

## Statutes, Rules and Regulations

15 U.S.C. § 1 ........................................................................................ 9, 15, 18

15 U.S.C. §§ 12–27, as amended .................................................................. 18

15 U.S.C. §§ 41 *et seq.* .............................................................................. 23

21 U.S.C. §§ 301 *et seq.* ....................................................................... 27, 28

21 U.S.C. § 381 ............................................................................................ 28

21 U.S.C. § 384 ............................................................................................ 28

Pub. L. 106-387, § 1(a), 114 Stat. 1549A-40 (Oct. 28, 2000) ................ 27, 28

Fed. R. Civ. P. 12 .......................................................................................... 3

Fed. R. Civ. P. 54 ................................................................... 1, 4, 9, 10, 11

Fed. R. Civ. P. 56 ................................................................................. 7, 13

Or. L.R. 56-1 ............................................................................................. 13

C.F.R. 200.100 ........................................................................................ 27

**Constitutional Provisions**

U.S. CONST. amend. I .............................................................................. 29

U.S. CONST. amends. I–X ....................................................................... 18

**Other Authorities**

I Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* (4th ed. 2018) ...................................................................................................... 16

FDA's Personal Importation Policy, https://fda.gov/industry/import-basics/personal-importation#UScitizen .............................................. 28

## PRELIMINARY STATEMENT

This case is about LegitScript's participation in a decade-plus-long conspiracy to exclude PharmacyChecker from providing informational services to worldwide consumers regarding prescription drugs. LegitScript claims its anticompetitive conduct is immunized from antitrust liability because PharmacyChecker did not prevail on summary judgment in the related New York litigation, or failing that, because PharmacyChecker's business is completely geared toward facilitating illegality independent of the New York decision.

Issue preclusion is inapplicable: there is no final judgment in New York and the issues presented are not the same. Judge Karas denied a request for entry of judgment under Federal Rule of Civil Procedure 54(b), and the New York decision is based on a legal standard irrelevant in the Ninth Circuit (and with due respect to Judge Karas, unprecedented in any Circuit).

Nor can LegitScript prevail based on this Court's "independent review" of the evidence using the "completed geared toward facilitating" standard. LegitScript has not cited any evidence to support a claim that PharmacyChecker is running an illegal or mostly illegal operation—and aside from procedural history in the New York case, it does not cite facts or evidence at all.

Furthermore, LegitScript has not cited one decision where a plaintiff lost antitrust standing because it was "geared toward" facilitating illegality by someone else. Nor has any court (besides Judge Karas in the SDNY case) analyzed antitrust standing by categorizing revenue to determine how much "geared toward facilitating" revenue is enough to take away standing at summary judgment.

That is what LegitScript asks this Court to do even though that approach is inherently fact-bound and violates Supreme Court and Ninth Circuit law rejecting any kind of antitrust defense based on the plaintiff's supposedly wrongful conduct. In any event, LegitScript has not cited (and cannot cite) any statute or regulation that PharmacyChecker has violated by providing its informational services, whereas criminal antitrust law clearly forbids LegitScript from horizontally conspiring to suppress competition.

## BACKGROUND

LegitScript is part of a network of organizations funded, at least in part, by pharmaceutical manufacturers, large pharmacy chains, and other pharmacy interests to use shadow regulation by agreements with key internet gatekeepers to manipulate and suppress the information available on the Internet to consumers about lower-cost, safe prescription medicine. As a result of this scheme, PharmacyChecker was effectively excluded from the market, which harmed competition and seriously injured PharmacyChecker.

### *Procedural History*

In August 2019, PharmacyChecker sued five defendants in the District Court for the Southern District of New York (the "New York Litigation"), including LegitScript, alleging an illegal conspiracy to censor the Internet and prevent consumers from obtaining information about online pharmacies and prescription medicine prices worldwide, which included a boycott of PharmacyChecker, in violation of federal antitrust law. LegitScript joined the other defendants in moving

Page 2 -  Plaintiff's Opposition to Defendant's Motion for Summary Judgment

to dismiss under Rule 12(b)(6), and separately moved to dismiss for lack of personal jurisdiction. Judge Karas granted the latter motion, finding New York's more restrictive long-arm statute did not allow for jurisdiction despite allegations of LegitScript conspiring to boycott New York-based PharmacyChecker. Judge Karas subsequently transferred the claims against LegitScript to this Court, which LegitScript opposed, while the New York Litigation proceeded. Once transferred, LegitScript moved to dismiss under Rule 12(b)(6), and this Court denied the motion. Dkt. 244.

After a phased discovery period in the New York Litigation where one-way discovery was taken from PharmacyChecker and third parties, the New York defendants moved for summary judgment based on the claim that PharmacyChecker lacks antitrust standing because its primary purpose is to facilitate illegal drug importation.

Once that motion was briefed, LegitScript requested that this Court stay discovery based on a claim of undue financial hardship—the cost of its litigation defense—and its argument that the decision in New York would be persuasive or even preclusive here. Dkt. 256 at 4. That request was denied. The Court found "no undue hardship to LegitScript nor any certainty of narrowing the factual and legal issues in this case." *Id.* at 6.

In April 2023, Judge Karas' decision granting summary judgment was made public. After resolving numerous factual disputes, Judge Karas ruled that PharmacyChecker lacks antitrust standing because its business is "completely or

almost completely geared toward facilitating" consumers' alleged illegal importation of lower-cost, non-controlled drugs for personal use with a prescription. Declaration of James Lerner (Sealed) ("Lerner Decl. Sealed"), Ex. 1 (Op. & Order dated Mar. 28, 2023) (Dkt. 346) at 63.

The New York parties, including PharmacyChecker, jointly requested that Judge Karas enter judgment as to the antitrust claim under Rule 54(b) so that PharmacyChecker could appeal the decision immediately to the United States Court of Appeals for the Second Circuit. Declaration of James Lerner (Public) ("Lerner Decl. Public"), Ex. 1 (Order Denying Fed. R. Civ. P. 54(b) Certification). Judge Karas denied the request, noting an appeal to the Second Circuit would not further this Court's litigation because the New York decision is non-binding here. *Id.* at 4, 6. As a result, no final judgment has been entered and the New York Litigation will proceed to discovery on PharmacyChecker's remaining (non-antitrust) claim.

The Court's prior stay denial specifically contemplated this exact scenario that, even if Judge Karas granted summary judgment, the result here would be based on Ninth Circuit law. Dkt. 256 at 5. Even so, LegitScript renewed its previous motion for a stay, (which remains pending), and moves now for summary judgment based on issue preclusion, or alternatively, this Court's fresh look at the evidence and facts presented in New York.

### *Statement of Facts*

PharmacyChecker launched in 2003 to promote consumer health by evaluating the practices of online pharmacies and comparing their prices. Lerner Decl. Sealed,

Ex. 2 (PharmacyChecker's Opposition to the New York Motion for Summary Judgment) at 3. It operates a rigorous online pharmacy accreditation program to inform visitors about online pharmacies that meet safety credentials and provides drug price comparison information for visitors worldwide, while also raising awareness about policy problems around prescription drug access and affordability. *Id.* PharmacyChecker is not a pharmacy and does not buy, sell, import, dispense, process orders for, or distribute any drugs. Lerner Decl. Sealed, Ex. 1 at 11.

PharmacyChecker's online pharmacy verifications and drug price comparisons are widely trusted and referenced in media sources including AARP Magazine, the Wall Street Journal, Yahoo Finance, the New York Times, Kaiser Health News, and many others. Lerner Decl. Sealed, Ex. 2 at 3–4. It is one of few resources giving transparency to prescription drug prices, scrutinizing (critically) a drug industry that charges U.S. patients far more than in other countries. *Id.* at 4. Its drug price comparisons have been cited by the FDA and academic researchers. *Id.* Organizations such as Medicines Sans Frontiers (i.e., Doctors Without Borders) have sought advice from PharmacyChecker on international pharmacy safety and drug pricing. *Id.*

PharmacyChecker provides its information services to its website visitors for free, like many of the most prominent websites that exist today. The vast majority of visitors (about ▮▮▮ of unique visitors) never click through to any pharmacy's website. *Id.* at 4–5. These visitors use the information on the website as a comparative-price reference, for research, for policy advocacy, or as an educational tool. *Id.* at 5. These visitors do not affect PharmacyChecker's revenues at all.

Some visitors to the website use PharmacyChecker's U.S. prescription drug discount card to fill prescriptions at licensed brick-and-mortar pharmacies in the United States. *Id.*

Rather than charge visitors for its services, PharmacyChecker supports its website and programs with revenue from several different categories, including from click-through fees and verification program fees (including fees for initial accreditation and fees for ongoing monitoring), paid by online pharmacies. *Id.* Only verified online pharmacies may participate in the drug listing comparison program. *Id.* at 4. The remaining revenue is from other sources such as the prescription drug discount card, Medicare drug plans, advertising, and e-books. Lerner Decl. Sealed, Ex. 1 at 16.

Of total revenue, just over half ███████ came from clicks by U.S. users to non-U.S. online pharmacies. Lerner Decl. Sealed, Ex. 2 at 5. And fewer U.S. pharmacies have participated in PharmacyChecker's programs in recent years because of LegitScript's (and its co-conspirators') efforts to coerce or dissuade them from participating in PharmacyChecker's verification and listing programs. *Id.*

As one example, ████████████████ one of the largest U.S. online pharmacies, left PharmacyChecker's verification program in 2017 when New York defendant National Association of Boards of Pharmacy threatened its VIPPS accreditation. *Id.* at 5–6. VIPPS accreditation is key for U.S. online pharmacies because it is required for a pharmacy domain name (the pharmacy top-level-domain was proposed by defendant and its co-conspirators and managed by NABP). *Id.* In

2018, NABP again threatened to strip ████████████ VIPPS accreditation if it publicly associated with plaintiff by listing its online U.S. pharmacy prices on PharmacyChecker.com. *Id*. LegitScript and the New York defendants have also run U.S.-targeted advertisements using "pharmacychecker" as an AdWord to dissuade both online pharmacies and consumers from associating with or using plaintiff's services. *Id*. PharmacyChecker does not know how many other U.S. online pharmacies have been coerced or dissuaded by LegitScript and its co-conspirators.

PharmacyChecker does not track visitor activity after clicking through to a pharmacy website, and it has no data connecting clicks to transactions. *Id*. at 6. It does not receive such information from pharmacies that participate in its programs. *Id*. PharmacyChecker earns revenue when visitors click through to pharmacies, but none of that revenue depends on transactions (except for the U.S. prescription drug discount card). *Id*. According to one pharmacy's testimony, ████ of its clicks led to a transaction. *Id*.

## LEGAL STANDARD

Summary judgment should be granted only where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *High Tech Gays v. Def. Indus. Sec. Clearance Off.*, 895 F.2d 563, 570 (9th Cir. 1990) (summary judgment shall be entered only where depositions, answers to interrogatories and affidavits, etc., show that there is no genuine issue as to any material fact). The movant bears the "initial burden to show that there are no genuine issues of material fact." *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). If the movant can demonstrate with

evidence "the absence of a genuine issue of material fact, the nonmoving party must come forward with evidence creating a genuine issue of material fact." *Giles v. GMAC*, 494 F.3d 865, 872 (9th Cir. 2007).

The non-movant is not required to conclusively prove its material facts; "all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a judge or jury to resolve the parties' differing versions of the truth at trial." *Id*. The evidence of the "non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. "[C]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id*.

## ARGUMENT

## I.    LEGITSCRIPT CANNOT MEET THE REQUIREMENTS FOR ISSUE PRECLUSION

Issue preclusion bars litigation of issues previously adjudicated in an earlier proceeding only if three requirements are met: (1) the issue necessarily decided in the previous proceeding is identical to the issue being litigated in the current proceeding, (2) the first proceeding ended with a final judgment on the merits, and (3) the party against whom issue preclusion is asserted was a party or in privity with a party in the earlier proceeding. *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1021 (9th Cir. 2012); *see also* Dkt. 256 at 5 n.2 (citing *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1320 (9th Cir. 1992)). To meet this burden, "[i]t is not enough that the party introduce the decision of the prior court." *Clark*, 966 F.2d at 1321.

The only requirement that LegitScript can meet is the third:

PharmacyChecker is a party in the New York Litigation. Thus, LegitScript's motion for summary judgment based on issue preclusion should be denied because it cannot establish either (1) an identical issue to be decided or (2) that the first proceeding ended with a final judgment on the merits.

## A.    There Is No Final Judgment

This Court previously deferred as premature LegitScript's argument that "collateral estoppel, or issue preclusion, *might* apply" because, among other reasons, "the New York Lawsuit has not yet been fully litigated or decided." Dkt. 256 at 5 n.2. That was not the case when LegitScript filed its motion for summary judgment, and since that time, Judge Karas in the Southern District of New York has issued an order of his own that forecloses that possibility for now. *See* Lerner Decl. Public, Ex. 1 ("Rule 54(b) Order").

In his Rule 54(b) Order, Judge Karas denied a *joint* request of PharmacyChecker and the New York defendants that he enter a final order and judgment as to the Sherman Act claim under Rule 54(b). Under that rule, an order or decision that "adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties rights and liabilities." Fed. R. Civ. P. 54(b); *see also Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 586 (2020) ("A 'final decision' within the meaning of § 1291 is normally limited to an order that resolves the entire case."). The rule provides an exception allowing a district court to "direct entry of a

final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). Judge Karas instead ordered the case to proceed in discovery as to the remaining non-antitrust claim that PharmacyChecker.com asserts against the National Association of Boards of Pharmacy. Rule 54(b) Order at 6. Thus, under Rule 54(b) there has been no final judgment and therefore, there is no issue to preclude. Fed. R. Civ. P. 54(b).

### B.    The Issues Are Not Identical

Issue preclusion is not available where, as here, a different legal standard applies, even to the same facts. *Peterson v. Clark Leasing Corp.*, 451 F.2d 1291, 1292 (9th Cir. 1971) ("Issues are not identical if the second action involves the application of a different legal standard, even though the factual setting of both suits [is] the same."); *Sw. Pet Prods. v. Koch Indus.*, 32 F. App'x 213, 215 (9th Cir. 2002) (issues not identical where "different rule of law applies").

In denying LegitScript's first motion to stay, the Court acknowledged that the only issue presented in the New York Litigation "is the legal question of whether PharmacyChecker lacks antitrust standing if its business is 'completely or almost completely geared toward facilitating illegality.' " Dkt. 256 at 5. And that is, ultimately, the only question that Judge Karas decided in his order granting summary judgment. Lerner Decl. Sealed, Ex. 1 at 64. The Court further stated that "it is unclear whether Ninth Circuit precedent on this issue would yield the same result." Dkt. 256 at 5. Judge Karas agreed stating that his rulings or even a Second Circuit decision "would be persuasive at best, and certainly not binding upon a

district court in the Ninth Circuit." Rule 54(b) Order at 4.

LegitScript characterizes "the main issue" on which it seeks preclusion as involving "[PharmacyChecker's] antitrust standing and whether its business was completely or almost completely geared toward facilitating illegality." Dkt. 271 at 9. But the issue decided in New York, as this Court previously observed, has a finer point: "the legal question of whether PharmacyChecker lacks antitrust standing if its business is 'completely or almost completely geared toward facilitating illegality.' " Dkt. 256 at 5. That is not a question in this proceeding, where neither law of the case nor binding precedent imposes a "completely or almost completely geared toward facilitating" standard.

The narrow issue of whether PharmacyChecker **loses** its antitrust standing if its business is "completely or almost completely geared toward facilitating illegality," is inapplicable to the question of antitrust injury in this Court because Ninth Circuit precedent decisively precludes it. *See Calnetics Corp. v. Volkswagon of Am., Inc.*, 532 F.2d 674, 689 (9th Cir. 1976) ("Labels, however, are not controlling, and we find no legitimate reason for distinguishing defendants' 'illegal sales' argument from the *in pari delicto* type of defense struck down in *Perma Life*.") (citing *Perma Life Mufflers v. Int'l Parts Corp.*, 392 U.S. 134, 139 (1968), *overruled on other grounds by Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752 (1984)); *Memorex Corp. v. IBM Corp.*, 555 F.2d 1379, 1381–82 (9th Cir. 1977) ("[I]llegality on the part of the plaintiff is the common nucleus of all of these defenses . . . . [Plaintiff's] own illegal conduct did not divest it of an antitrust action.").

LegitScript cites a single district court case for the proposition that Ninth Circuit courts have held "plaintiffs had no standing or capacity to maintain antitrust action [where] plaintiffs engaged in a business which is, by its very nature, entirely illegal." Dkt. 271 at 10–11 (citing *Pearl Music Co. v. Recording Indus. Ass'n*, 460 F. Supp. 1060, 1068 (C.D. Cal. 1978)). This decision is not only non-binding, it expressly contradicts—rather than distinguishes—the binding law of *Calnetics* and *Memorex*. And even if *Pearl* was binding, it would be inapposite because it concerned the "totally illegal" conduct of the plaintiff. 460 F. Supp. at 1068. While LegitScript suggests otherwise, Judge Karas did not rule that PharmacyChecker is illegal itself; he addressed whether PharmacyChecker's business was "geared toward facilitating" the illegal conduct of consumers. Indeed, Judge Karas said precisely that: "What [PharmacyChecker] is doing isn't illegal by itself; there's no basis to say that." Lerner Decl. Public, Ex. 2 at 48:4–49:5. And the New York defendants did not argue that PharmacyChecker is itself illegal.

## II.    AN INDEPENDENT ANALYSIS ALSO REQUIRES THAT SUMMARY JUDGMENT BE DENIED

Assuming summary judgment is denied based on issue preclusion, LegitScript urges the Court to conduct its own "independent analysis" of the "same issues, the same facts, and the same evidence" that Judge Karas considered in the New York Litigation. Mot. Summ. J. (Mot.) at 17 (Dkt. 271). But as set forth above, the legal issues are not, in fact, the same. LegitScript does not bother to identify what the relevant facts are, let alone present evidence establishing the absence of a factual dispute. And the evidence that ***the New York parties*** presented to Judge Karas is

not in this record here—it was ***LegitScript*** who asked that discovery in this litigation be stayed. In any event, an independent review should result in denying LegitScript's motion.

## A.    LegitScript's Independent Motion Is Procedurally Deficient

In the New York Litigation, after five months of one-way discovery, the parties submitted extensive briefing and statements of disputed and undisputed facts, with evidentiary exhibits and objections, totaling at least 4,700 pages. LegitScript's attempt to rely on that entire record, without specifically identifying or attaching any of it, is improper. Moreover, the materials presented to Judge Karas on summary judgment are not in this discovery record.

Rule 56(c) requires the movant to come forward with ***evidence***—depositions, answers to interrogatories, affidavits, and so forth—to establish there is no genuine issue of material fact. *High Tech Gays*, 895 F.2d at 570. In so doing, the movant must "cit[e] to ***particular parts of materials*** in the record," including in documents and deposition transcripts. Fed. R. Civ. P. 56(c)(1)(A) (emphasis added). Likewise, Local Rule 56-1 requires that "[a] party's factual positions must be supported by citations, by page and line as appropriate, to ***the particular parts of materials*** in the record." (Emphasis added.)

The Ninth Circuit has cautioned that movants who fail to pinpoint cite the record upon which they rely risk the court striking the evidence at issue. "Parties [must] submit evidence responsibly," *Orr v. Bank of Am.*, 285 F.3d 764, 774–75 (9th Cir. 2002), and courts are "not required to 'paw over files without the assistance from

the parties' in order to evaluate their contentions." *Joe Hand Promotions, Inc. v. Steak*, No. 2:12-cv-1930-JAD-PAL, 2014 U.S. Dist. LEXIS 43431, at *5–8 (D. Nev. Mar. 31, 2014); *Dean v. Gonzales*, No. 2:10-cv-1355 MCE KJN P, 2014 U.S. Dist. LEXIS 78283, at *8–10 (E.D. Cal. June 6, 2014) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see McKissick v. City of Reno*, No. 3:17-cv-00458-MMD-CBC, 2019 U.S. Dist. LEXIS 119567, at *17–18 (D. Nev. July 18, 2019) (motion that does not "particularly reference the supporting record," is muddled or confusing to follow violates the procedural rules).

Based on these principles, LegitScript's motion fails for at least two reasons.

**First**, LegitScript has not come forward with any evidence to establish the absence of material factual disputes, let alone evidence identified with some modicum of particularity. Mot. at 18 (stating that the SDNY record is "ample" yet LegitScript purports to incorporate all of it by reference). For its "relevant facts," LegitScript generally cites to 4,700 or more pages of briefing, exhibits and declarations in the New York Litigation—public, redacted versions, no less. *Id*. That is an affront to the substantive rule that requires the movant to present evidence sufficient to meet its burden and the procedural rules requiring that supporting evidence be identified specifically (and it also puts LegitScript's opening memorandum of law well beyond the applicable page limits).

**Second**, the SDNY discovery materials that the parties presented to Judge Karas are not before this Court. While prior to filing its motion, LegitScript's counsel did express to PharmacyChecker's counsel that this Court "should have the

unredacted materials" and asked if PharmacyChecker objected on confidentiality grounds, Pharmacy Checker replied that it did not so object. If that exchange constitutes a request that ***PharmacyChecker*** produce the SDNY summary-judgment materials here, LegitScript made that request ***after*** LegitScript represented to this Court that discovery should be stayed. LegitScript cannot have it both ways: either discovery should be stayed or it should not. If LegitScript did not have the factual and expert evidence required to move for summary judgment ***in this litigation***, it should not have done so. This is a consequence of LegitScript's strategic choices, including to be dismissed from the New York Litigation and placed on a track—for discovery and summary judgment purposes—separate from the New York defendants.

Accordingly, the Court is within its discretion to strike the factual evidence upon which LegitScript purports to rely, leaving no factual record at all. That is sufficient to deny summary judgment. *Orr*, 285 F.3d at 774–75; *Celotex*, 477 U.S. at 323.

### B.    LegitScript's Motion Fails on the Merits

#### 1.    Antitrust standing is not removed by a plaintiff's conduct

A federal court may not decline to enforce Section 1 of the Sherman Act on the purported basis that a plaintiff's business is "completely or almost completely geared toward facilitating" unlawful conduct by others.

The Supreme Court rejected an "unclean hands" exemption from the federal antitrust laws, even when the plaintiff's own conduct is a felony antitrust violation. *Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, Inc.*, 340 U.S. 211, 214 (1951),

*overruled on other grounds by Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984) ("The alleged illegal conduct of petitioner, however, could not legalize the unlawful combination by respondents nor immunize them against liability to those they injured."); *Perma Life Mufflers v. Int'l Parts Corp.*, 392 U.S. 134, 139 (1968) (If a plaintiff did something unlawful, she remains "fully subject to civil and criminal penalties for [her] own illegal conduct."); I Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶361 (4th ed. 2018); *see also Memorex.*, 555 F.2d at 1382 ("A wrongful act committed against one who violates the antitrust laws must not become a shield in the violator's hands against the operation of the antitrust laws."). Although in these cases the Court most directly abolished equitable defenses, their reasoning demands rejecting LegitScript's wish to avoid liability based on an allegation that PharmacyChecker's conduct is wrongful.

Accordingly, the Ninth Circuit, in *Calnetics*, declined to exclude damages incurred at times when plaintiff's business was illegal because the argument is "in effect" an "unclean hands" defense, "which is not a defense in an action for treble damages." 532 F.2d at 688. It reasoned that "[l]abels . . . are not controlling, and we find no legitimate reason for distinguishing defendants' 'illegal sales' argument from the *in pari delicto* type of defense struck down in *Perma Life*." *Id*. at 689. Ultimately, "if Calnetics proves that defendants unlawfully foreclosed it from the [market], it is entitled to recover damages actually suffered even though the market position from which Calnetics was displaced had been attained only through illegal conduct." *Id*.

And in *Memorex*, where the plaintiff allegedly stole trade secrets, the court rejected an "unlawful market presence" defense as indistinguishable from the equitable defense rejected in *Perma Life*: "illegality on the part of the plaintiff is the common nucleus of all of these defenses," all rejected under the same rationale: vigorous antitrust enforcement. 555 F.2d at 1381.

Contrary to LegitScript's claim, the rationale behind *Calnetics* and *Memorex* does not disappear because the defendant characterizes the misconduct alleged against the plaintiff as a "public" wrong (rather than a "private" wrong committed against the defendant only). Mot. at 21. An illegal conspiracy like LegitScript's remains subject to antitrust liability even where PharmacyChecker's alleged wrongdoing is against the public interest (for example, an antitrust violation). *Kiefer-Stewart*, 340 U.S. at 214 (a plaintiff who committed an antitrust felony may pursue antitrust damages); *Volvo N. Am. Corp. v. Men's Int'l Pro. Tennis Council*, 857 F.2d 55, 67–68 (2d Cir. 1988) (citing *Perma Life*, 392 U.S. at 139–40) (holding that a cartel member has antitrust standing to sue its co-conspirators); *Semke v. Enid Auto. Dealers Ass'n*, 456 F.2d 1361, 1370 (10th Cir. 1972) (even though plaintiff's entire business was allegedly in violation of state licensing statutes ***designed to protect the public***, he was entitled to prove antitrust damages) (emphasis added). In any event, PharmacyChecker has committed ***no*** wrong, private or public: there is no statute or cause of action that prohibits PharmacyChecker's services and LegitScript has cited none.

Removing standing conflicts with the Supreme Court's admonishment that courts "not add requirements to burden the private [antitrust] litigant beyond what is specifically set forth by Congress in those laws," and its forceful rejection of various pleas for exceptions—even for dangerous goods and services—because to do so "would be tantamount to repeal of" the Sherman Act. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 547 n.1 (1983) (quoting *Radovich v. NFL*, 352 U.S. 445, 453–54 (1957)); *Nat'l Soc'y of Pro. Eng'rs v. United States*, 435 U.S. 679, 695 (1978).

Finally, this is the wrong case to adopt a rule that unclean hands removes standing. PharmacyChecker is not a pharmacy; it does not dispense drugs; it does not process or otherwise complete drug transactions (foreign or domestic); and it does not import drugs. Its website provides information. LegitScript does not dispute this, nor did the New York defendants. Moreover, Congress did not invite private litigants to enforce drug importation laws, but Congress ***did*** empower victims of antitrust conspiracies to enforce the Sherman Act. This Court should decline the invitation to repudiate longstanding congressional policy and high-court precedent. *United States v. Topco Assocs.*, 405 U.S. 596, 610 (1972) (federal antitrust laws are the "Magna Carta of free enterprise," as important to interstate commerce and economic liberty "as the Bill of Rights is to the protection of our fundamental personal freedoms"); *Minn. Mining & Mfg. Co. v. N.J. Wood Finishing Co.*, 381 U.S. 311, 318–19 (1965) (Congress relies on antitrust victims to act as private attorneys general through trebled damages and attorneys' fees under the Clayton Act.).

## 2. The relevant authorities rightly focus on whether the cause of plaintiff's injury was a legal barrier or defendant's anticompetitive conduct

To the extent that some plaintiffs' claims were dismissed in recent cases where the legality of their operations was questioned, it was because a legal barrier (a regulatory bar, for example) factually broke the chain of causation between the challenged conduct and the plaintiff's injury.

That is the rule applied in cases like *Realnetworks,* where, as here, the plaintiffs were competitors or potential competitors of the defendant. In *Realnetworks, Inc. v. DVD Copy Control Ass'n, Inc.,* the court said the plaintiff was **not** barred from its antitrust claim "because it has engaged in illegal activity; rather the court holds that Real has failed to allege a plausible antitrust injury," as its exclusion from the market resulted from a court injunction rather than defendant's anticompetitive conduct. Nos. C 08-4548, C 08-4719 MHP, 2010 U.S. Dist. LEXIS 1433, at *20 (N.D. Cal. Jan. 8, 2010) (additionally, the plaintiff's own conduct was undoubtedly "illegal" by itself). Similarly, in *Modesto Irrigation District v. Pacific Gas & Electric Co.*, the plaintiff sued PG&E for failing to provide service but providing service would have been illegal. 309 F. Supp. 2d 1156 (N.D. Cal. 2004), *aff'd*, 158 F. App'x 807 (9th Cir. 2005). Even though the plaintiff's own conduct was also unlawful, the case stands for the proposition that a legal barrier (no permit) was the actual cause of the plaintiff's injury. *Id.* at 1170. The common thread: the plaintiffs in these cases would have suffered the same injury even had the defendant not engaged in the conduct at issue.

Likewise, in *Monarch Marking Systems, Inc. v. Duncan Parking Meter Maintenance Co.*, the plaintiff retained antitrust standing for periods of time it was legally able to compete because its products were non-infringing; it lost it for periods in which it was legally unable to compete because its products were infringing. No. 82 C 2599, 1988 U.S. Dist. LEXIS 2041, at *4–5 nn.2–3 (N.D. Ill. Mar. 8, 1988). LegitScript's contention—that the court found that 70% of the "plaintiff's [business] enterprise" was potentially lawful—is a misrepresentation. There was no percentage-of-the-business finding at all. Mot. at 22–23 (the ***plaintiff*** contended that $7 million ***of its $10 million claim*** had to do with non-infringing time periods).

And most recently, in *Rebotix Repair, LLC v. Intuitive Surgical, Inc.*, the court confirmed that the so-called "standing" analysis should be focused on the causal chain. No. 8:20-cv-2274-VMC-TGW, 2022 U.S. Dist. LEXIS 142861, at *25–26 (M.D. Fla. Aug. 10, 2022). There, even though the plaintiff's entire market presence was allegedly illegal because the FDA had not authorized the plaintiff's services, there was "evidence that some facilities were using and were willing to use Rebotix's services notwithstanding the fact that Rebotix did not have FDA clearance at any time. Viewing the evidence in the light most favorable to Rebotix, a jury could find that Rebotix would have continued to provide its [] service to at least some health care facilities during the relevant time period but for" defendant's conduct. *Id.* at *26–27. The same is true here.

In none of those cases was a plaintiff denied standing because its conduct "facilitat[ed]" illegality by some third party. LegitScript cites *In re: Canadian Import*

*Antitrust Litigation*, 470 F.3d 785, 788–89, 791 (8th Cir. 2006), for that proposition, but that is not what *Canadian Import* says. Mot. at 18. There, the plaintiff was not a competitor but a class of nationwide prescription drug consumers who alleged they paid higher prices for U.S. drugs because pharmaceutical manufacturers conspired to suppress drug price competition, thus raising the prices of drugs they purchased in the United States. *Canadian Import*, 470 F.3d at 791. The court held the class had not suffered antitrust injury because their injury—higher prices was not caused by the conspiracy suppressing that competition; instead, a regulatory barrier did that. *Id.* The class would have suffered the same injury if defendants had not conspired because their U.S. drug prices would have been the same either way. *See also Rebotix*, 2022 U.S. Dist. LEXIS 142861, No. 8:20-cv-2274-VMC-TGW, at *25–26 (confirming that *Canadian Import* stands for the "proposition that a regulatory or legislative bar can ***factually*** break the chain of causation between an antitrust defendant's challenged conduct and the plaintiff's injury").

Here, PharmacyChecker would not have been boycotted but for LegitScript and its co-conspirators' conduct. There is no federal law that prohibited PharmacyChecker's market presence and LegitScript has cited none. *See Biocad JSC v. F. Hoffmann-La Roche*, 942 F.3d 88, 104 (2d Cir. 2019) (Katzmann, C.J., concurring); *cf. Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 507 (1988) (noting injury flowed from defendant's conduct, not any regulatory barrier).

LegitScript's portrayal of *Authenticom, Inc. v. CDK Glob., LLC (In re Dealer Management System Antitrust Litigation)* is also misleading. The complaint there

alleged that defendants' anticompetitive conduct "blocked or foreclosed [plaintiff] from the data-integration market" "***because of*** [d]efendants' anticompetitive conduct." 313 F. Supp. 3d 931, 948 (N.D. Ill. 2018). That was sufficient to establish antitrust standing on the pleadings despite the defendants' argument that a federal law prohibited plaintiff from entering the market without defendants' authorization to do so: "[d]efendants are not free to withhold such approval pursuant to illegal arrangements." *Id*. The case does not support the principle that plaintiff's wrongdoing eliminates antitrust standing. *Id*. at 947.

This leaves LegitScript with *Pearl* and *Maltz v. Sax*, 134 F.2d 2 (7th Cir. 1943). *Pearl* does not hold that antitrust standing is removed by a plaintiff's "facilitation" of illegal conduct by others. Mot. at 19–21. In *Pearl*, the plaintiffs' pirated tape enterprise was "totally" criminal, because it was "a crime to manufacture and sell pirated tapes." 460 F. Supp. 2d at 1067–68 (only a "minuscule" portion of its business may have been legal). The plaintiff had no legal right to generate the revenues at issue—the law, rather than defendants' actions, prevented it. LegitScript argues that *Pearl* applies because "PharmacyChecker has engaged in a business—the unlawful facilitation of drugs from international pharmacies—which by its very nature is entirely illegal." Mot. at 19–20.

PharmacyChecker does not know what the "unlawful facilitation of drugs" is, but PharmacyChecker does not buy, sell, distribute, process orders for, or import drugs and LegitScript cites no evidence otherwise. *Id*. Nor does LegitScript present evidence that PharmacyChecker's informational services are "entirely illegal" (or

illegal at all)—either with facts or with the law that PharmacyChecker has supposedly broken.

Finally, in *Maltz*—from 1943, non-binding, and at least partially overruled—the plaintiff lacked standing because its entire enterprise "was the making and selling of goods which could only be used by purchasers in furtherance of the business of gambling." 134 F.2d at 5. Their "use" was itself prohibited by the FTC Act. *Id.* The court reasoned that the plaintiff had no protectable legal right in the business for public policy reasons unrelated to antitrust. Even if *Maltz* remains good law, it is inapposite because the record does not reflect that PharmacyChecker's enterprise could only be used to further illegal activity; PharmacyChecker ***does*** have a protectable legal right in its business because no federal law prohibits any of its activities and clicking on PharmacyChecker's links is always lawful. In any event, *Maltz* does not support a purpose-driven or geared-toward-facilitating test to deprive a plaintiff of an otherwise meritorious antitrust claim.

Aside from the New York decision, PharmacyChecker is aware of no other court removing standing based on the percentage-share of its business that supposedly "facilitates," or was "geared toward facilitating" illegality. *See Memorex*, 555 F.2d at 1382 (Plaintiff "had 'rights' which could be injured [and] [t]his is all that is required. . . . Memorex's own illegal conduct did not divest it of an antitrust action.") (citation omitted). Such an analysis is inherently fact-intensive, not susceptible to resolution on summary judgment, and overly complex for a jury to administer. *Cf. Ill. Brick Co. v. Illinois*, 431 U.S. 720, 732, 745 (1977) (declining rule that would "greatly

complicate and reduce the effectiveness of already protracted treble-damages proceedings" inconsistent with "longstanding policy of encouraging vigorous private enforcement of the antitrust laws").

### 3. Even if the Court concludes that "completely or almost completely geared toward facilitating" is the correct test, LegitScript has not met it

LegitScript argues that PharmacyChecker is "completely or almost completely geared toward facilitating" illegality because "the majority" of PharmacyChecker.com's revenue "stems from facilitating the purchase of foreign drugs by U.S. consumers." Mot. at 24–25. The argument is fraught with material issues of disputed fact and inferences that are improper at summary judgment. *Giles*, 494 F.3d at 872.

More fundamentally, LegitScript cites no factual evidence to support the claim; it cites the Complaint and Judge Karas' decision—neither of which support summary judgment. Specifically, the argument should be rejected because:

***First***, it is premised on a factual finding that revenue is the only metric relevant to what PharmacyChecker is "geared toward." Lerner Decl. Sealed, Ex. 1 at 52 (stating only in conclusory fashion that "Based on this background and the Court's finding here that personal importation of prescription drugs is illegal under current federal law, it follows that the overall breakdown of [PharmacyChecker's] revenue is crucial: [PharmacyChecker's] enterprise is necessarily 'completely or almost completely illegal, or completely or almost completely geared toward facilitating illegality' if the majority of its revenue stems from facilitating the purchase of foreign drugs by U.S. consumers.").

Page 24 -  Plaintiff's Opposition to Defendant's Motion for Summary Judgment

Yet, many of PharmacyChecker's activities do not generate much—or any revenue—but remain a critical part of PharmacyChecker's mission. As just one example, ██ of unique visitors to the website never click through to any pharmacy's website at all. Lerner Decl. Sealed, Ex. 2 at 4–5. This means that most of the web traffic generates no revenue—these visitors use the information on the website for educational, research and advocacy purposes, as the website was intended. *Id.* at 5. Some visitors use the website for plaintiff's U.S. prescription drug discount card to fill prescriptions in the United States. *Id*.

A reasonable juror could conclude that these activities are relevant to the "geared toward" test and demonstrate a mission to educate the public about the U.S. prescription drug industry.

**Second**, the argument is premised on the factual determination that, if it is large enough, the percentage of revenue attributable to U.S.-based users who click-through from PharmacyChecker's website to a foreign pharmacy is dispositive of the "geared toward" test. The fact that PharmacyChecker generates a large percentage of revenue based on such "clicks," even if true, does not mean that PharmacyChecker is "geared toward" that end as a matter of law. A reasonable juror could conclude that end is a consequence, at least in part, of LegitScript's decades-long interference with PharmacyChecker's relationships with U.S. pharmacies—which disproportionately tips the current percentages in favor of clicks to foreign over domestic pharmacies. *Id*.

**Third**, the percentage of U.S.-based clicks to foreign pharmacies (verses U.S.-based clicks to domestic pharmacies) was a fact strongly disputed in the New York

Litigation, with PharmacyChecker providing evidence that the relevant figure is ███. *Id.* Judge Karas declined to choose a percentage, ruling instead that "no matter how one slices [the] pie, click fees from U.S. consumers to foreign pharmacies represents the largest share" of PharmacyChecker revenue. Lerner Decl. Sealed, Ex. 1 at 55. With due respect to Judge Karas, the conclusion that a "largest share" (one that he also describes as a bare "majority") constitutes "completely or almost completely" as a matter of law is a serious error. (And that is revenue from click fees not connected by evidence to any drug importations legal or illegal.)

Moreover, the conclusion—and the number of pages it took Judge Karas to reach that conclusion—only highlights the fact-bound and convoluted nature of that legal standard and its potential for arbitrary results—does a plaintiff at 49% retain antitrust standing, while a plaintiff at 51% does not? That is not the law. *See Memorex*, 555 F.2d at 1382 (Plaintiff "had 'rights' which could be injured [and] '[t]his is all that is required. . . . Memorex's own illegal conduct did not divest it of an antitrust action.' ") (citation omitted). The standard would also introduce complexity and confusion that would undermine the congressional policy of private antitrust enforcement. *Cf. Ill. Brick*, 431 U.S. at 732, 745 (declining rule that would "greatly complicate and reduce the effectiveness of already protracted treble-damages proceedings" inconsistent with "longstanding policy of encouraging vigorous private enforcement of the antitrust laws").

**Fourth**, LegitScript has presented no evidence to link any click to a consummated drug transaction. Rather, the record evidence in the New York

Litigation demonstrates that PharmacyChecker does not track visitor activity after clicking through to a pharmacy website, and it has no data connecting clicks to transactions. Lerner Decl. Sealed, Ex. 2 at 6. Although PharmacyChecker earns revenue when visitors click through to pharmacies, none of its revenue depends on transactions occurring (except for the U.S. prescription drug discount card). *Id.* According to one pharmacy's testimony, ██████ of its clicks led to a transaction. *Id.* Judge Karas' decision does not address this.

Even of that ██████, there was no evidence presented in the New York Litigation that those transactions involved an importation. (The drugs could have been purchased from the U.S. but shipped elsewhere.) If this pharmacy's ██████ statistic were representative of all pharmacies' paid clicks—it might be fewer—it would mean that only a fraction of a fraction of PharmacyChecker's revenue is connected to a click that potentially results in a personal drug importation.

***Finally***, in the New York Litigation, it was hotly contested whether personal importation of prescription drugs for personal use is illegal across-the-board or whether it is lawful at times, and under what conditions. Judge Karas recognized "that there are various exceptions to and exemptions from these laws [regarding personal-use importation]," and he cited, as an example, C.F.R. 201.100, the "labeling exemption," which permits personal importation of prescription drugs whose labels do not conform to the FDCA requirements for adequate directions so long as they are dispensed pursuant to a valid prescription. C.F.R. 200.100.

Consistent with that example, the FDA has interpreted the FDCA to mean that "[i]n most circumstances," but not **all**, "it is illegal for individuals to import drugs or devices into the U.S. for personal use because these products purchased from other countries often," but not **always,** "have not been approved by the FDA for use and sale in the U.S."[1] Indeed, Congress has specifically declared that U.S. "patients" have "reason to import into the United States drugs that have been approved by the [FDA]." 21 U.S.C. § 381(g); Prescription Drug Import Fairness Act of 2000.

Additionally, Congress has said the Secretary of Health and Human Services should use discretion to permit individuals to import prescription drugs for their own use that do not represent an unreasonable risk. 21 U.S.C. § 384(j)(1). Congress also directed that "[t]he Secretary shall publish, and update as necessary, guidance that accurately describes circumstances in which the Secretary will consistently grant waivers on a case-by-case basis . . . so that individuals may know with the greatest practicable degree of certainty whether a particular importation for personal use will be permitted." 21 U.S.C. § 384(j)(2)(B).

Finally, as the FDA states on its website, "[t]he FDA has guidance for personal importation of drug or device products."[2] For prescription drugs, personal importation is permitted under the policy if certain factors apply including, for example, the product does not represent an unreasonable risk, the product is for personal use, and the quantity is not more than a three-month supply. *Id.*

---

1. FDA website, https://fda.gov/industry/import-basics/personal-importation #UScitizen
2. FDA website, *supra* n.1 at 2.

In the New York Litigation, PharmacyChecker submitted expert testimony that PharmacyChecker's accreditation process is consistent with these special permissions and protections for personal drug importation under federal law. Lerner Decl. Sealed, Ex. 2 at 28.

But even if the Court holds that every single importation of a prescription drug for personal use is unlawful, providing information about importation still is not proscribed—it is First-Amendment protected. For that reason, too, PharmacyChecker's website should not be the basis for depriving the speaker of its federal right to recover for injuries that result from antitrust violations.

## CONCLUSION

For the foregoing reasons, PharmacyChecker requests that the Court deny LegitScript's motion for summary judgment.

Dated: June 22, 2023                   Respectfully submitted,

_s/ Aaron Gott_
Aaron Gott (admitted _pro hac vice_)
aaron.gott@bonalawpc.com
BONA LAW PC
331 2nd Avenue, Suite 420
Minneapolis, MN 55401
Telephone: (612) 968-7758

James Lerner (admitted _pro hac vice_)
james.lerner@bonalawpc.com
BONA LAW PC
287 Park Avenue South, Suite 422
New York, NY 10010
Telephone: (212) 634-6861

Philip S. Van Der Weele, OSB #863650
phil.vanderweele@klgates.com
K&L GATES LLP

One SW Columbia Street, Suite 1900
Portland, Oregon 97204
Telephone: (503) 228-3200

*Counsel for Plaintiff*

## CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under LR 7-2(b),

26-3(b), 54-1(c), or 54-3(e) because it contains 7,422 words, including headings,

footnotes, and quotations, but excluding the caption, table of contents, table of cases

and authorities, signature block, exhibits, and any certificates of counsel.

By: s/ *Aaron Gott*
Aaron Gott (admitted *phv*)
Bona Law PC
331 Second Avenue South,
Suite 420
Minneapolis, MN 55401
Aaron.gott@bonalawpc.com
(612) 284-5001

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of June, 2023, the foregoing Plaintiff's Opposition to Defendant LegitScript LLC's Motion for Summary Judgment was filed electronically with the Clerk of the Court using the CM/ECF system which will send a notification of such filing to all counsel of record in this matter.

By: s/ *Aaron Gott*
Aaron Gott (admitted *phv*)
Bona Law PC
331 Second Avenue South,
Suite 420
Minneapolis, MN 55401
Aaron.gott@bonalawpc.com
(612) 284-5001

Page 1-  CERTIFICATE OF SERVICE