Richard P. Sybert, OSB No. 833714
Email: rsybert@grsm.com
Direct Dial: (619) 230-7768
GORDON REES SCULLY MANSUKHANI, LLP
1300 SW Fifth Avenue, Suite 2000
Portland, OR  97201
Tel: (503) 222-1075
Fax: (503) 616-3600

John T. Mills (*Pro Hac Vice*)
Email: jtmills@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
One Battery Park Plaza, 28th Floor
New York, NY  10004
Tel: (212) 269-5500
Fax: (212) 269-5505

*Attorneys for Defendant LegitScript, LLC*

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| PHARMACYCHECKER.COM LLC**,** <br><br> Plaintiff, <br><br> vs. <br><br> LEGITSCRIPT LLC, <br><br> Defendant. | Case No. 3:22-cv-00252-SI <br><br> **DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** <br><br> **Request for Oral Argument** |

DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT – 1

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

## TABLE OF CONTENTS

                                                                                        **Page**

I.    ARGUMENT .................................................................................................6

      A.    LegitScript Has Met the Requirements of Issue Preclusion ...................................6

            1.    PCC Uses an Incorrect Issue Preclusion Standard.....................................6

            2.    LegitScript has Met the Requirements of Issue Preclusion ........................8

                  a.    The Issues are Identical.................................................................8

                  b.    The Issue was Actually Litigated and Decided in the SDNY
                        Proceeding.....................................................................................9

                  c.    PCC Had a Full and Fair Opportunity to Litigate the Issue...........11

                  d.    The Issue of PCC's Standing was Necessary to Decide the
                        Merits..........................................................................................12

      B.    In the Alternative, This Court's Independent Review Should Reach the
            Same Conclusion That Summary Judgment Should be Granted Because
            PCC Has Not Suffered Any Antitrust Injury and Lacks Standing.........................12

            1.    LegitScript's Motion is Not "Procedurally Deficient" .............................12

            2.    Analysis under Pearl Music Co. Is Appropriate, as Calnetics and
                  Memorex are Not Applicable.....................................................................13

            3.    PCC Lacks Standing .................................................................................17

                  a.    The cause of PCC's injury was a legal barrier, not
                        LegitScript's alleged anticompetitive conduct..............................19

II.   CONCLUSION..............................................................................................21

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

# TABLE OF AUTHORITIES

Page

**Cases**

*Calnetics Corp. v. Volkswagen of Am., Inc.*,
532 F.2d 674 (9th Cir. 1976) ............................................................................. 9, 13, 14, 15

*Chevron Corp. v. Pennzoil Co.*,
974 F.2d 1156 (9th Cir. 1992) ........................................................................................ 13

*Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*,
259 F.3d 1186 (9th Cir. 2001), *cert. denied*, 534 U.S. 1127 (2002)........................................ 12

*Coningsby v. Oregon Dep't of Educ.*,
No. 3:16-CV-00627-HZ, 2016 WL 4844078 (D.Or. Sept. 2016), aff'd sub nom. *M.C. by & through D.C. v. Oregon Dep't of Educ.*, 695 F. App'x 302 (9th Cir. 2017)............................ 10

*Curtis v. Oregon*,
No. 3:12-CV-02369-BR, 2013 WL 3466533 (D.Or. July 9, 2013) ........................................ 7

*Dillingham v. Scruggs*,
No. 16-CV-03267-YGR (PR), 2018 WL 2938521 (N.D.Cal. June 2018) *aff'd* 787 F. App'x
450 (9th Cir. 2019)......................................................................................................... 11

*E.S. Originals, Inc. v. Fabco Enterprises, Inc.*,
342 F.3d 1320 (Fed. Cir. 2003)........................................................................................ 10

*Howard v. City of Coos Bay*
871 F.3d 1032 (9th Cir. 2017) ................................................................................. 7, 8, 9, 10

*In re Canadian Imp. Antitrust Litig.*,
470 F.3d 785 (8th Cir. 2006) ................................................................................... 16, 17, 21

*In re: Bard Ivc Filters Prod. Liab. Litig.*,
No. 2641, 2016 WL 537587 (D.Ariz. Feb. 2016)................................................................ 13

*Jenkins v. County of Riverside*,
398 F.3d 1093 (9th Cir. 2005) ................................................................................... 9, 11, 12

*Monarch Marking Sys., Inc. v. Duncan Parking Meter Maint. Co.*,
No. 82 C 2599, 1988 WL 23830 (N.D.Ill. Mar. 8, 1988) ................................................ 19, 20

*New Hampshire v. Maine*,
532 U.S. 742 (2001)........................................................................................................ 7

DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT – 3

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

*Ni-Q, LLC v. Prolacta Bioscience, Inc.*,
   No. 3:17-CV-000934-SI, 2019 WL 637703 (D.Or. Feb. 14, 2019) .................................... 7, 8

*Paulo v. Holder*,
   669 F.3d 911 (9th Cir. 2011) ................................................................................................ 8

*Pharm. Rsch. & Manufacturers of Am. v. Dep't of Health & Hum. Servs.*,
   No. CV 20-3402 (TJK), 2023 WL 1795644 (D.D.C. Feb. 6, 2023)................................ 16, 21

*PharmacyChecker.com v. Nat'l Ass'n of Boards of Pharmacy*,
   No. 19-CV-7577 (KMK), 2023 WL 2973038 (S.D.N.Y. Mar. 28, 2023) ............................ 17

*Rebotix Repair, LLC v. Intuitive Surgical, Inc.*,
   No. 8:20-CV-2274-VMC-TGW, 2022 WL 3272538 (M.D.Fla. Aug. 10, 2022) .................. 19

*Skilstaf, Inc. v. CVS Caremark Corp.*,
   669 F.3d 1005 (9th Cir. 2012) ............................................................................................... 7

*United States v. Rx Depot Inc.*,
   290 F. Supp. 2d 1238 (N.D. Okla. 2003) ............................................................................. 16

*Vermont v. Leavitt*,
   405 F. Supp. 2d 466 (D. Vt. 2005)........................................................................................ 16

*Watchous Enterprises, L.L.C. v. Pac. Nat'l Cap.*,
   No. 16-1432-JTM, 2017 WL 4786185 (D.Kan. Oct. 2017) ................................................. 13

*Weaver v. John Lucase Tree Expert Co.*,
   No. CV 2:13-1698-PMD, 2014 WL 12675161 (D.S.C. Aug. 2014) ..................................... 13

*Yufa*, 2014 WL 2450749, at *4 .................................................................................................. 11

**Statutes**

15 U.S.C. § 7, the Clayton Act .................................................................................................. 14

15 U.S.C. §§ 1-38, the Sherman Act.................................................................................... passim

21 U.S.C. § 331(a) ..................................................................................................................... 15

21 U.S.C. § 331(d) ..................................................................................................................... 15

21 U.S.C. § 352 .......................................................................................................................... 16

21 U.S.C. § 353............................................................................................................................ 16

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

21 U.S.C. § 353(b)(1) ........................................................................................... 16

21 U.S.C. § 355 ............................................................................................... 15, 16

21 U.S.C. § 355(a) .............................................................................................. 15

21 U.S.C., Ch. 9, Federal Food, Drug, and Cosmetic Act ............................... 15, 16, 21

**Other Authorities**

Stein, Gertude, "Sacred Emily" (1913) ................................................................ 9

Stein, Gertude, *Geography and Plays* (1922) .................................................... 9

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

## REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

As set forth in LegitScript's[1] Opening Memorandum (ECF No. 271), issue preclusion bars PCC from re-litigating its antitrust claim in this Court when the exact claim has already been rejected in the New York Action. While PCC claims in its Opposition that LegitScript cannot meet the requirements of issue preclusion, PCC fails to use the correct standard. (*See* PCC's Opposition, ECF No. 275 at 8–12.) Application of the appropriate legal standard makes clear that issue preclusion bars PCC's claim against LegitScript here.

In the alternative, if issue preclusion somehow does *not* apply, this Court's independent analysis of the same evidence, the same facts and claims, and the same conduct should lead it to the same well-reasoned result as Judge Karas's recent 66-page decision in the New York Action. PCC's Opposition does not credibly dispute that its enterprise is "almost completely geared toward facilitating illegality," and, therefore, PCC lacks antitrust standing to pursue its Sherman Act claim. This Court should reach the same conclusion as Judge Karas: since PCC's business is completely or almost completely geared toward facilitating illegality, PCC has not suffered any antitrust injury and therefore lacks standing to maintain its claim under the Sherman Act.

PCC's Opposition does not and cannot overcome these two issues, each one of which is sufficient unto itself to bar PCC's claims; and the Opposition does not provide any valid basis for this Court to deny LegitScript's Motion. LegitScript respectfully requests the Court grant its Motion.

## I.    ARGUMENT

### A.   LegitScript Has Met the Requirements of Issue Preclusion

#### 1.   PCC Uses an Incorrect Issue Preclusion Standard

PCC argues that in order to assert issue preclusion, LegitScript needs to meet the following three requirements:

(1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final

---

[1] Capitalized terms used herein shall have the same meaning ascribed to them as set forth in LegitScript's Opening Memorandum. (ECF No. 271.)

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding.

(*See* ECF No. 275 at 14) (citing *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1021 (9th Cir. 2012)).  PCC then devotes five pages to arguing that LegitScript cannot meet the requirements for issue preclusion based on this standard.  (*Id.* at 14–18.)

However, this *Skilstaf* standard is for <u>claim</u> preclusion.  A legal *claim* is not the same thing as a legal or factual *issue*, as courts have defined and differentiated claim preclusion from issue preclusion and their respective purposes.  *See, e.g.*, *Curtis v. Oregon*, No. 3:12-CV-02369-BR, 2013 WL 3466533, at *2–*3 (D.Or. July 9, 2013).  The doctrine of *claim* preclusion provides that "a final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'"  *Id.* (citing *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)).  In contrast, the doctrine of *issue* preclusion bars "'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim."  *Id.*

In *Howard v. City of Coos Bay*, which was decided by the same Court of Appeal five years after *Skilstaf*, the Ninth Circuit indicated that to show <u>issue</u> preclusion, a moving party must demonstrate that "(1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated and decided in the prior proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessary to decide the merits."  871 F.3d 1032, 1041 (9th Cir. 2017).  The *Howard* court also indicated that for <u>claim</u> preclusion, the moving party must show "(1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties."  *Id.* at 1039.

Stated differently, *Howard* makes clear that PCC's reliance on *Skilstaf* is misplaced, as LegitScript need not demonstrate that there was a final judgment on the merits or that there is privity between the parties in the two proceedings in order for <u>issue</u> preclusion to apply.  Instead, the same issue simply needs to have been fully, fairly, and necessarily litigated and decided in the prior proceeding, whether in a final judgment or not.

Indeed, this clear difference between the two legal standards has been reaffirmed by <u>this</u> Court.  *See Ni-Q, LLC v. Prolacta Bioscience, Inc.*, No. 3:17-CV-000934-SI, 2019 WL 637703,

DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT – 7

GORDON REES SCULLY MANSUKHANI, LLP
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

at *8 n.6 (D.Or. Feb. 14, 2019).  In *Ni-Q*, this Court indicated that "the Ninth Circuit sometimes lists the elements for issue preclusion as: (1) the issue was necessarily decided; (2) the first proceeding ended with a judgment on the merits; and (3) the party against whom preclusion is sought was a party or in privity with a party in the first litigation."  *Id.* (citing *Paulo v. Holder*, 669 F.3d 911, 917 (9th Cir. 2011)).  However, this Court held that it "considers the latter two elements to be more appropriate elements for claim preclusion."  *Id.* (citing *Howard*, 871 F.3d at 1039).  Thus, this Court has found that two elements of the legal standard for claim preclusion — the "first proceeding ended with a final judgment on the merits" and the "party against whom preclusion is sought was a party/in privity with a party in the first litigation" — are not a part of the legal standard for <u>issue</u> preclusion.  Thus, *Howard* and *Ni-Q* establish that PCC relies on the inappropriate legal standard, and that these two elements (final judgment and privity) are not required for issue preclusion to apply.

>       2.    <u>LegitScript has Met the Requirements of Issue Preclusion</u>

As discussed above, the appropriate legal standard for issue preclusion requires that a party asserting issue preclusion prove four elements: "(1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated and decided in the prior proceeding; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessary to decide the merits."  *Howard*, 871 F.3d at 1041; *Ni-Q, LLC*, 2019 WL 637703, at *8.  LegitScript did exactly that in its Motion.  Under this standard, PCC only contests the first element, whether the issues are identical.  There is no doubt that they are.  Indeed, the very issues asserted here were in fact those asserted against LegitScript when LegitScript was originally named a defendant in the New York Action and before it was dismissed, so that PCC could raise the same issues with proper jurisdiction and venue in Oregon.  The district courts are different; however, the issues are the same.

>       *a.    The Issues are Identical*

The issues raised in both the New York Action and the Oregon Action are identical, to the point that PCC splits hairs to try to distinguish the two.  PCC's argument on this point is frankly unintelligible:

> LegitScript characterizes "the main issue" on which it seeks preclusion as involving
> "[PharmacyChecker's] antitrust standing and whether its business was completely

---

DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT – 8

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

> or almost completely geared toward facilitating illegality." Dkt. 271 at 9. But the
> issue decided in New York, as this Court previously observed, has a finer point:
> "the legal question of whether PharmacyChecker lacks antitrust standing if its
> business is 'completely or almost completely geared toward facilitating illegality.'"
> Dkt. 256 at 5. That is not a question in this proceeding, where neither law of the
> case nor binding precedent imposes a "completely or almost completely geared
> toward facilitating" standard.

(*See* ECF No. 275 at 17.) That is not a "finer point," it is the *same* point. As Gertrude Stein once noted, "A rose is a rose is a rose."[2] It is clear that the main issue in both cases is the same: does PCC have antitrust standing? PCC cannot deny that Judge Karas found the answer is clearly "no." The answer here to the same question, and no matter how it is asked, is the same.

In applying the four factors from *Howard* to evaluate whether the issue is identical between the previous and current actions, all factors weigh in favor of finding that the issues in the New York Action and the Oregon action are identical. *See Howard*, 871 F.3d at 1041.

PCC does not analyze these factors, and its Opposition only argues that the issues are not identical because the courts allegedly apply a "different legal standard." (ECF No. 275 at 16.) That is not so, however. Ninth Circuit precedent in fact does *not* "preclude" Judge Karas' finding. (*Id.* at 17.) PCC spends only one sentence explaining its position, its only argument being that *Pearl Music* is non-binding and "contradicts […] the binding law of *Calnetics* and *Memorex*." (*Id.* at 18.) But LegitScript's motion had spent pages explaining the applicability of *Pearl* and *Memorex*, and distinguishing *Memorex*. PCC's Opposition does not even try to respond to this, or to explain its position as to why *Memorex* applies.

The issue in both actions is identical: whether PCC lacks antitrust standing.

> b.    *The Issue was Actually Litigated and Decided in the SDNY Proceeding*

PCC does not dispute that the issue of whether it has antitrust standing *generally*, in the Oregon Action as well as anywhere else, was litigated in the New York Action. Accordingly, it has waived any argument that it did not raise then. *Jenkins v. County of Riverside*, 398 F.3d

---

[2] Stein, Gertude, "Sacred Emily" (1913), *Geography and Plays* (1922).

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

1093, 1095 n.4 (9th Cir. 2005) (plaintiff waived challenge to claims that were not raised in opposition to defendant's motion for summary judgment).[3]

Indeed, the issue *was* actually litigated. (*See* ECF Nos. 263, 270, 346, 351, New York Action.) The SDNY MSJ Decision held that PCC alleged that the New York Defendants unlawfully conspired to restrain trade in violation of § 1 of the Sherman Act. (SDNY MSJ Decision at 2.) ***In a footnote, the SDNY opinion indicated that PCC also raised this exact same claim against LegitScript, however, the claim was severed and transferred to the District of Oregon.*** (*Id.* at 2 n.1.) The SDNY MSJ Decision noted that the court was tasked with addressing the limited issue of whether PCC's business was "completely illegal or geared toward illegality," and thus lacking antitrust standing. (*Id.* at 25–26.) The Court's analysis of the three main arguments regarding the issue of illegality was full and fair, citing copious argument and evidence. (*Id.* at 26.)

Consequently, there is no doubt that the present issue was actually litigated in the New York Action. The issue was "essential and actually litigated to a final decision on the merits" since the SDNY court granted summary judgment on the same issue being raise in this Oregon Action. *See Coningsby v. Oregon Dep't of Educ.*, No. 3:16-CV-00627-HZ, 2016 WL 4844078, at *7 (D.Or. Sept. 2016), aff'd sub nom. *M.C. by & through D.C. v. Oregon Dep't of Educ.*, 695 F. App'x 302 (9th Cir. 2017). The fact that no final judgment has been entered does not alter this analysis. *See*, *e.g.*, *E.S. Originals, Inc. v. Fabco Enterprises, Inc.*, 342 F.3d 1320, 1323 (Fed. Cir. 2003) (holding that partial summary judgment order was sufficiently final for collateral estoppel, since it is "widely recognized that the finality requirement is less stringent for issue preclusion than for claim preclusion."). The issuance of a final judgment is simply not an element of issue preclusion. *Howard*, *supra.*

---

[3] This waiver claim is appropriate because in its Motion, LegitScript raised one Ninth Circuit factor test, while PCC responded with another. By doing so, PCC did not respond to three of the factors cited by LegitScript, with this "actually litigated and decided" factor being one of them. The case law cited by LegitScript states that one can waive its argument if one does not challenge something raised in the motion for summary judgment. Because PCC did not respond to various factors addressed by LegitScript, including the "actually litigated and decided," PCC has waived any argument as to this issue.

---

DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT – 10

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

*c.    PCC Had a Full and Fair Opportunity to Litigate the Issue*

PCC also does not dispute that it was permitted an opportunity to, and did, oppose the
New York Defendants' motion for summary judgment in the New York Action and to, and did,
present its arguments to the SDNY court.  Accordingly, again, it has waived the issue.  *Jenkins*,
398 F.3d at 1095 n.4; *see also supra* note 3.

PCC had a full and fair opportunity to litigate the issue of antitrust standing in the New
York Action and the issue of antitrust standing was actually litigated in the New York Action.
PCC makes the very same allegations here against LegitScript in the Oregon Action as it did
against the New York Defendants, *i.e.*, that LegitScript and the New York Defendants allegedly
unlawfully conspired to restrain trade in violation of § 1 of the Sherman Act, 15 U.S.C. § 1.  (*See*
ECF No. 82, New York Action.)  PCC participated in the litigation as the plaintiff in the New
York Action and actively opposed the New York Defendants' summary judgment motion, with
the parties fully briefing the New York Defendants' summary judgment motion.[4]  (ECF Nos.
263, 269, 270, 281, 283, New York Action.)

Further, the SDNY MSJ Decision was lengthy and detailed, spanning 66 pages and
discussing each issue at length.  The Court carefully and thoughtfully addressed and rejected
each of PCC's arguments.  (*See generally* SDNY MSJ Decision.)  PCC has been unable to cast
any doubt on the order's quality, extensiveness, or on the fairness of procedures followed in the
New York Action.  Therefore, LegitScript has demonstrated the third element in proving issue
preclusion, a full and fair opportunity to have litigated the issue.  *See Dillingham v. Scruggs*, No.
16-CV-03267-YGR (PR), 2018 WL 2938521, at *11 (N.D.Cal. June 2018) ("All elements of
collateral estoppel are present here, as Defendants have shown [that]  there was a full and fair
opportunity to litigate the issue in the prior proceeding [where] both parties fully briefed the
issue [on summary judgment.])"), *aff'd*, 787 F. App'x 450 (9th Cir. 2019); *Yufa*, 2014 WL
2450749, at *4 (finding that both the previous case and present case shared a plaintiff and that
the previous case's decision carefully addressed each of plaintiff's arguments, therefore there

---

[4] The New York Defendants' motion for summary judgment spanned 28 pages an included 104
exhibits.  (ECF No. 265, New York Action.)  PCC's opposition spanned 37 pages and included
43 exhibits.  (ECF No. 270.)  Further, the New York Defendants' Reply spanned 17 pages and
included an additional 21 exhibits.  (ECF No. 283, New York Action.)

GORDON REES SCULLY MANSUKHANI, LLP
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

was "no reason to doubt the quality, extensiveness, or fairness of the procedures followed in the prior litigation.").

> d.  *The Issue of PCC's Standing was Necessary to Decide the Merits*

The exact issue that was raised in the Oregon Action was not merely analyzed and decided in the SDNY MSJ Decision; its determination was *necessary* to that decision, indeed, central to it. PCC does not dispute this and, once again, has waived the issue as to any new or different arguments. *Jenkins*, 398 F.3d at 1095 n.4; *see also supra* note 3.

Specifically, the relevant issue, PCC's antitrust standing, was necessarily decided in the New York Action. (ECF No. 263, New York Action.) The SDNY court specifically addressed whether PCC lacked standing, and found that PCC's enterprise is completely illegal or geared toward illegality, by looking to the federal standards for illegality and PCC's revenue share from international pharmacies. (*See* SDNY MSJ Decision at 41–64.) The Court found that the New York Defendants met their burden in proving that PCC's enterprise was "completely or almost completely" geared towards facilitating illegality and that PCC lacked standing to maintain its claim pursuant to § 1 of the Sherman Act. (*Id.* at 52–55, 64.) This antitrust standing issue was essential to the SDNY MSJ Decision to dismiss PCC's Sherman Act claim in its entirety. (*Id.* at 64.)

> **B.  In the Alternative, This Court's Independent Review Should Reach the Same Conclusion That Summary Judgment Should be Granted Because PCC Has Not Suffered Any Antitrust Injury and Lacks Standing**

> 1.  LegitScript's Motion is Not "Procedurally Deficient"

PCC first argues that LegitScript's Motion is "procedurally deficient" because it does not attach all evidence and briefing. What PCC fails to mention is that <u>it</u> (PCC) is in possession of that unredacted evidence and briefing and, despite repeated request, has failed to provide it to LegitScript, or present it to this Court, and has refused to stipulate that LegitScript may do so. (Sybert Decl. ISO Motion.) PCC, in other words, has attempted to keep the facts from this Court and now seeks to profit from its own unclean hands.

PCC cannot decline to produce the evidence to LegitScript and then point to that as a reason why the motion should fail. *See*, *e.g.*, *Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1196 (9th Cir. 2001), *cert. denied*, 534 U.S. 1127

GORDON REES SCULLY MANSUKHANI, LLP
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

(2002) (affirming the district court's decision to preclude the defendant from relying on advice of counsel to demonstrate that his infringement was not willful where the defendant "refused to answer questions regarding his interactions with counsel at his deposition"); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) ("The privilege which protects attorney-client communications may not be used both as a sword and a shield. […] Where a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived."); *Watchous Enterprises, L.L.C. v. Pac. Nat'l Cap.*, No. 16-1432-JTM, 2017 WL 4786185, at *5 (D.Kan. Oct. 2017) ("[I]t would be unfair to allow Pacific to assert its communications (or lack thereof) with Hyland as a defense to liability on the breach-of-settlement claim, but then to foreclose Watchous from discovery needed to test that assertion. Caselaw instructs that the attorney-client privilege may not be used in this manner as both a sword and a shield."); *In re: Bard Ivc Filters Prod. Liab. Litig.*, No. 2641, 2016 WL 537587, at *9 (D.Ariz. Feb. 2016) ("The sword-shield rulings stand for basic fairness – a party should not be allowed to use work product affirmatively to gain some advantage in litigation, and at the same time withhold the work product from scrutiny by asserting the work product protection."); *Weaver v. John Lucase Tree Expert Co.*, No. CV 2:13-1698-PMD, 2014 WL 12675161, at *2 (D.S.C. Aug. 2014) ("[T]he Court agrees that the Defendants should not be able to shield this information from discovery, only to be able to use it as a sword at trial.").

PCC should not be permitted to profit from its own wrong.  Further, it should explain why it has attempted to prevent presentation to *this* court, of the full and unredacted record of the evidence presented to the New York court, which then decided, on the basis of that evidence, that PCC lacked standing.  The question answers itself.

     2.   Analysis under *Pearl Music Co.* Is Appropriate, as *Calnetics* and *Memorex* are Not Applicable

Throughout its Opposition, PCC tries to argue that the standard of whether a party's business is "completely or almost completely geared toward facilitating illegality" is inapplicable due to Ninth Circuit precedent under *Calnetics* and *Memorex*, and not under *Pearl Music Co.* (*See*, *e.g.*, ECF No. 275 at 21–24.)

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

Judge Karas did not accept PCC's attempted distinction between these cases.  In his thorough analysis, he found that the facts presented were distinguishable from *Memorex*.  (*See* ECF No. 351 at 55, New York Action) (following the standard in *Pearl Music Co.* since "almost total magnitude of this illegal conduct by [Plaintiff] makes their miniscule conduct that may be legal, insignificant," instead of *Memorex Corp.*, where the business was found to have "engaged in wrongful or illegal conduct only in part of its sizeable enterprise.").  Judge Karas noted that it was clear that "no matter how one slices this pie, click fees from U.S. consumers to foreign pharmacies represents [*sic*] the largest share of [PCC]'s revenue" and that there is "no source of revenue that could come even close to the costs per clicks generated by U.S. consumers."  (*Id.* at 55.)  Thus, he equated the facts at issue to *Pearl Music* for the proposition that the "almost total magnitude of this illegal conduct by [PCC] [made its] miniscule conduct that may be legal, insignificant[.]"  (*Id.* at 55.)  For the same reason, Judge Karas found the case was distinguishable from *Memorex* and its line of cases, where the business at issue was engaged in wrongful or illegal conduct only in part of its sizeable enterprise.  (*Id.*)  Here, by contrast, "if PCC were to lose its click fees from U.S. consumer clicks to foreign websites under either calculation," which PCC gets when U.S. consumers click its links to unlawfully purchase drugs from foreign pharmacies, "PCC's business would likely cease to exist."  (*Id.* at 51, 55.)

Nor does *Calnetics Corp. v. Volkswagen of Am., Inc.*, 532 F.2d 674 (9th Cir. 1976), support PCC's position.  The court in *Calnetics* did not even consider what courts now refer to as antitrust injury.  Rather, the court addressed the question of whether private parties in general ever have standing to pursue claims under the Clayton Act § 7.  *Id.* at 681–696.  That is not at issue here.

It is, in fact, *Pearl Music Co.* which is the applicable precedent under the current circumstances, and which itself properly distinguished *Memorex* and *Calnetics*.  The court in *Pearl Music Co.* found that the plaintiffs' conduct was wholly illegal, as it was directed against the public in violation of clear federal and state statutory criminal prohibitions.  460 F.Supp. at 1068.  The court concluded that plaintiffs had no standing or capacity to maintain an antitrust action because they were engaged in an illegal business, reasoning that the "almost total magnitude of this illegal conduct by plaintiffs makes their miniscule conduct that may be legal,

DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT – 14

insignificant, and, in any event, none of such miniscule and possibly legal conduct rises to the level of the legitimate activities of *Memorex* and *Calnetics*." *Id.* The court distinguished *Memorex*, stating that the *Memorex* court limited the scope of its decision to situations in which the wrongful conduct had been directed against the defendant in a private sense, rather than a public wrong caused by massive and all-pervasive violations of the law, as were present in *Pearl*. *Id.* The court held that the plaintiffs in *Pearl* were engaged in "wholly illegal enterprises which are directed against the public in violation of clear federal and state statutory criminal prohibitions, and as such, should not be able to assert or claim that they have rights protected by the anti-trust laws." *Id.*

That is exactly the case here. *Pearl Music Co.* is directly relevant to the present case because PCC has engaged in a business which by its very nature is entirely illegal — the unlawful facilitation of drugs from international pharmacies. (*See* ECF Nos. 265 at 15–19; 283 at 11–13, New York Action; SDNY MSJ Decision at 51–64.) Both PCC and the plaintiffs in *Pearl Music* were engaged in "wholly illegal enterprises which are directed against the public" in violation of federal and state statutes, thus this Court may find similarly that PCC should not be able to assert or claim that it has rights protected by antitrust laws. (*See* ECF Nos. 265 at 19–31; 283 at 13–19, New York Action.)

PCC is incorrect that the rationale behind *Calnetics* and *Memorex* "does not disappear because the defendant characterizes the misconduct alleged against the plaintiff as a public wrong." (*See* ECF No. 275 at 23.) In fact, *Calnetics* and *Memorex* are just that limited; they stand for the proposition that a plaintiff's *private* wrong does not eliminate antitrust standing against the defendant. These cases do not apply here because PCC's illegal conduct is a *public* wrong as a violation of U.S. labeling requirements and laws;[5] if it were a private wrong, it would

---

[5] The importation of prescription drugs is governed by the Federal Food, Drug, and Cosmetic Act ("FFDCA"), which prohibits the "introduction or delivery for introduction into interstate commerce of any food, drug, device, or cosmetic that is adulterated or misbranded[,]" as well any introduction into interstate commerce of any new drug that is not manufactured pursuant to FDA approval. *See* 21 U.S.C. § 331(a), (d); *see also* 21 U.S.C. § 355(a). "The United States Food and Drug Administration ("FDA") repeatedly has expressed the view that virtually all importation of drugs into the United States by individual consumers violates the FFDCA" because "the drugs are not approved in accordance with 21 U.S.C. § 355, are not labeled as

GORDON REES SCULLY MANSUKHANI, LLP
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

be one directed specifically against LegitScript or the New York Defendants. Thus, LegitScript is not subject to antitrust liability when PCC's wrongdoing is against public interest.

Put another way, "unclean hands" against the defendant is not a defense in an antitrust case. But *illegality is*.

///

///

---

required by 21 U.S.C. § 352, or are dispensed without a valid prescription in contravention of 21 U.S.C. § 353(b)(1)." *See Canadian Import*, 470 F.3d at 788–89.

Sections 352, 353, and 355 of Title 21 of the United States Code work in conjunction with the other statutory standards and FDA regulations to create a system that excludes noncompliant and potentially unsafe pharmaceuticals. *See Canadian Import*, 470 F.3d at 790. Foreign pharmaceuticals, *i.e.*, those manufactured and distributed abroad and later imported into the United States, are "unapproved" drugs within the meaning of 21 U.S.C. § 355. *See Pharm. Rsch. & Manufacturers of Am. v. Dep't of Health & Hum. Servs.*, No. CV 20-3402 (TJK), 2023 WL 1795644, at *1 (D.D.C. Feb. 6, 2023) (stating that "the domestic drug supply chain is strictly monitored [...] to maintain a 'closed system designed to guarantee safe and effective drugs for consumers in the United States.' [...] And that closed system 'has effectively precluded importation of [prescription] drugs.'"); *Canadian Import*, 470 F.3d at 789; *Vermont v. Leavitt*, 405 F. Supp. 2d 466, 473 (D. Vt. 2005) ("Any drug, even a foreign version of an FDA approved drug, will be an unapproved drug unless it meets all United States packaging, labeling and dosage requirements."); Personal Importation, Food & Drug Admin. (last updated January 10, 2023), https://www.fda.gov/industry/import-basics/personal-importation ("If a drug is approved for use in another country but is an unapproved new drug in the U.S. it is illegal to import."); *United States v. Rx Depot Inc.*, 290 F. Supp. 2d 1238, 1245 (N.D. Okla. 2003) (finding that the defendants violated the FFDCA "each time" they introduce an unapproved Canadian drug in violation of 21 U.S.C. § 355). In fact, *Canadian Import* noted that the FDA "repeatedly has expressed the view that virtually all importation of drugs into the United States by individual consumers violates the FFDCA." 470 F.3d at 788–79; *see also Pharm. Rsch. & Mfrs. of Am.*, 2023 WL 1795644, at *2 ("The statutory drug-importation scheme has thus lain dormant for most of its history, and importing drugs from Canada or elsewhere has remained effectively illegal.").

Thus, the personal importation of prescription drugs is illegal under current federal law. Even PCC's own website admits this: *see* https://www.pharmacychecker.com/askpc/is-it-legal-to-order-medication-online-from-other-countries/#! ("It's not legal, under most circumstances, to order and import medicine from a pharmacy in another country, according to the U.S. Food and Drug Administration (FDA).").

---

DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT – 16

GORDON REES SCULLY MANSUKHANI, LLP
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

3.    PCC Lacks Standing

Thus, despite PCC's argument to the contrary, LegitScript is not arguing that PCC merely has "unclean hands," it is arguing that PCC has no *standing*.  This is a threshold issue, and not merely an affirmative defense.  As demonstrated in LegitScript's Motion, as well as the New York Action, PCC's business is completely or almost completely geared toward facilitating illegality, and thus lacks standing.  This conclusion is consistent with common sense – a party cannot claim that a defendant should be enjoined from preventing a plaintiff from operating when plaintiff is operating illegally.

PCC represents that it has not done anything wrong, arguing that it has committed "no wrong, private or public" due to no statute or cause of action that prohibits PCC's services and that this is the "wrong case to adopt a rule that unclean hands removes [antitrust] standing," because PCC is not a pharmacy, does not dispense drugs, does not process or otherwise complete drug transactions, and does not import drugs.  (*See* ECF No. 275 at 23–24.)

This argument lends new dimension to the term "disingenuous."  Specifically, PCC rather glosses over, and evades, quite crucial details.  That is, unless an exception applies, the importation of drugs from foreign pharmacies is unlawful and violates U.S. labeling requirements.  *See* note 5, *supra*.  The overwhelming majority of PCC's revenue comes from U.S. consumers clicking links to purchase from foreign pharmacies.  (*See* ECF No. 351 at 51–64) (citing to evidence of PCC's financial records and total revenue from January 2015 to August 2021 that were attributable to online pharmacies located outside of the United States, as well as PCC's statements regarding its interpretation of federal law on personal importation).  PCC thus allows U.S. customers to illegally import drugs.  *See PharmacyChecker.com v. Nat'l Ass'n of Boards of Pharmacy*, No. 19-CV-7577 (KMK), 2023 WL 2973038, at *29 (S.D.N.Y. Mar. 28, 2023) (the definition of to "facilitate" illegal action "does not require actual proof of purchases."  And, "'[f]acilitating' an offense means that a party 'make[s] [the offense] easier' or 'help[s] [to] bring [it] about.'" (citation omitted)).  Therefore, because personal importation of prescription drugs is illegal under current federal law, PCC indeed lacks antitrust standing under *In re Canadian Imp. Antitrust Litig.*, 470 F.3d 785, 787 (8th Cir. 2006).

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

PCC confusingly argues that "it"—it is unclear whether this refers to the pending Motion or to the SDNY decision--is premised (presumably wrongly, it is implied) that the "revenue [that] stems from facilitating the purchase of foreign drugs by consumers" is the only metric relevant to what PCC is geared toward. (ECF No. 275 at 30.)[6]  However, LegitScript did not make any such premise or proposition. Rather, what LegitScript's Motion and the SDNY MSJ Decision demonstrate is that an overwhelming majority of PCC's business is revenue from the unlawful facilitation of the importation of drugs from foreign pharmacies.

PCC fails to cite any authority to support the argument in its Opposition that, even if it were true that PCC generates a large percentage of revenue based on click revenue, it does not mean that PCC is geared toward that end as a matter of law. (*See id.*)  One would think, in fact, that logically precisely the opposite would be true (and it is).  Regardless of PCC's argument that the percentage of U.S. consumer based clicks to foreign pharmacies was a fact strongly disputed, that argument was *rejected*, and Judge Karas still determined that the majority of PCC's revenue stems from facilitating the purchase of foreign drugs by U.S. consumers, being necessarily "completely or almost completely illegal, or completely or almost completely geared toward facilitating illegality," and declined to use a percentage. (*Id.* at 31–32) (*see also* ECF No. 351 at 51–64).

As its final point, PCC maintains that it was "hotly contested" whether personal importation of prescription drugs for personal use is illegal across-the-board or whether it is lawful at times, and under what conditions in the New York Action. (ECF No. 275 at 33–34.) However, that is a "red herring" and an attempt to distract from the facts of this case.  LegitScript is arguing that Plaintiff's business is illegal in this situation due to the unlawful importation of drugs from foreign pharmacies, not regarding generally how many and what kind of exceptions there are.

---

[6] While PCC has continuously argued that it is inappropriate that LegitScript cited to not only the record in the Oregon Action, but also the New York Action, PCC then cites to the evidence in the New York Action to argue that there is no evidence to link any click to a consummated drug transaction. (*See* ECF No. 275 at 32–33.)  And, again, PCC has failed to cooperate and has effectively blocked submission to this court of the full and unredacted factual record from the New York action.

DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT – 18

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

a.   *The cause of PCC's injury was a legal barrier, not LegitScript's alleged anticompetitive conduct*

PCC cites various cases, arguing that the case law shows that a plaintiff has standing if the cause of its injury was a "legal barrier" or "defendants … conduct."  (ECF No. 275 at 25.) LegitScript agrees that the question is whether the plaintiff "would have suffered the same injury even had the defendant not engaged in the conduct at issue."  (*Id.* at 25.)  As LegitScript has argued in this Oregon Action, as well as in the New York Action, PCC's business practices are illegal independent of, and separate and apart from LegitScript's challenged conduct.  Because the importation of drugs from foreign pharmacies is unlawful and violates U.S. labeling requirements, *see* note 5, *supra*, PCC would have suffered the same injury regardless of LegitScript's conduct due to enforcement by the FDA, Secretary of Health and Human Services, or enforcement agencies such as U.S. Customs and Border Patrol.  In light of this illegality, PCC's argument that it would not have been boycotted but for LegitScript's alleged conduct is nonsensical.  (*See id.* at 27.)

PCC's citation to *Rebotix Repair, LLC v. Intuitive Surgical, Inc.*, No. 8:20-CV-2274-VMC-TGW, 2022 WL 3272538 (M.D.Fla. Aug. 10, 2022) is inapplicable, as that case involved different circumstances in a different court from a different circuit.  (*Id.* at 26). The plaintiff there repaired "Endowrists" for surgical robots.  Plaintiff's business was allegedly unlawful since the FDA requires § 510(k) clearance for such repairs, and it was undisputed that plaintiff had failed to obtain such clearance.  *Rebotix Repair, LLC*, 2022 WL 3272538, at \*8.  *Rebotix Repair* did not involve U.S. labeling requirements, and it did not involve the importation of drugs from foreign pharmacies, only that the plaintiff did not have the appropriate clearance.  Here, such "clearance" could not have been obtained, because such importation is illegal.

PCC argues that *Monarch Marking Sys., Inc. v. Duncan Parking Meter Maint. Co.*, No. 82 C 2599, 1988 WL 23830, at \*1 (N.D.Ill. Mar. 8, 1988), stands for the proposition that a plaintiff still retains antitrust standing for periods of time that it was legally able to compete when its products were non-infringing.  (ECF No. 275 at 26.)[7]  That, however, is a

---

[7] PCC asserts that LegitScript has misrepresented *Monarch Marking Systems*.  (ECF No. 275 at 26.)  LegitScript stated that "the court found standing where up to 70% of counterclaim-

GORDON REES SCULLY MANSUKHANI, LLP
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

mischaracterization of the case, which does not stand for such a proposition. The court in *Monarch Marking Sys.* stated that the disputed factual allegations relating to claimed periods of infringement or noninfringement, were "beyond the scope of the motion for reconsideration presently before the court." *Monarch Marking Sys.*, 1988 WL 23830, at *1. "Whether or not the quantity of non-infringing labels sold by Powers during the relevant time periods is substantial enough to give rise to actual antitrust injury is as yet uncertain." *Id.*

*Monarch Marking Sys.* dealt with a would-be antitrust plaintiff, Powers, who moved for reconsideration on the grounds that "this court erred in assuming that nearly all of the labels sold by Powers during the relevant periods infringed Monarch's patents." *Id.* The district court found that Powers' "admitted infringement of Monarch's label patents was not, in fact, continuous," and therefore reinstated the antitrust counterclaim on the grounds that "there is a possibility that Powers will be able to establish [antitrust] injury" even though it was unclear "[w]hether or not the quantity of noninfringing labels sold by Powers during the relevant time periods is substantial enough to give rise to actual antitrust injury." *Id.*

Those facts depart from the situation here, where LegitScript argues that PCC's business is completely or almost completely geared toward facilitating illegality. Indeed, the *Monarch Marking Sys.* court noted that "[i]n order to prevail on its antitrust counterclaim, Powers will have to prove not only that it sold some noninfringing labels, but also that Monarch's alleged antitrust violations prevented it from selling a substantial volume of noninfringing labels." *Id.* at *1 n.2 (emphasis in original). The court in *Monarch Marking Sys.* then stated that "[i]f, however, Powers failed to show a substantial volume of noninfringing labels, its antitrust counterclaim 'will have been rendered moot because of the absence of any antitrust injury.'" *Id.* at *1 n.3. The same reasoning confirms that PCC is unable to show any antitrust injury, because PCC cannot show any substantial volume of its revenue being from unlawful conduct.

---

plaintiff's enterprise was potentially lawful." (ECF No. 271 at 23.) In relevant part, the *Monarch Marking Systems* court indicated that "Powers represented that approximately $7 million of its $10 million antitrust counterclaim (before trebling) would survive[.]" *Monarch Marking Sys., Inc.*, 1988 WL 23830, at *2. The court may take judicial notice that 70% of ten million is seven million. There is no misrepresentation.

DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT – 20

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

PCC argues that the relevant case law does not stand for the proposition that a lack of regulatory approval is a *per se* legal bar to an antitrust suit.  (ECF No. 275 at 25–30.)  But that is not what this case is about.  This case involves the illegal conduct of importation of drugs from foreign pharmacies, which violates the FFDCA.  *See Canadian Import*, 470 F.3d at 788–89; *see also Pharm. Rsch. & Mfrs. of Am.*, 2023 WL 1795644, at *1 (D.D.C. Feb. 6, 2023) (stating that "the domestic drug supply chain is strictly monitored [...] to maintain a 'closed system designed to guarantee safe and effective drugs for consumers in the United States.' [...] And that closed system 'has effectively precluded importation of [prescription] drugs.'").  And because the importation of an unapproved drug violates the FFDCA, the facilitation or importation of drugs from other countries has remained illegal.  *See Pharm. Rsch. & Mfrs. of Am.*, 2023 WL 1795644, at *2 ("The statutory drug-importation scheme has thus lain dormant for most of its history, and importing drugs from Canada or elsewhere has remained effectively illegal."); Personal Importation, Food & Drug Admin. (last updated January 10, 2023), https://www.fda.gov/industry/import-basics/personal-importation ("If a drug is approved for use in another country but is an unapproved new drug in the U.S. it is illegal to import.").

At the end of the day, and perhaps even at the beginning, PCC's complaint is not against LegitScript, but against the United States Congress and the federal regulatory agencies that have made these proscriptions the law of the land, for what they have judged to be the greater public good.

## II.    CONCLUSION

For all the foregoing reasons, PCC is barred from pursuing in this case issues addressed and resolved in the New York case regarding PCC's lack of antitrust standing.  The issues necessarily decided in the New York Action may not be relitigated in this action.  In the alternative, an independent review of the facts and evidence should reach the same conclusion that there is no dispute of material fact that PCC's business is primarily geared toward facilitating the illegal importation of drugs.  Therefore, the Court should grant summary judgment dismissing PCC's Sherman Act claim with prejudice under either ground.

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

Dated: July 6, 2023                    Respectfully submitted,
                                       GORDON REES SCULLY MANSUKHANI,
                                       LLP


                                       By: *s/ Richard P. Sybert*
                                       Richard P. Sybert, OSB No. 833714
                                       rsybert@grsm.com
                                       John T. Mills (*Pro Hac Vice*)
                                       jtmills@grsm.com
                                       *Attorneys for Defendant LegitScript, LLC*

DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT – 22

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

1195060/78548940v.1

## CERTIFICATE OF SERVICE

I hereby certify that on this **6th** day of **July, 2023**, the foregoing **DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** was filed electronically with the Clerk of the Court using the CM/ECF system which will send a notification of such filing to all counsel of record in this matter.

GORDON REES SCULLY MANSUKHANI LLP

By: *s/ Richard P. Sybert*
         Richard P. Sybert, OSB No. 833714
         rsybert@grsm.com
         John T. Mills (pro hac vice)
         jtmills@grsm.com
         Hannah Brown (pro hac vice)
         hbrown@grsm.com
         Matthew Mejia (pro hac vice)
         mmejia@grsm.com
         Attorneys for Defendant
         LEGITSCRIPT, LLC

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600