Richard P. Sybert, OSB No. 833714
rsybert@grsm.com
Direct Dial: (619) 230-7768
Hannah Brown (*Pro Hac Vice*)
hbrown@grsm.com
Matthew Mejia (*Pro Hac Vice*)
mmejia@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
1300 SW Fifth Avenue, Suite 2000
Portland, Oregon 97201
tel (503) 222-1075 / fax (503) 616-3600

John T. Mills (*Pro Hac Vice*)
jtmills@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
One Battery Park Plaza, 28th Floor
New York, New York 10004
tel (212) 269-5500 / fax (212) 269-5505

Attorneys for Defendant
LEGITSCRIPT LLC

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| PHARMACYCHECKER.COM LLC, <br><br> Plaintiff, <br><br> vs. <br><br> LEGITSCRIPT LLC, <br><br> Defendant. | Case No. 3:22-cv-00252-SI <br><br> **DEFENDANT LEGITSCRIPT LLC'S POST-HEARING BENCH MEMORANDUM ON:** <br> **(1) *ARIZONA v. CALIFORNIA*;** <br> **(2) ILLEGALITY, STANDING AND DAMAGES.** |

DEFENDANT LEGITSCRIPT LLC'S POST-HEARING BENCH MEMORANDUM

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

**(1)    *Arizona v. California***

At the hearing on August 4, 2023, the Court granted the parties permission to file post-hearing bench memorandums regarding the U.S. Supreme Court decision *Arizona v. California*, 530 U.S. 392, supplemented, 531 U.S. 1 (2000), as to whether a "final judgment" is required under the doctrine of issue preclusion (collateral estoppel).

As the discussion below makes clear, the single sentence in question from the opinion is *dicta*; it simply quotes a secondary source that used "judgment" loosely; has not been so viewed or interpreted by the many district court and appellate decisions that have come afterward; and has not been so treated even by the Supreme Court's own subsequent decisions.  Case and secondary authority establish in any event that "judgment" can include *summary* judgment, as here.

In *Arizona v. California*, the Quechan Tribe alleged before the Indian Claims Commission that the cession of a portion of the Tribe's reservation, including the Fort Yuma boundary area, was either void or obtained for unconscionable consideration, and the Tribe had sought compensation from the United States based on alternative theories of taking and trespass. 530 U.S. at 397-406.  The United States and the Tribe eventually entered into a consent decree in 1983 settling all claims made.  *Id.*  Subsequently, Arizona and California asserted that the consent decree barred any claims for water rights to lands within the disputed cession.  *Id.*[1]

The Court held, however, that the consent judgment did not preclude the Tribe from asserting that the disputed lands remained part of the reservation, since "ownership of the disputed boundary lands [was] not actually litigated and decided." *Id.* at 413-18.  The Court stated that settlements such as the consent judgment usually do not affect the application of issue

---

[1] The Court also dealt with another issue, namely whether the Tribe's claims for water rights in connection with the Fort Yuma boundary dispute were precluded by a prior decision (referred to as "Arizona I") between the same parties, but this was resolved on a procedural technicality so it is not relevant here.

| DEFENDANT LEGITSCRIPT LLC'S POST-HEARING BENCH MEMORANDUM – 1 | **GORDON REES SCULLY MANSUKHANI, LLP**<br>1300 SW Fifth Avenue, Suite 2000<br>Portland, OR 97201<br>Telephone: (503) 222-1075<br>Facsimile: (503) 616-3600 |
|---|---|

preclusion, unless it is clear that the parties intended their agreement to have such effect. *Id.* That is because a judgment entered by confession, consent, or default does not show that the issue was actually litigated. *Id.*

A single, almost "throwaway" sentence from the entire opinion cited to the Restatement (Second) of Judgments regarding issue preclusion: "It is the general rule that issue preclusion attaches only '[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment.'" *Id.* at 414 (citing Restatement (Second) of Judgments § 27, p. 250 (1982)). There was no other mention of a "final judgment" being required.[2]

This single sentence is not only *dicta* because it is entirely unnecessary to the decision, and simply a quote from a secondary authority. Had the Supreme Court actually intended to adopt this statement and make a final judgment a necessary element as a matter of law for issue preclusion, it surely would have said so. That it did not is evidenced by the numerous subsequent district and appellate courts which have disregarded any such requirement and issued opinions that a final judgment is <u>not</u> a required element for issue, rather than claim preclusion. Subsequent decisions to *Arizona v. California* do <u>not</u> cite the opinion as authority for a final judgment as a required element for issue preclusion. *See*, *e.g.*, *Howard v. City of Coos Bay*, 871 F.3d 1032, 1041 (9th Cir. 2017); *Littlejohn v. United States*, 321 F.3d 915, 923 (9th Cir. 2003); *Ni-Q, LLC v. Prolacta Bioscience, Inc.*, 2019 WL 637703, at *8 n.6 (D.Or. Feb. 14, 2019); *Curtis v. Oregon*, 2013 WL 3466533, at *2–*3 (D.Or. July 9, 2013).[3]

---

[2] Nor in its earlier decision in *United States v. Int'l Bldg. Co.*, 345 U.S. 502, 506 (1953), which the Court cited.

[3] *See also Mull v. Motion Picture Indus. Health Plan*, 41 F.4th 1120 (9th Cir. 2022), where the Ninth Circuit differentiated between *claim* preclusion (*res judicata*) and *issue* preclusion (collateral estoppel) in the former's requirement for a "final judgment": "[T]he doctrine of <u>claim preclusion</u> provides that 'a <u>final judgment</u> forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." [...] <u>Claim</u> preclusion "applies only where there is (1) an identity of claims, (2) <u>a final judgment</u> on the merits, and (3) privity between parties.' [...] <u>[I]ssue preclusion</u> 'bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs

DEFENDANT LEGITSCRIPT LLC'S POST-HEARING BENCH MEMORANDUM – 2

GORDON REES SCULLY MANSUKHANI, LLP
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

Further, there are other Supreme Court opinions in which Justice Ginsburg either wrote or joined the opinion that do <u>not</u> mention any such *final* judgment requirement with regard to issue preclusion, using the phrase "prior judgment" instead of "final judgment." *See, e.g., Herrera v. Wyoming*, 139 S.Ct. 1686, 1697 (2019) (J. Sotomayor, joined by J. Ginsburg) ("Under the doctrine of issue preclusion, 'a prior judgment ... foreclos[es] successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment."); *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (J. Ginsburg) ("Issue preclusion, in contrast, bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim.")[4]; *New Hampshire v. Maine*, 532 U.S. 742, 748–49 (2001) (J. Ginsburg) ("Issue preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of an issue of fact or law actually [...] litigated and resolved in a valid court determination essential to the prior judgment, whether or not the issue arises on the same or a different claim. *See* Restatement (Second) of Judgments §§ 17, 27, pp. 148, 250 (1980); D. Shapiro, Civil Procedure: Preclusion in Civil Actions 32, 46 (2001).").

District courts in the Ninth Circuit have also clarified that the "threshold for satisfying the elements of *res judicata* is <u>higher</u> than that for satisfying the elements of collateral estoppel." *See*, *e.g.*, *Intel Corp. v. Am. Guarantee & Liab. Ins. Co.*, 2010 WL 4033387, at *3 (N.D.Cal. Oct. 5, 2010) (emphasis added). While *res judicata* is applicable only when a "final judgment" is

---

in the context of a different claim.'" 41 F.4th at 1139–40 (citing *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)) (emphasis added). As set forth below, this can include a *summary* judgment.

[4] *Taylor v. Sturgell* in fact was a case of claim, not issue, preclusion. In discussing claim preclusion and issue preclusion, the court only discussed the final judgment requirement under claim preclusion and not issue preclusion. Justice Ginsburg wrote, "Under the doctrine of claim preclusion, a final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.' [...] Issue preclusion, in contrast, bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." 553 U.S. 880, 892 (2008).

---

DEFENDANT LEGITSCRIPT LLC'S POST-HEARING BENCH MEMORANDUM – 3

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

rendered, "issue preclusion" applies to "any prior adjudication" that is "sufficiently firm to be accorded conclusive effect." *Id.* (citing Rest. (Second) Judgments § 13).

Not every judgment is a *final* judgment. A *summary* judgment is still a "judgment," for example, and it is precisely on the basis of the summary judgment in the parallel SDNY case here that LegitScript brought this motion. Even the Restatement quote cited in *Arizona v. California* is itself not as clear as one might think regarding the "final judgment" requirement. The same Restatement does not discuss final judgments in relation to issue preclusion in other sections, and at least one of its comments and examples specifically cites a *summary* judgment as a "judgment" that suffices.[5] Section 13 of the Restatement in fact makes this distinction as to "judgment" clear: "[The] rules of res judicata are applicable only when a final judgment is rendered. However, for purposes of issue preclusion [...], *'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect.*" *Id.* (emphasis added);[6] *see also Alzheimer's Inst. of Am. v. Eli*

---

[5] The Restatement's Illustration No. 10 states: "In January, B agrees to buy a horse from A, and in February B agrees to buy Blackacre from A. A brings a suit for specific performance of the February agreement; B alleges with supporting proof that he was an infant when the agreement was made, and the court enters **summary judgment** for B on that ground. Thereafter A brings an action against B for damages for breach of the January agreement and demands a jury. The judgment in the prior suit is conclusive that B was an infant when the contract was made." (Emphasis added.)

[6] Comment "g" to § 13 also suggests that "final judgment in the strict sense" should not necessarily always be required: "Usually there is no occasion to interpret finality less strictly when the question is one of issue preclusion, that is, when the question is whether decision of a given issue in an action may be carried over to a second action in which it is again being litigated. (If the second action is on the same claim, preclusion is an instance of direct estoppel; if it is on a different claim, preclusion is an instance of collateral estoppel. [...]) But to hold invariably that that kind of carry-over is not to be permitted until a final judgment in the strict sense has been reached in the first action can involve hardship—either needless duplication of effort and expense in the second action to decide the same issue, or, alternatively, postponement of decision of the issue in the second action for a possibly lengthy period of time until the first action has gone to a complete finish. In particular circumstances the wisest course is to regard the prior decision of the issue as final for the purpose of issue preclusion without awaiting the end judgment. [...] Before doing so, the court should determine that the decision to be carried over was adequately deliberated and firm, even if not final in the sense of forming a basis for a judgment already entered. Thus preclusion should be refused if the decision was avowedly tentative. On the other hand, that the parties were fully heard, that the court supported its decision with a reasoned opinion, that the decision was subject to appeal or was in fact reviewed on appeal, are factors supporting the conclusion that the decision is final for the purpose of preclusion. The test of finality, however, is whether the conclusion in question is procedurally definite and not whether the court might have had doubts in reaching the decision."

| DEFENDANT LEGITSCRIPT LLC'S POST-HEARING BENCH MEMORANDUM – 4 | **GORDON REES SCULLY MANSUKHANI, LLP**<br>1300 SW Fifth Avenue, Suite 2000<br>Portland, OR 97201<br>Telephone: (503) 222-1075<br>Facsimile: (503) 616-3600 |
|---|---|

*Lilly & Co.*, 128 F.Supp.3d 1249, 1254 (N.D.Cal. 2015) ("[T]o be final for [issue preclusion] purposes, a decision need not possess finality in the sense of 28 U.S.C. § 1291, which establishes the jurisdiction of the courts of appeals over final decisions of the district courts. [...] Rather, the proper query [...] is whether the court's decision on the issue as to which preclusion is sought is final. [...] Indeed, "[i]ssue preclusion [has been applied to] matters resolved by preliminary rulings or to determinations of liability that have not yet been completed by an award of damages or other relief.") (citing *Syverson v. IBM*, 472 F.3d 1072, 1079 (9th Cir. 2007); *Lummus Co. v. Commonwealth Oil Refining Co.*, 297 F.2d 80, 89 (2d Cir. 1961)).

Following this guidance, the Ninth Circuit has set forth several relevant factors to determining whether a prior adjudication is "sufficiently firm" including whether the decision was "avowedly tentative"; whether the parties were fully heard; whether "the court supported its decision with a reasoned opinion"; and whether "the decision was subject to appeal or was in fact reviewed on appeal." *Luben Industries, Inc. v. U.S.*, 707 F.2d 1037 (9th Cir. 1983) (quoting Comment "g" to Restatement (Second) of Judgments § 13 (1982)). These factors counsel in favor of conferring preclusive effect to the SDNY Summary Judgment Order. The parties there were fully heard and the Order was well-reasoned. It was not "avowedly tentative," to the contrary.

The Ninth Circuit and district courts within it have found, indeed, that a summary judgment order is final, or "sufficiently firm" for the application of issue preclusion. *See Kazenercom TOO v. Ibar Dev., LLC*, 464 F. App'x 588, 592 (9th Cir. 2011) ("Bektayev does not dispute that the Nevada court's summary judgment was final and on the merits."); *Pac. Boring, Inc. v. Staheli Trenchless Consultants, Inc.*, 138 F.Supp.3d 1156, 1164 (W.D.Wash. 2015) (The "application of collateral estoppel to issues resolved by partial summary judgment is within the purpose of the judicially created collateral estoppel doctrine—to conserve judicial resources and

DEFENDANT LEGITSCRIPT LLC'S POST-HEARING BENCH MEMORANDUM – 5

GORDON REES SCULLY MANSUKHANI, LLP
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

provide finality to litigants. Here, the Court finds that the previous decisions … were 'sufficiently firm,' Plaintiff was fully heard, the hearing was adequate, there was opportunity for appeal, and [the] opinions were reasoned, despite Plaintiff's protests to the contrary. This factor is met."), *aff'd*, 708 F. App'x 324 (9th Cir. 2017); *Wade v. Roper Indus., Inc.*, 2013 WL 6732071, at *4 (N.D.Cal. Dec. 20, 2013) ("The court granted summary adjudication as to Wade's state statutory claims[. . . .] That order is sufficiently firm to have preclusive effect."); *Blatty v. Warner Bros. Ent.*, 2011 WL 13217379, at *7–8 (C.D.Cal. Apr. 21, 2011) (while "[a]ssuming, arguendo, the 2003 State Court Order was not final, [the court still found that] it would be deemed sufficiently firm to accord preclusive effect," the court found that the factors weighed in favor of the issue preclusions effect. The court found that the "State Court decision was not avowedly tentative because it dismissed Plaintiff's claim with prejudice and supported its decision with a well-reasoned opinion. The parties were also fully heard, as the State Court allowed Plaintiff and Friedkin to cure the deficiencies of their complaint twice. [...] [and that] Plaintiff and Friedkin forfeited the right to appeal in the 2003 Settlement Agreement."); *Sec. People, Inc. v. Medeco Sec. Locks, Inc.*, 59 F.Supp.2d 1040, 1045 (N.D.Cal. 1999), *aff'd*, 243 F.3d 555 (Fed. Cir. 2000) ("A disposition by summary judgment is a decision on the merits, and it is as final and conclusive as a judgment after trial.").[7]

---

[7] We have found a single Ninth Circuit case that found a *partial* summary judgment order was *not* sufficiently firm, but in the context of state and not federal law. *See St. Paul Fire & Marine Ins. Co. v. F.H.*, 55 F.3d 1420, 1425 (9th Cir. 1995) ("The partial summary judgment was not a final judgment."). The court held that an adverse partial summary judgment ruling in a case that settled prior to entry of final judgment did not collaterally estop the plaintiff from re-litigating the same issue. *Id.* However, courts do not follow *St. Paul Fire* because it did not analyze *federal* collateral estoppel law. Instead, as one court observed, the case "dealt with whether an Alaskan state court's decision had preclusive effect and the Ninth Circuit analyzed Alaskan state collateral estoppel law in rendering its decision." *See Restoration Indus. Assoc. Inc. v. ThermaPure Inc.*, 2014 WL 12597331, at *5 (C.D.Cal. June 6, 2014). It is clear from the opinion the court was applying Alaska and not federal law, indeed citing *Briggs v. State Dep't of Public Safety*, 732 P.2d 1078, 1082 (Alaska 1987)). Thus, *St. Paul Fire* "is not instructive on federal collateral estoppel law in [the Ninth] Circuit." *Restoration*, 2014 WL 12597331, at *5. Notably, since the *St. Paul Fire* decision issued in 1995, the Ninth Circuit has cited it only once, 26 years ago, and solely for the proposition that "an order granting a motion for partial summary judgment is an interlocutory order." *See In re Pintlar Corp.*, 124 F.3d 1310, 1312 (9th Cir. 1997). In regard to whether a decision is "sufficiently firm" for the purposes of federal collateral estoppel, *Luben Industries* provides the correct test for finality for the purposes of collateral estoppel in the Ninth Circuit.

DEFENDANT LEGITSCRIPT LLC'S POST-HEARING BENCH MEMORANDUM – 6

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

In summary, the language cited in *Arizona v. California* was only *dicta* from a secondary authority, as evidenced by the numerous district and appellate courts which have disregarded any such requirement and instead issued opinions that a final judgment is *not* a required element for issue preclusion. Applying the correct federal issue preclusion standard under *Luben Industries*, the S.D.N.Y.'s summary judgment order is preclusive.

### (2) Illegality, Standing and Damages

This Court also discussed at oral argument whether PCC's facilitation of illegal conduct is itself illegal.[8] With respect, it is. Judge Karas's ruling in New York is instructive and was unambiguous: "[I]t is clear that PCC 'makes easier' the illegal conduct at issue: PCC directs U.S. consumers to foreign pharmacies where they can purchase prescription medication in violation of federal law." MSJ Order at 64. And, the Court found that personal importation is illegal, in large part, because the FDA cannot guarantee that prescription drugs are safe when purchased outside of the "carefully controlled congressional scheme designed to keep consumers safe." *Id.* at 58. Indeed, the Court held that PCC's statements to consumers regarding the safety of personal importation are "in direct contravention of FDA guidance," and that "PCC also holds itself out as a source for 'exceedingly safe' medication 'from a pharmacy outside of the U.S.' to U.S. consumers, despite apparently knowing—and attempting to discount—the exact risks that the FDA and federal laws are designed to prevent." *Id.* at 59. He held that PCC's enterprise is "completely or almost completely geared toward facilitating illegality" and that its conduct— "facilitating the purchase of foreign drugs the importation of which is prohibited by federal law"— is itself "illegal activity." MSJ Order at 53, 63.[9] Alleged injury to an enterprise like PCC's, the

---

[8] This Court also raised the hypothetical of journalists, researchers, or academicians using PCC's website. With respect, there has been no such evidence adduced or offered which could meet the threshold necessary to defeat summary judgment. Common sense—the conclusion that a reasonable jury could reach—also informs that any such use would pale alongside the main thrust of PCC's business and the reason that foreign pharmacies agree to pay PCC for click-throughs: its business is facilitating U.S. orders for foreign pharmaceuticals, which is illegal.

[9] Facilitation, the New York court held, "does not require actual proof of purchases" or require that PCC actually produce, sell, distribute, or import foreign prescription drugs. SDNY MSJ Order at 63. Instead, merely helping to

---

| | |
|---|---|
| DEFENDANT LEGITSCRIPT LLC'S POST-HEARING BENCH MEMORANDUM – 7 | **GORDON REES SCULLY MANSUKHANI, LLP**<br>1300 SW Fifth Avenue, Suite 2000<br>Portland, OR 97201<br>Telephone: (503) 222-1075<br>Facsimile: (503) 616-3600 |

"almost total magnitude" of which is devoted to "illegal conduct," cannot qualify as an injury of a *legally* protected interest. *Id.* at 55.

It is illegal "for a U.S. business to receive **some** or even almost all of its revenue share from foreign entities . . . if this revenue stems from illegal activity (i.e., facilitating the purchase of foreign drugs the importation of which is prohibited by federal law)." *Id.* at 53 (emphasis added). That is exactly what PCC does—it "makes easier," *i.e.* facilitates, "the illegal conduct at issue…." *Id.* at 64.[2] The Court thus concluded that "[t]he almost total magnitude of this illegal conduct by [Plaintiff] makes their miniscule conduct that may be legal, insignificant."[3] *Id.* at 55 (citations omitted). And that is the interest PCC alleges was injured—its business facilitating unlawful importation—in the form of lost consumer visits to its sites from which consumers would then click through to foreign pharmacies and which would then generate the click fee revenues that "sustain" PCC's business. Compl. ¶ 98. PCC cannot claim a legally cognizable injury to satisfy Article III standing because it cannot establish a legally protected interest. *See Bell v. Redflex Traffic Sys., Inc.*, 374 F. App'x 518, 520 (5th Cir. 2010); 13A Wright et al., Federal Practice and Procedure § 3531.4 (3d ed.) ("The injured interest must be one that the courts will recognize for standing purposes. . . . Standing would not be recognized for a smuggler who asserted that his drug traffic was disrupted.").

As Judge Karas acknowledged, PCC itself has conceded the illegality and lack of safety associated with the very same personal importation it facilitates: "Technically, in the U.S., under most circumstances, it is prohibited to import medication that you order *internationally* online," SDNY MSJ Order at 58 (emphasis in original); "the law allows the FDA and U.S. Customs and Border Patrol to detain and refuse international prescription orders," *id.*; "regulatory bodies, including the [FDA], refer to [foreign online] pharmacies as 'illegal[,]'" *id.* at 59 (quoting PCC

---

bring about an offense is enough to itself be an "illegal activity"—and has been enough for courts both within and outside the Second Circuit. *Id.* at 53, 63 (collecting criminal cases discussing criminal facilitation of unlawful conduct).

| DEFENDANT LEGITSCRIPT LLC'S POST-HEARING BENCH MEMORANDUM – 8 | **GORDON REES SCULLY MANSUKHANI, LLP**<br>1300 SW Fifth Avenue, Suite 2000<br>Portland, OR 97201<br>Telephone: (503) 222-1075<br>Facsimile: (503) 616-3600 |
|---|---|

"Consumer Support page"). With respect to safety-related risks associated with the drug importation PCC facilitates, PCC concedes that "risks do exist," and, with respect to "incorrect or unmarked" drugs a PCC visitor bought through a PCC-accredited foreign pharmacy, PCC's then President acknowledged that the customer's pills could "be non-compliant." *Id*. at 59, 61 (Court noting "incorrect or unmarked medication" as "potentially dangerous.").

Regarding the point that this Court raised during oral argument as to the proportion of PCC's business represented by click-throughs to foreign pharmacies, all or virtually all of PCC's alleged injury comes from reduced click fees that PCC earns from U.S. consumers clicking through to PCC-accredited foreign pharmacy websites. Compl. ¶ 98-102. Judge Karas found "that no matter how one slices the pie, [these] click fees from U.S. consumers to foreign pharmacies represent the largest share of PCC's revenue. Indeed … there is no source of revenue that could come even close to the costs per clicks generated by U.S. consumers." SDNY MSJ Order at 55. Recognizing the sheer magnitude of these click fee revenues to PCC's enterprise, Judge Karas held that, "if PCC were to lose the click fees from U.S. consumer clicks to foreign websites . . . PCC's business would likely cease to exist." *Id*. Critically, he held that this click fee revenue is unlawfully derived because it "stems from illegal activity i.e., facilitating the purchase of foreign drugs the importation of which is prohibited by federal law." *Id*. at 53 (parentheticals omitted). And as *this* court astutely observed, this very likely takes the bottom out from under any significant damages claim by PCC. The law precludes courts from awarding the very relief PCC seeks here—damages allegedly suffered from a decrease in PCC's illegal click fee revenue.[10]

---

[10] This legal inability to recover *damages* from illegal conduct PCC's alleged injuries—monetary damages attributable to reduced click fees—because federal courts cannot remedy alleged harms to illegal ventures, may *also* be equivalent to a lack of standing. *See, e.g.*, *Raines v. Byrd*, 521 U.S. 811, 819 (1997) (to have standing, the dispute must be "traditionally thought to be capable of resolution through the judicial process") (internal quotes omitted); *Gonzales v. Gorsuch*, 688 F.2d 1263, 1267 (9th Cir. 1982) (the focus of the redressability requirement "is always upon the ability of the court to redress the injury suffered by the plaintiff…*if the court is unable to grant the relief that relates to the harm*, the plaintiff lacks standing" (emphasis added)). Courts "cannot remedy Plaintiff's injuries [where] doing so would result in an illegal mandate." *Shulman v. Kaplan*, 2:19-CV-05413-AB (FFMx), 2020 WL 7094063, at *2 (C.D.Cal. Oct. 29, 2020) ("any potential remedy in this case would contravene federal law" where plaintiff seeks damages for alleged injury to its cannabis business noting "it seems implausible that RICO—a federal

| DEFENDANT LEGITSCRIPT LLC'S POST-HEARING BENCH MEMORANDUM – 9 | GORDON REES SCULLY MANSUKHANI, LLP<br>1300 SW Fifth Avenue, Suite 2000<br>Portland, OR 97201<br>Telephone: (503) 222-1075<br>Facsimile: (503) 616-3600 |
|---|---|

Dated: August 11, 2023

Respectfully submitted,

GORDON REES SCULLY MANSUKHANI, LLP

By: *s/ Richard P. Sybert*
    Richard P. Sybert, OSB No. 833714
    rsybert@grsm.com
    John T. Mills (*Pro Hac Vice*)
    jtmills@grsm.com
    *Attorneys for Defendant LegitScript, LLC*

---

statute—was designed to provide redress for engaging in activities that are illegal under federal law"). Awarding PCC damages "would, in essence (1) provide a remedy for actions that are unequivocally illegal under federal law; and (2) necessitate that a federal court contravene [the] federal" drug importation regulations and FDA's explicit policy statements. *Id*.; 21 U.S.C. § 331(a), (d); *see also* 21 U.S.C. §§ 352(o), 355(a), 384(j); MSJ Order 53 (click through revenue "stems from illegal activity (i.e., facilitating the purchase of foreign drugs the importation of which is prohibited by federal law.)"). Such a remedy would reward criminal facilitation and "be contrary to public policy." *Shulman*, 2020 WL 7094063, at *2.

DEFENDANT LEGITSCRIPT LLC'S POST-HEARING BENCH MEMORANDUM – 10

**GORDON REES SCULLY MANSUKHANI, LLP**
1300 SW Fifth Avenue, Suite 2000
Portland, OR 97201
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

1195060/80466238v.1