Philip S. Van Der Weele, OSB #863650
phil.vanderweele@klgates.com
K&L GATES LLP
One SW Columbia Street, Suite 1900
Portland, Oregon 97204
Telephone: (503) 228-3200

Aaron Gott (admitted *pro hac vice*)
aaron.gott@bonalawpc.com
BONA LAW PC
331 2nd Avenue, Suite 420
Minneapolis, MN 55401
Telephone: (612) 968-7758

James F. Lerner (admitted *pro hac vice*)
james.lerner@bonalawpc.com
Aaron Lawrence (admitted *pro hac vice*)
aaron.lawrence@bonalawpc.com
BONA LAW PC
16 Madison Square Park West, 9th Floor
New York, NY 10010
Telephone: (212) 634-6861

***Counsel for Plaintiff/Counter-Defendant
PharmacyChecker.com LLC***

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| PHARMACYCHECKER.COM LLC, | Civil Action No.3:22-cv-00252-SI |
| *Plaintiff*, | |
| vs. | PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS TO AMENDED COMPLAINT |
| LEGITSCRIPT LLC, | |
| *Defendant*. | Judge Michael H. Simon |

# TABLE OF CONTENTS

LR 7-1 CERTIFICATION ................................................................................. 1

MOTION ........................................................................................................... 1

MEMORANDUM IN SUPPORT ....................................................................... 1

THIS MOTION IS TIMELY ............................................................................. 3

ALLEGED FACTS ............................................................................................ 4

LEGAL STANDARD ........................................................................................ 8

ARGUMENT ..................................................................................................... 9

I.      LEGITSCRIPT'S RICO CLAIM FAILS AS A MATTER OF LAW .................... 9

    A.   LegitScript Fails to Allege Cognizable Harm .............................. 10

    B.   LegitScript Fails to Allege Direct Proximate Causation ........................... 12

        1.   The Law Controlling Proximate Causation Under RICO ................ 12

        2.   LegitScript Fails to Show that the Alleged Misstatements Directly Caused Its Purported Harms ........................................ 13

        3.   The *Holmes* Factors Further Bely Any Direct Proximate Cause Relationship Between the Alleged Misconduct and Harms ...................... 17

    C.   LegitScript Fails to Plead a Cognizable Enterprise .................................... 18

    D.   LegitScript Fails to Allege Racketeering Activity ...................................... 25

II.     LEGITSCRIPT DOES NOT PLEAD A VIOLATION OF THE LANHAM ACT ..................................................................................... 26

    A.   The Southern District of New York Dismissed a Similar Lanham Act Counterclaim ................................................................. 26

    B.   LegitScript Does Not Plead a Proximately Caused Commercial Injury to Reputation or Sales ................................................... 27

    C.   The Alleged Statements Are Not Actionably False Statements Under the Lanham Act .......................................................... 31

        1.   The Alleged Statements About the Safety of Ordering from International Pharmacy Websites Are Subjective Characterizations ....... 32

        2.   The Alleged Statements About the Legality of Drug Importation Are Opinions ........................................................ 33

CONCLUSION ................................................................................................ 34

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                 **Page(s)**

*In re All Terrain Vehicle Litig.*,
   771 F. Supp. 1057 (C.D. Cal. 1991)......................................................................... 26

*Anza v. Ideal Steel Supply Corp.*,
   547 U.S. 451 (2006) ...................................................................*passim*

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ....................................................................... 8, 9, 18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .............................................................................. 9, 18

*Boyle v. United States*,
   556 U.S. 938 (2009) ................................................................................... 19

*Bridge v. Phx. Bond & Indem. Co.*,
   553 U.S. 639 (2008) ................................................................................... 16

*C&M Cafe v. Kinetic Farm, Inc.*,
   No. 16-cv-04342-WHO, 2016 WL 6822071 (N.D. Cal. Nov. 18, 2016)................ 11

*Canyon Cnty. v. Syngenta Seeds, Inc.*,
   519 F.3d 969 (9th Cir. 2008) ................................................................ 12

*Cedar Swamp Holdings, Inc. v. Zaman*,
   487 F. Supp. 2d 444 (S.D.N.Y. 2007) ............................................... 20, 23

*Chaset v. Fleer/Skybox Int'l, LP*,
   300 F.3d 1083 (9th Cir. 2002) ...................................................... 10, 11

*City of N.Y. v. Chavez*,
   944 F. Supp. 2d 260 (S.D.N.Y. 2013) ............................................... 20

*City of Oakland v. Wells Fargo & Co.*,
   14 F.4th 1030 (9th Cir. 2021)............................................................... 13

*Cnty. of Marin v. Deloitte Consulting LLP*,
   836 F. Supp. 2d 1030 (N.D. Cal. 2011) ............................................ 26

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
   173 F.3d 725 (9th Cir. 1999) ............................................................. 33

*Coho Salmon v. P. Lumber Co.*,
    61 F. Supp. 2d 1001 (N.D. Cal. 1999) ................................................. 16

*Cont. Transp. Servs., Inc. v. New Era Lending LLC*,
    No. 17 Civ. 8224 (AT), 2018 WL 11226077 (S.D.N.Y. Oct. 26, 2018) ................. 23

*Cook, Perkiss, Liehe v. N. Cal. Collection Serv., Inc.*,
    911 F.2d 242 (9th Cir. 1990) ........................................................ 26

*Dual Diagnosis Treatment Ctr., Inc. v. Centene Corp.*,
    No. 2:20-cv-04112-SB-PVC, 2021 WL 4464204 (C.D. Cal. May 7,
    2021) ............................................................................... 11

*Dworkin v. Hustler Mag. Inc.*,
    867 F.2d 1188 (9th Cir. 1989) ......................................................... 4

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014) ................................................*passim*

*Ellis v. J.P. Morgan Chase & Co.*,
    No. 12-cv-03897-YGR, 2015 WL 78190 (N.D. Cal. Jan. 6, 2015), *aff'd
    sub nom. Ellis v. JPMorgan Chase & Co.*, 752 F. App'x 380 (9th Cir.
    2018) (unpublished) ................................................................. 21

*Eugster v. Wash. State Bar Ass'n*,
    No. C15-0375JLR, 2015 WL 5175722 (W.D. Wash. Sept. 3, 2015),
    *aff'd*, 684 F. App'x 618 (9th Cir. 2017) (unpublished) ........................... 19

*Glob. Master Intl. Grp., Inc. v. Esmond Nat., Inc.*,
    76 F.4th 1266 (9th Cir. 2023) ...................................................... 10

*Gomez v. Guthy-Renker, LLC*,
    No. EDCV 14–01425 JGB (KKx), 2015 WL 4270042 (C.D. Cal. July
    13, 2015) ...................................................................... 21, 23

*Hemi Grp., LLC v. City of N.Y.*,
    559 U.S. 1 (2010) ...........................................................*passim*

*Holloway v. Clackamas River Water*,
    No. 3:13–cv–01787–AC, 2016 WL 5429659 (D. Or. July 5, 2016),
    *report and recommendation adopted,* 2016 WL 5477548 (D. Or.
    Sept. 25, 2016), *aff'd in part, rev'd in part on other grounds,* 739
    App'x 868 (9th Cir. 2018) (unpublished) ........................................... 11

*Holloway v. Clackamas River Water*,
    739 F. App'x. 868 (9th Cir. 2018) (unpublished) .................................... 9

*Holmes v. Secs. Inv. Prot. Corp.*,
    503 U.S. 258 (1992) .............................................................. 12, 13, 17

*HomeLight, Inc. v. Shkipin*,
    694 F. Supp. 3d 1242 (N.D. Cal. 2023) ................................... 28, 29, 31

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ...................................................... 19

*Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*,
    940 F.2d 397 (9th Cir. 1991) ......................................................... 11

*Leadsinger, Inc. v. BMG Music Publ'g*,
    512 F.3d 522 (9th Cir. 2008) ......................................................... 34

*Leslie Salt Co. v. United States*,
    55 F.3d 1388 (9th Cir. 1995) .................................................... 33, 34

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) ............................................................ 27, 28, 31

*Mandani v. Volkswagen Grp. of Am., Inc.*,
    No. 17-cv-07287-HSG, 2019 WL 652867 (N.D. Cal. Feb. 15, 2019).................... 32

*Martinez v. Extra Space Storage, Inc.*,
    No. C 13-00319 WHA, 2013 WL 1390412 (N.D. Cal. Apr. 4, 2013).................... 13

*Mophie, Inc. v. Shah*,
    No. SA CV 13-01321 DMG (JEMx), 2014 WL 10988339 (C.D. Cal.
    July 24, 2014) ........................................................................ 19

*Moss v. BMO Harris Bank, N.A.*,
    258 F. Supp. 3d 289 (E.D.N.Y. 2017)............................................ 20, 23

*Newcal Indus., Inc. v. Ikon Off. Sol.*,
    513 F.3d 1038 (9th Cir. 2008) ....................................................... 32

*Odom v. Microsoft Corp.*,
    486 F.3d 541 (9th Cir. 2007) (en banc) .............................................. 9

*Orozco v. Fresh Direct, LLC*,
    No. 15-CV-8226 (VEC), 2016 WL 5416510 (S.D.N.Y. Sept. 27, 2016)................. 19

*PharmacyChecker.com LLC v. LegitScript LLC*,
    No. 24-2697 (9th Cir. May 23, 2025)............................................. 4, 33

*PharmacyChecker.com LLC v. Nat'l Assoc. of Bds. of Pharmacy*,
No. 7:19-cv-07577 (S.D.N.Y. Sept. 20, 2022) ...................................................... 27

*Phillips v. Lithia Motors, Inc.*,
No. 03-3109-HO, 2006 WL 1113608 (D. Or. Apr. 27, 2006)..................... 19, 20, 23

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*,
30 F.3d 339 (2d Cir. 1994)..................................................................................... 25

*RJ v. Cigna Health & Life Ins. Co.*,
625 F. Supp. 3d 951 (N.D. Cal. 2022) ............................................................. 18, 19

*Rote v. Silicon Valley Bank, Inc.*,
No. 3:16–cv–00471–SI, 2016 WL 4565776 (D. Or. Sept. 1, 2016)
(Simon, J.)............................................................................................................. 16

*Sanford v. Memberworks, Inc.*,
625 F.3d 550 (9th Cir. 2010) .................................................................................. 9

*Shaw v. Nissan N. Am., Inc.*,
220 F. Supp. 3d 1046 (C.D. Cal. 2016).................................................................. 21

*Southland Sod Farms v. Stover Seed Co.*,
108 F.3d 1134 (9th Cir. 1997) ............................................................................... 32

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) .............................................................................. 8, 9

*TrafficSchool.com, Inc. v. Edriver Inc.*,
653 F.3d 820 (9th Cir. 2011) .......................................................................... 27, 28

*United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Const. Trades Dep't*,
911 F. Supp. 2d 1118 (E.D. Wash. 2012), *aff'd sub nom. United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Const. Trades Dep't AFL-CIO*, 770 F.3d 834 (9th Cir. 2014) ....................................................................... 18

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
No. 3:16-cv-02086-CRB, 2019 WL 6749534 (N.D. Cal. Dec. 6, 2019)................... 11

*In re Volkswagen 'Clean Diesel' Mktg., Sales Pracs., & Prods. Liab. Litig.*,
No. 15-MD-02672-CRB, 2025 WL 1083215 (N.D. Cal. Apr. 10, 2025) ........... 11, 12

*Wimo Labs LLC v. eBay Inc.*,
　　No. SACV 15-1330-JLS (KESx), 2016 WL 11507382 (C.D. Cal. Jan.
　　28, 2016) .................................................................................................... 20

## Statutes and Rules

15 U.S.C. §§ 1051 *et seq.* (Lanham Act) ..............................................*passim*

18 U.S.C. §§ 1961 *et seq.* (Racketeer Influenced and Corrupt Org Act) ............*passim*

Fed. R. Civ. P. 8 ....................................................................................... 21

Fed. R. Civ. P. 9 ................................................................................... 9, 24

Fed. R. Civ. P. 12 ........................................................................ 1, 3, 4, 26

Or. LR 7-1 ................................................................................................. 1

Or. LR 16-3 ............................................................................................... 4

## Other Authorities

PharmacyChecker.com, *International Pharmacy Verification Program*,
　　https://www.pharmacychecker.com/verification-program/ ................................... 19

PharmacyChecker.com, V*erification Program*, *Membership Standards & Guide*
　　(Rev. Apr. 30, 2017), https://cdn.pharmacychecker.com/pdf/membership_
　　standards_and_guide_4.30.17.pdf ....................................................... 19

## LR 7-1 CERTIFICATION

Pursuant to LR 7-1(a), the undersigned counsel certifies that the parties conferred and we were unable to reach a resolution.

## MOTION

Plaintiff PharmacyChecker.com LLC ("PharmacyChecker") moves this Court to dismiss Defendant LegitScript LLC's Counterclaims to Amended Complaint (Dkt. 299 at 25–47) under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, Rule 12(c).

## MEMORANDUM IN SUPPORT

In its January 3, 2024 order denying LegitScript LLC's ("LegitScript") motion for summary judgment, the Court "conclude[d] that PharmacyChecker's business is legal," Dkt. 292 (MSJ Order) at 24, and that PharmacyChecker has "a legal right in its business," *id.* at 38. After suffering that defeat, LegitScript filed its counterclaims, effectively seeking to revisit the Court's prior conclusion and renew its attack on PharmacyChecker's business—this time under the guise of the Racketeer Influenced and Corrupt Organizations Act ("RICO," 18 U.S.C. §§ 1961 *et seq.*) and the Lanham Act (15 U.S.C. §§ 1051 *et seq.*). Like the theory that LegitScript relied on in its motion for summary judgment, the gravamen of these claims is that PharmacyChecker's business model promotes and profits from illegal drug importation through misleading advertising. But the Court already rejected this theory when permitting PharmacyChecker's antitrust claims to go forward and should do so once more when finding that LegitScript's counterclaim cannot survive.

Page 1 – Plaintiff's MTD Defendant's Counterclaims to Amended Complaint

LegitScript's RICO claim suffers from numerous incurable deficiencies. **First**, LegitScript fails to allege any cognizable harm to its business or property, instead relying solely on lost reputation and resultant lost sales—categories of loss that courts have repeatedly found are not recoverable under RICO. **Second**, LegitScript relies on a fragmented, speculative, and attenuated chain of events to link such "harms" to PharmacyChecker's supposed mail and wire fraud violations. But, again, the law is clear that RICO requires plaintiffs to show that such violation directly and proximately caused the purported harm and that such harm can be no more than one step removed from the challenged conduct. **Third**, LegitScript offers a purported "enterprise" that **necessarily** lacks a common purpose and coherent structure. Contrary to LegitScript's theory, none of the constituent members of that enterprise—that is, all PharmcyChecker-accredited pharmacies, domestic and foreign—have any plausible incentive to cooperate with one another toward some common purpose. Rather, as a rationale actor, each PharmacyChecker accredited pharmacy seeks to maximize its **own** sales, regardless of whether it competes against other PharmacyChecker accredited pharmacies, LegitScript-endorsed pharmacies, or other pharmacies for such sales.

LegitScript's Lanham Act claim is similarly doomed. **First**, as with its RICO claim, LegitScript fails to offer a plausible set of facts showing that PharmacyChecker proximately caused its purported harms. **Second**, the alleged misstatements are in reality non-actionable puffery or opinion, and thus it has not pled any violation of the Lanham Act (or, for that matter, actionable racketeering activity under RICO).

## THIS MOTION IS TIMELY

This motion is timely under Rule 12(b)(6) and, alternatively, under Rule 12(c). PharmacyChecker's deadline to respond to the counterclaims was vacated when the case was stayed but that deadline was never reset—an oversight by both parties. Moreover, LegitScript will suffer no prejudice if the motion is heard now.

This case has a lengthy history, but the Counterclaims are a recent development. PharmacyChecker filed the action in August 2019 in New York. *See* Dkt. 1 (complaint); Dkt. 82 (amended complaint). Judge Karas granted LegitScript's Rule 12(b)(2) motion and subsequently severed and transferred the claim against LegitScript to this Court. *Id.*; *see also* Dkt. 219. In its June 1, 2023 motion for summary judgment, LegitScript challenged PharmacyChecker's antitrust standing, arguing PharmacyChecker was engaged in illegal conduct—even expressly asserting that PharmacyChecker as a whole was an illegal enterprise. Dkt. 271 at 12. This Court denied LegitScript's motion, and in doing so found that PharmacyChecker's business is legal. Dkt. 292 at 24 ("Based on the facts and law presented by the parties, the Court concludes that PharmacyChecker's business is legal. LegitScript has identified no federal or state law that ***PharmacyChecker*** has violated."). LegitScript thereafter filed an amended answer including counterclaims for the first time on February 23, 2024. Dkt. 299.

PharmacyChecker's deadline to respond was vacated and never reset. The Court granted its unopposed motion to extend time to respond to the Counterclaims to March 25, 2024. Before that deadline arrived, the Court granted LegitScript's

motion to certify its interlocutory appeal of this Court's order denying summary judgment. The decision also stayed all proceedings in this Court. Dkt. 302 at 14. At that point, PharmacyChecker faced no deadline to respond. On appeal, the Ninth Circuit affirmed this Court's order denying LegitScript's motion for summary judgment. *PharmacyChecker.com LLC v. LegitScript LLC*, No. 24-2697, Dkt. 29.1 (9th Cir. May 23, 2025). Upon remand, the Court entered an order directing the parties to confer and file a proposed case management schedule. Dkt. 307. The parties proposed somewhat different case schedules, but neither party addressed a deadline for Plaintiff's response to the Counterclaims—so neither did the Court's scheduling order. This oversight by the parties left no clear deadline for PharmacyChecker's response.

Given this disposition, PharmacyChecker's motion is timely under Rule 12(b)(6). But even if the motion is not timely under Rule 12(b)(6), the Court can hear the motion under Rule 12(c), and hearing the motion now presents no undue burden to the Court, prejudice to LegitScript, or impact on other deadlines. *See, e.g.*, LR 16-3. Rule 12(b)(6) and Rule 12(c) "motions are functionally identical," differing only in "time of filing," with Rule 12(b)(6) motions due before the deadline to answer. *Dworkin v. Hustler Mag. Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).

## ALLEGED FACTS

LegitScript paints a picture of PharmacyChecker as an illicit business that operates a website responsible for facilitating the illegal sale of prescription drug by third-party pharmacies (foreign and domestic), referred to as PharmacyChecker

Accredited Pharmacies. ¶¶ 159–63, 178–79.[1] LegitScript alleges PharmacyChecker makes "False and Deceptive Statements" about such drugs:

- Consumers may safely purchase medicine "from a pharmacy outside the U.S.," as long "as you buy from the safest international online pharmacies."
- "Independent researchers" found "zero" counterfeit drug orders.
- Medication ordered from a PharmacyChecker-Verified Pharmacy is "exceedingly safe."
- "Pharmacies in some countries are equally as safe if not safer than those in the U.S."
- Contradicting FDA guidance regarding the risks and lack of guaranteed safety of purchasing drugs from foreign sources.

¶¶ 185(a)–(e).

LegitScript alleges that these statements are "in fact false and deceptive because personal importation of drugs is illegal under federal law and violates safety-focused regulations," ¶ 186, and that "[o]n information and belief," these statements "defraud U.S. consumers of their money because they make purchases of foreign drugs . . . that those consumers would not have made if PharmacyChecker's statements had not misled those consumers into thinking that personal drug importation was not illegal under federal law," ¶¶ 189, 220–21. LegitScript asserts the statements are commercial advertising designed to drive U.S. consumer traffic to PharmacyChecker's paying foreign pharmacy customers, for which PharmacyChecker is compensated. ¶¶ 221–22. According to LegitScript, the "False and Deceptive Statements" serve as "an integral part of the commercial enterprise operated by PharmacyChecker and the Pharmacy Checker-Accredited Pharmacies

---

1.    All paragraph ("¶") references are to Defendant's Counterclaims to Amended Complaint (Dkt. 299 at 25–47).

that act to deceive U.S. consumers into importing drugs from foreign pharmacies under the mistaken belief that such conduct is safe and legal." ¶ 192.

For its part, LegitScript offers a "HealthCare Merchant Certification" program that "verif[ies] that an online merchant complies with applicable laws and regulations." ¶ 193. LegitScript markets this certification to "healthcare-related business[es]," including, for example, "internet pharmacies," "mail-order pharmacies," and "brick-and-mortar pharmacies." ¶ 194. LegitScript alleges that this certification "demonstrates to banks, advertisers, e-commerce websites, payment processors, social media platforms, search engines, and consumers that the business with that certification has met criteria demonstrating compliance with applicable laws and regulations," ¶ 195, because "[w]hen a consumer sees LegitScript's Healthcare Merchant Certification on the website of a pharmacy, the consumer knows that it is safe and legal to purchase drugs from that pharmacy," ¶ 196.

LegitScript alleges that PharmacyChecker's and the PharmacyChecker Accredited Pharmacies' conduct, i.e., the "False and Deceptive Statements," ¶¶ 192, 203, "has harmed and continues to harm LegitScript," ¶ 202. LegitScript alleges lost sales of its products and services (e.g., the certification), ¶¶ 202(a)–(b), and, more significantly, reputational injury to its own certification programs, ¶¶ 202(c)–(d). LegitScript argues that by creating a parallel, allegedly illegal market, the distinction between lawful and unlawful pharmaceutical commerce is eroded and thereby

"delegitimiz[es] LegitScript's role and reputation as a signifier of safety and compliance with all applicable laws and regulations." ¶¶ 193–203, 220–24.[2]

LegitScript does not specify how the challenged statements caused its harm. *See* ¶¶ 203, 223 (only summarily alleging proximate cause). At best, the only conceivable link between PharmacyChecker's purported misstatements and LegitScript's allegedly diminished reputation and lost sales rests on this sequence of alleged events:

1. PharmacyChecker makes purportedly false statements to non-party consumers regarding the risk and illegality of purchasing imported medicine from PharmacyChecker. ¶¶ 184–86, 192.

2. Consumer relies on those misstatements, believing a PharmacyChecker Accredited Pharmacy is safe. ¶¶ 187, 189, 191–92, 202(a)–(b), 222.

3. Consumer does not rely on LegitScript's Healthcare Merchant Certification credential because the "success of [LegitScript's] products and services . . . depends on LegitScript's reputation as a signifier of safety and compliance," thereby devaluing the Healthcare Merchant Certification credential and

---

2.    If this theory were true, then PharmacyChecker's purported misconduct would actually legitimize LegitScript's role and differentiate its reputation as a signifier of safety and compliance. LegitScript fails to address this internal inconsistency.

resulting in LegitScript's first alleged harm, i.e., diminished reputation. ¶¶ 200, 202(b).[3]

4. Consumer purchases medicine from an "accredited pharmacy" in violation of U.S. law. ¶¶ 187, 189, 191–92, 202(a)–(b), 213, 221.

5. Merchant (i.e., online pharmacies) using LegitScript's Healthcare Merchant Certification does not obtain that sale. ¶ 194.

6. Merchants, banks, advertisers, and other participants in the e-commerce supply chain stop valuing the credential. ¶¶ 201, 202(c).

7. Merchants and these other participants stop purchasing LegitScript's certification products and services, thereby resulting in its second alleged harm, lost sales. ¶¶ 201, 202(d).

LegitScript does not proffer any facts showing what lost business it otherwise would have obtained from pharmacies seeking its certifications.

## LEGAL STANDARD

On a motion to dismiss, the Court should accept all allegations as true and construe them in the light most favorable to the claimant. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). But the Court need not accept as true conclusory allegations of law, unwarranted deductions of fact, unreasonable inferences, or that contradict matters

---

3. LegitScript fails to allege any facts explaining how or why the absence of its Healthcare Merchant Certification for an accredited pharmacy means that that certification becomes less valuable to consumers. Consumers could conclude both that (i) a Pharmacy-Checker accredited pharmacy is safe and (ii) the Healthcare Merchant Certification indicates product safety.

properly subject to judicial notice. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

For RICO claims based on fraud, the plaintiff must satisfy the heightened pleading requirements of Rule 9(b), and the claims should be dismissed when the plaintiff alleges facts that are equally consistent with innocent alternative explanations. *Holloway v. Clackamas River Water*, 739 F. App'x 868, 869 (9th Cir. 2018) (unpublished) ("Because her RICO claims are based on fraud, these allegations must meet Federal Rule of Civil Procedure 9(b)'s heightened pleading standard."); *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 998–99 (9th Cir. 2014) ("All of the facts Plaintiffs have presented are consistent with both their theory of liability and this innocent alternative. Plaintiffs have not met their burden to do something more to render their [RICO] allegations plausible within the meaning of *Iqbal* and *Twombly*.") (citation modified).

## ARGUMENT

## I.     LEGITSCRIPT'S RICO CLAIM FAILS AS A MATTER OF LAW

To state a RICO claim, a plaintiff must allege: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing injury to plaintiff's business or property. *See Sanford v. Memberworks, Inc.*, 625 F.3d 550, 557 (9th Cir. 2010) (citing *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007) (en banc)).

LegitScript fails to allege an actionable RICO claim for four reasons: (1) LegitScript does not identify a cognizable harm to its business or property; (2) LegitScript cannot show that PharmacyChecker's purported misstatements directly

and proximately caused such alleged harms; (3) LegitScript fails to plead a cognizable RICO enterprise; and (4) LegitScript does not plausibly allege racketeering activity.

### A.    LegitScript Fails to Allege Cognizable Harm

In support of its RICO claim, LegitScript alleges two harms: (1) injury to its "business, reputation, and goodwill," ¶¶ 198, 200, 202–03, 214; and (2) lost sales, customers, and market share, ¶¶ 198, 201, 202(b)–(c). In particular, LegitScript states that by allegedly deceiving U.S. consumers into unlawfully purchasing foreign-imported drugs, "LegitScript's expertise, value, and products, and services" have been "delegitimize[d] . . . in the eyes of its customers," which consequently "driv[es] merchants and potential market participants away from LegitScript's products" by "diminishing trust in LegitScript's Healthcare Merchant Certification," and "delegitimiz[es] LegitScript's role and reputation as a signifier of safety and compliance with all applicable laws and regulations, which in turn diminishes the demand for LegitScript's products and services." ¶ 202.

But RICO permits recovery only for "concrete financial loss" to business or property—***not*** injury to reputation, or a reduction in sales stemming therefrom. "[A] plaintiff must demonstrate (1) harm to a specific property interest cognizable under state law, and (2) that the injury resulted in concrete financial loss." *Glob. Master Int'l Grp., Inc. v. Esmond Nat., Inc.*, 76 F.4th 1266, 1274 (9th Cir. 2023) (citation modified). Damage to a valuable intangible property interest is insufficient. *Chaset v. Fleer / Skybox Int'l, LP*, 300 F.3d 1083, 1086–87 (9th Cir. 2002) ("[P]laintiffs must

show proof of concrete financial loss, and not mere injury to a valuable intangible property interest.").

Harm to reputation is precisely the type of intangible, non-concrete injury that is not compensable under RICO. *See, e.g.*, *C&M Cafe v. Kinetic Farm, Inc.*, No. 16-cv-04342-WHO, 2016 WL 6822071, at *8 (N.D. Cal. Nov. 18, 2016) ("[H]arm to reputation is generally not considered an injury to 'business or property' under RICO."); *Dual Diagnosis Treatment Ctr., Inc. v. Centene Corp.*, No. 2:20-cv-04112-SB-PVC, 2021 WL 4464204, at *3 n.1 (C.D. Cal. May 7, 2021) (A "recent decision concluded that . . . a harm to a business's goodwill is not recoverable under RICO.") (citing *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 3:16-cv-02086-CRB, 2019 WL 6749534, at *4 (N.D. Cal. Dec. 6, 2019)); *Holloway v. Clackamas River Water*, No. 3:13–cv–01787–AC, 2016 WL 5429659, at *8 (D. Or. July 5, 2016), *report and recommendation adopted,* 2016 WL 5477548 (D. Or. Sept. 25, 2016), *aff'd in part, rev'd in part on other grounds,* 739 App'x 868 (9th Cir. 2018) (unpublished) ("[A]n alleged injury to reputation is not the type of concrete harm to a business or property interest that supports civil RICO standing.").

LegitScript's other alleged harm, i.e., lost sales, customers, or market share, ¶¶ 202(b)–(c), is also not cognizable under RICO. *E.g.*, *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405–06 (9th Cir. 1991) (loss of market share not a cognizable RICO injury because "it cannot be said that these customers were [plaintiff]'s property"); *In re Volkswagen 'Clean Diesel' Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 15-MD-02672-CRB, 2025 WL 1083215, at *3 (N.D. Cal. Apr. 10, 2025)

("Because Plaintiffs' injuries are either intangible (lost goodwill or brand value) or intractably tied up with intangible injuries (lost sales or property value), Plaintiffs have failed to establish that they suffered an injury to business or property."). In short, LegitScript's alleged harms are not cognizable under RICO and, on that basis alone, the Court should dismiss this claim.

## B.    LegitScript Fails to Allege Direct Proximate Causation

Even if RICO permitted LegitScript to recover for such harms (it does not), LegitScript fails to allege that PharmacyChecker's purported misstatements—that is, the underlying predicate mail and wire fraud offenses on which LegitScript bases its RICO claim, ¶¶ 208–13—proximately caused those harms.

### 1.    The Law Controlling Proximate Causation Under RICO

To show RICO causation, a plaintiff must allege that the predicate offense was both the but for and direct proximate cause of his or her injury. *Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1, 9 (2010) (citing *Holmes v. Secs. Inv. Prot. Corp.*, 503 U.S. 258 (1992)). "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.,* 547 U.S. 451, 461 (2006).

To answer this question, courts "scrutinize the causal link between the RICO violation and the injury, identifying with precision both the nature of the violation and the cause of the injury to the plaintiff." *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 981 (9th Cir. 2008) (citing *Anza*, 547 U.S. 451). For direct proximate cause, the alleged wrongdoing must immediately precede the alleged harm. *Hemi Grp.*, 559

U.S. at 10 (citation modified); *City of Oakland v. Wells Fargo & Co.*, 14 F.4th 1030, 1035–36 (9th Cir. 2021). Thus, under RICO, the cause of a plaintiff's alleged harm must be the defendant's alleged misconduct. *Anza*, 547 U.S. at 458 (no direct proximate cause where the cause of plaintiff's asserted harms is "entirely distinct" from the alleged RICO violation); *Hemi Grp.*, 559 U.S. at 11 (no direct proximate cause where "the conduct directly causing the harm was distinct from the conduct giving rise to the fraud").

Beyond scrutinizing the chain linking the alleged RICO misconduct to the alleged RICO, courts consider three indicia to determine whether there is a direct proximate relationship between those events, two of which are relevant here: (1) the difficulty in determining how much an alleged harm is attributable to the alleged misconduct; and (2) whether another injured person more directly connected to the purported harm can be counted on to vindicate the law as a private attorney general. *See Holmes*, 503 U.S. at 269–70.

### 2. LegitScript Fails to Show that the Alleged Misstatements Directly Caused Its Purported Harms

As an initial matter, LegitScript only summarily alleges proximate causation. ¶¶ 203, 215. LegitScript fails to offer any well-pled facts or theory of causation connecting the False and Deceptive Statements to its purported harms. On this basis alone, the Court may dismiss LegitScript's RICO claim. *See, e.g.*, *Martinez v. Extra Space Storage, Inc.*, No. C 13-00319 WHA, 2013 WL 1390412, at *2 (N.D. Cal. Apr. 4, 2013) (failure to allege essential elements under RICO warrants dismissal).

What can be gleaned through a charitable construction of the Counterclaims is far too attenuated for direct, proximate cause for LegitScript's diminished reputation or lost sales, customers, and market share. Critically, the chain of events connecting those misstatements to these alleged injuries is materially indistinguishable from those chains rejected in *Anza* and *Hemi Group* and thus cannot show RICO causation as a matter of law.

In *Anza*, the Supreme Court considered a claim brought by a plaintiff-competitor against a defendant-competitor alleging that the defendant defrauded the non-party State of New York by failing to charge sales taxes on its products, thereby permitting the defendant to "undercut" plaintiff's prices and attract more customers. 547 U.S. at 457–58. The *Anza* Court found the relationship between the fraud alleged and injury suffered too "attenuated," explaining that the "direct victim" of the fraud was "the State of New York, not [plaintiff-competitor]." *Id.* at 452. It reasoned that, while the plaintiff "asserts it suffered its own harms when the [defendant-competitor] failed to charge customers for the applicable sales tax," the cause of such harms "however, is a set of actions (offering lower prices) entirely distinct from the alleged RICO violation (defrauding the State)." *Id.* at 458. Thus, the defendant's purported fraud had not "led directly to the plaintiff's injuries" and plaintiff failed to show proximate cause. *Id.* at 460–61.

In *Hemi Group*, the Supreme Court considered a claim brought by a plaintiff-city against a defendant out-of-state cigarette distributor for its failure to disclose to the non-party State of New York the defendant's sales to non-party customers who

were otherwise required to pay taxes to plaintiff. 559 U.S. at 4–5, 9. The *Hemi Group* Court found that plaintiff's claim "suffer[ed] from the same defect as the claim in *Anza*," explaining that "the conduct directly responsible for the [plaintiff's] harm was the customers' failure to pay their taxes" and "the conduct constituting the alleged fraud was [defendant's] failure to file [the statutorily obligated tax reports]" with the State of New York. *Id.* at 10–11. The Supreme Court emphasized that "the disconnect between the asserted injury and the alleged fraud in this case is even sharper than in *Anza*." *Id.* at 11. It reasoned that "[h]ere, the [plaintiff's] theory of liability rests not just on separate **actions**, but separate actions carried out by separate **parties**," which was too attenuated even though "the same party—[defendant]—had both engaged in the harmful conduct and committed the fraudulent act." *Id.*

These decisions foreclose LegitScript's theory of proximate case. The conduct directly responsible for LegitScript's allegedly diminished reputation is the non-party consumers' decision not to rely on the Healthcare Merchant Certification credential. ¶¶ 200, 202(b). The conduct directly responsible for LegitScript's claimed lost sales, customers, and market share is the non-party merchants' (or other e-commerce supply participants') decisions not to purchase LegitScript's products and services. ¶¶ 201, 202(d). Neither of these direct causes are the "False and Deceptive Statements" on which LegitScript premises its RICO claim. Rather, like the above-described lower-priced offers (*Anza*) and failure by customers to pay taxes (*Hemi Group*), each cause directly giving rise to LegitScript's claimed harms here rest on different conduct by different parties rather than PharmacyChecker's supposed

misstatements. These multiple levels of disconnect between the challenged statements and claimed harms warrant dismissing the RICO claim. *Anza*, 547 U.S. at 458; *Hemi Grp.*, 559 U.S. at 11.[4]

But the causal chain underlying LegitScript's lost sales theory is especially problematic, as the Supreme Court "ha[s] never before stretched the causal chain of a RICO violation so far" as to impose liability on a defendant simply because its conduct "made it easier" for a non-party to directly cause the alleged harm. *Hemi Grp.,* 559 U.S. at 11. Critically, the chain of events leading to the allegedly lost sales requires several intermediary events, each of which depends on independent non-party action (e.g., consumers, merchants, or bankers). This chain is unacceptably attenuated for RICO causation. *Id.* at 9, 11 ("A link that is 'too remote,' 'purely contingent,' or 'indirect' is insufficient."); *Rote v. Silicon Valley Bank, Inc.*, No. 3:16–cv–00471–SI, 2016 WL 4565776, at *6–7 (D. Or. Sept. 1, 2016) (Simon, J.) (no proximate causation and no RICO standing when claim was derivative of harm to a third-party); *Coho Salmon v. P. Lumber Co.*, 61 F. Supp. 2d 1001, 1013 (N.D. Cal. 1999) (recognizing in the more lenient context of traceability causation, causal link

---

4.     The Supreme Court's decision in *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639, 661 (2008), that plaintiff adequately alleged RICO causation does not alter this conclusion. In that case, the defendant's fraud on the non-party county necessarily caused plaintiff to lose the opportunity to bid on the property tax liens at issue "[b]ecause of the zero-sum nature of the auction" and fact that the county "awarded bids on a rotational basis." *Hemi Grp.,* 559 U.S. at 14–15.

between challenged conduct and alleged harm may be too attenuated if the alleged harm is the result of independent action by a third party).

### 3. The *Holmes* Factors Further Bely Any Direct Proximate Cause Relationship Between the Alleged Misconduct and Harms

The *Holmes* factors further compel a conclusion that the alleged misstatements did not directly and proximately cause LegitScript's alleged harms. ***First***, the Court cannot feasibly separate and attribute how independent factors relatively caused either of LegitScript's claimed harms. As explained in *Anza*, plaintiff's "lost sales could have resulted from factors other than [defendant's] alleged acts of fraud," particularly given that "[b]usinesses lose and gain customers for many reasons, and it would require a complex assessment to establish what portion of [plaintiff's] lost sales were the product of [defendant's] decreased prices." 547 U.S. at 459. That would necessarily demand "intricate, uncertain inquiries" into what portion of the alleged harm resulted from the challenged conduct as opposed to such other separate independent causes. *Id.* at 459–60.

Here, too, consumers may choose to ignore LegitScript's Healthcare Merchant Certification for "many reasons" entirely unrelated to the alleged misstatements. And many other reasons could explain why merchants and banks stopped purchasing that certification, including, for example, (i) the credential's expense or (ii) purchaser's determination that the credential is unnecessary to maintain consumer confidence.

Courts regularly find direct proximate cause lacking where these sorts of alternative explanation prevail. *See, e.g.*, *id*.[5]

**Second**, consumers who relied on the supposed misstatements when purchasing medicine are plainly the most direct "victims" of such purported misconduct. There is no question that if, in fact, consumers were defrauded by such statements (and they were not), they would be best incentivized to sue and vindicate RICO's remedial interests. *See Hemi Grp.*, 559 U.S. at 11–12 ("The State certainly is better situated than the [plaintiff] to seek recovery from [defendant]. And the State has incentive to sue—the State imposes its own $2.75 per pack tax on cigarettes possessed within the State, nearly double what the [plaintiff] charges.").

## C.     LegitScript Fails to Plead a Cognizable Enterprise

"To plead an association-in-fact enterprise for a RICO claim, 'plaintiffs must plead that the enterprise has (A) a common purpose, (B) a structure or organization, and (C) longevity necessary to accomplish the purpose.' " *RJ v. Cigna Health & Life*

---

5.      *See also United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Const. Trades Dep't*, 911 F. Supp. 2d 1118, 1126 (E.D. Wash. 2012), *aff'd sub nom. United Bhd. of Carpenters & Joiners of Am. v. Bldg. and Const. Trades Dep't, AFL-CIO*, 770 F.3d 834 (9th Cir. 2014) (no proximate cause for alleged loss of jobs, dues, and members, and noting that *Anza*'s recognition that "lost sales could result from factors other than an alleged wrongdoer's acts of fraud" and "[b]usinesses lose and gain customers for many reasons, and it would require a complex assessment to establish what portion of [plaintiff-competitor's] lost sales were the product of" alleged RICO conduct); *Eclectic Props.*, 751 F.3d at 998–99 ("All of the facts Plaintiffs have presented are consistent with both their theory of liability and this innocent alternative. ... Plaintiffs have not met their burden to do 'something more' to 'render their [RICO] allegations plausible within the meaning of *Iqbal* and *Twombly.*' ").

*Ins. Co.*, 625 F. Supp. 3d 951, 965 (N.D. Cal. 2022) (quoting *Eclectic Props.*, 751 F.3d at 997, in turn citing *Boyle v. United States*, 556 U.S. 938, 946 (2009)).

The alleged enterprise includes all PharmcyChecker-accredited pharmacies, both foreign and domestic. *See* ¶¶ 163, 166, 170, 192.[6] This alleged enterprise fails because it necessarily lacks a common purpose and its supposed membership has no coherent structure or discernable relationship.

**No Common Purpose:** Courts find that an alleged enterprise lacks a common purpose when its purported members pursue their own economic self-interest, as opposed to advancing a common interest of the enterprise. *See, e.g.*, *Phillips v. Lithia Motors, Inc.*, No. 03-3109-HO, 2006 WL 1113608, at *6 (D. Or. Apr. 27, 2006)

---

6. *See also* https://www.pharmacychecker.com/verification-program/ ("Pharmacies and wholesalers across the globe, including those in the United States, Canada, Australia, India, Mauritius, New Zealand, Turkey, the United Arab Emirates, the European Union, and the United Kingdom, are eligible to participate in the PC IPVP."); https://cdn.pharmacychecker.com/pdf/membership_standards_and_guide_4.30.17.pdf (describing standards followed by both domestic and foreign accredited pharmacies). The Counterclaim repeatedly refers to PharmacyChecker's website, *see, e.g.*, ¶¶ 158, 161, so the Court may consider all statements on that website for purposes of this motion. *See, e.g.*, *Mophie, Inc. v. Shah*, No. SA CV 13-01321 DMG (JEMx), 2014 WL 10988339, at *3 n.2 (C.D. Cal. July 24, 2014) (considering information on the defendant's website when the website was incorporated by reference into the complaint); *Eugster v. Wash. State Bar Ass'n*, No. C15-0375JLR, 2015 WL 5175722, at *1 n.3 (W.D. Wash. Sept. 3, 2015), *aff'd*, 684 F. App'x 618 (9th Cir. 2017) (unpublished) ("At the motion to dismiss stage, the court may properly treat a website quoted and cited in the complaint as incorporated by reference.") (citing authority); *Knievel v. ESPN*, 393 F.3d 1068, 1075 (9th Cir. 2005) (considering content of website beyond that included in the complaint because consumers interpret one page in the context of other pages that they click through); *Orozco v. Fresh Direct, LLC*, No. 15-CV-8226 (VEC), 2016 WL 5416510, at *1 n.1 (S.D.N.Y. Sept. 27, 2016) (a district court may consider a website in its totality in adjudicating a motion to dismiss).

("Moreover, plaintiffs fail to allege a common purpose between the members of the ostensive enterprise, nor could they. While it is possible that the dealers have a common purpose, the lenders compete with each other for business."); *Cedar Swamp Holdings, Inc. v. Zaman*, 487 F. Supp. 2d 444, 449–51 (S.D.N.Y. 2007) (no enterprise in a "hub-and-spoke" arrangement where "no participant is alleged to have acted for the benefit of any other participant"); *Moss v. BMO Harris Bank, N.A.*, 258 F. Supp. 3d 289, 303 (E.D.N.Y. 2017) (holding that plaintiff's alleged enterprise "fails because she has not alleged that the participants in that association shared a common fraudulent purpose" and "[a]t best, the SAC asserts a rimless 'hub and spokes' relationship . . . that courts have consistently found insufficient to state a RICO claim"); *City of N.Y. v. Chavez*, 944 F. Supp. 2d 260, 275 (S.D.N.Y. 2013) (RICO claims must allege that each member acted to benefit the other members, shared a common purpose, contributed in a necessary and symbiotic manner, or otherwise depended on one another); *Wimo Labs LLC v. eBay Inc.*, No. SACV 15-1330-JLS (KESx), 2016 WL 11507382, at *4 (C.D. Cal. Jan. 28, 2016) (enterprise members lacked common purpose where they "were actively competing with each other" and there was no indication that each of the thousands of sellers "were associated together in any meaningful sense, or were even aware of one another's existence as participants in a scheme to defraud").

Courts have similarly found this element unsatisfied when the alleged members are parties to a routine contractual arrangement because the entities are pursuing their own separate business interests rather than the interest of any joint

enterprise and therefore lack a common purpose. *E.g.*, *Gomez v. Guthy-Renker, LLC*, No. EDCV 14–01425 JGB (KKx), 2015 WL 4270042, at *9 (C.D. Cal. July 13, 2015) ("Plaintiff has identified exactly the type of arms-length business transaction, with each party pursuing its own independent economic interests, that does not constitute a RICO enterprise."); *Shaw v. Nissan N. Am., Inc.*, 220 F. Supp. 3d 1046, 1056–57 (C.D. Cal. 2016) (dismissing without leave to amend when proposed enterprise definition included alleged common goal of knowingly selling defective cars to unsuspecting consumers, reasoning that, stripped of conclusory allegations and labels, the actual alleged conduct between the alleged members was equally consistent with legitimate and routine business conduct, and distinguishing cases that survived a motion to dismiss where they detailed "pages of references to specific communications" showing the shared intent to defraud consumers amongst the alleged members); *Ellis v. J.P. Morgan Chase & Co.*, No. 12-cv-03897-YGR, 2015 WL 78190, at *5 (N.D. Cal. Jan. 6, 2015), *aff'd sub nom. Ellis v. JPMorgan Chase & Co.*, F. App'x 380 (9th Cir. 2018) (unpublished) (rejecting proposed enterprise definition even under Rule 8(a) where the complaint "focuses entirely on the Chase defendants' intent, knowledge, and actions" while suggesting "only that the third-party vendors had service contracts with the Chase entities" with "no factual allegations to render plausible their claim that the enterprise members actually knew of the alleged fraudulent common purpose, or that they formed the enterprise to participate in performing unnecessary property inspections—much less that they devised a scheme to defraud borrowers") (citation modified).

LegitScript's counterclaim clearly runs afoul of these authorities. PharmacyChecker, domestic pharmacies, and foreign pharmacies do not plausibly form an enterprise with the common purpose of inducing foreign sales by making misleading statements to U.S. consumers. ***First***, every pharmacy in the alleged enterprise, both foreign and domestic, are ***competing*** against each other for sales to U.S. consumers. Presumably, domestic pharmacies would prefer there be no foreign sales at all, and foreign pharmacies would prefer that ***only*** their individual sales were completed rather than any concern for foreign sales as a whole. LegitScript implausibly suggests that business competitors, both foreign and domestic, share a common purpose with PharmacyChecker to make misleading statements to U.S. consumers in order to make foreign sales.

***Second***, and compounding the implausibility of LegitScript's claims, there is an obvious innocent explanation for the conduct of the pharmacies and PharmacyChecker—that each participant is pursuing their own self-interest within the confines of a routine business relationship to purchase accreditation services (similar to those entered into by LegitScript itself, *see* ¶¶ 193–94). [7] Such commonplace relationships do not constitute a common purpose under RICO. This lack of common purpose is fatal to LegitScript's RICO claim.

---

7.    LegitScript notes that PharmacyChecker's accreditation "means only what PharmacyChecker says it means, but does not carry any legal imprimatur." ¶ 163. That may be true, but it is equally true of many commercial accreditation services, including those offered by LegitScript.

**No Structure:** Courts have also found the enterprise element unsatisfied when there is no clear relationship between the alleged members, including a lack of any apparatus to make decisions between them. *See, e.g.*, *Phillips*, 2006 WL 1113608, at *6 (finding "no particularized allegations of a structured decision-making process" that would constitute an enterprise when each alleged member acted purely self-interestedly and in isolation from every other alleged member other than the "hub"); *Cedar Swamp*, 487 F. Supp. 2d at 449–52 (no enterprise in 'hub-and-spoke' arrangement where the participants "appear to have had no relationship to one another, and their actions and involvement in [defendants'] schemes appear to have been isolated and independent"); *Cont. Transp. Servs., Inc. v. New Era Lending LLC*, No. 17 Civ. 8224 (AT), 2018 WL 11226077, at *4 (S.D.N.Y. Oct. 26, 2018) (no enterprise where no indication that alleged enterprise members "ever met or communicated with each other").[8]

LegitScript fails to allege any structure to plausibly support allegations of an enterprise. LegitScript does not allege that ***any*** of the pharmacies, either foreign or

---

8.    *See also, generally*, *Gomez*, 2015 WL 4270042, at *8–11 (detailing courts' various approaches to rejecting overbroad enterprise definitions, including by finding no common purpose, no organizational structure, no action as a "unit," or no RICO conduct when the parties merely had a routine contractual relationship); *Moss*, 258 F. Supp. 3d at 302–03 (citing cases that held an alleged enterprise's "expansive size combined with its amorphous and constantly changing members along with the minimal connection between the various merchants allegedly involved in the enterprise" undermined the plaintiff's RICO claims, and holding that "plaintiff's ACH Network Enterprise fails because she has not alleged . . . that association functioned as a continuing unit with a clear organizational structure").

domestic, have *any* relationship to one another, other than their respective independent participation in PharmacyChecker's accreditation program and the placing of independent competitive bids for placement on PharmacyChecker's website, ¶¶ 163–64—precisely the type of rimless "hub-and-spoke" arrangement courts have found does not plausibly allege a RICO enterprise.

And while LegitScript keenly focuses on what PharmacyChecker knew or said, *e.g.*, ¶¶ 166–71, 177–83, LegitScript does not address the knowledge or conduct of any of the other alleged enterprise members. The Counterclaim does not allege: that any pharmacy, foreign or domestic, knew about, requested, repeated, workshopped, disseminated, or otherwise engaged with any of the purportedly misleading statements made by PharmacyChecker on its website; that U.S. sales are important to foreign pharmacies; or that foreign pharmacies knew the personal importation of drugs into the United States was unlawful (assuming that is even an accurate statement of the law) and intended to induce such sales anyway. LegitScript alleges no specific communication between PharmacyChecker and any accredited pharmacy concerning the alleged misstatements or fraudulent scheme, or communications between any two pharmacies at all. This dearth of detail is not only insufficient, it makes clear that the pharmacies have no relationship to each other—precisely the circumstances in which courts refuse to find RICO liability.

In short, LegitScript has alleged *nothing*—let alone particularized descriptions as required under Rule 9(b)—that would enable the Court to determine and assess the alleged organization's structure or shared purpose. Stripped of

conclusions and unfounded assumptions, the conduct LegitScript challenges is a routine business arrangement for accreditation services that competing pharmacies independently entered with PharmacyChecker, exactly the type of situation courts hold cannot support RICO liability, and for precisely the same conduct this Court has already found lawful, Dkt. 292 at 24. LegitScript fails to allege an enterprise and, on this ground too, its RICO claim fails.[9]

### D.     LegitScript Fails to Allege Racketeering Activity

No RICO claim may lie without a predicate act. *See* 18 U.S.C. §§ 1961(1), 1962(a) (requiring a pattern of predicate racketeering acts from the enumerated list). LegitScript fails to plausibly allege any predicate wire or mail fraud because the purported misstatements underlying such fraud qualify as non-actionable puffery or opinion. *See infra* § II.B.

Courts dismiss RICO claims on that basis. *E.g.*, *Eclectic Props.*, 751 F.3d at 1000 (statements that were "puffing" or expressions of opinion were not actionable as

---

9.     Additionally, as pled, the alleged enterprise includes domestic pharmacies performing domestic sales that no party has ever contended is unlawful and could not possibly constitute unlawful or fraudulent conduct. And as noted above, the Court already examined PharmacyChecker's business on the more fulsome factual record available at summary judgment, and concluded PharmacyChecker's business as a whole was legal. If the Court finds that the foreign and domestic pharmacies are not plausibly considered part of the "enterprise," that is fatal to the claim, as the employees of PharmacyChecker by themselves cannot constitute an enterprise. *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.,* 30 F.3d 339, 344 (2d Cir. 1994) ("Where employees of a corporation associate together to commit a pattern of predicate acts in the course of their employment and on behalf of the corporation, the employees in association with the corporation do not form an enterprise distinct from the corporation.").

fraud and thus could not serve as predicates for RICO claim); *Cnty. of Marin v. Deloitte Consulting LLP*, 836 F. Supp. 2d 1030, 1040 (N.D. Cal. 2011) (finding predicate act of mail fraud to establish RICO claim was not satisfied when statements were non-actionable puffery or opinion); *see also In re All Terrain Vehicle Litig.*, 771 F. Supp. 1057, 1060–61 (C.D. Cal. 1991) ("The Ninth Circuit recently held that the question of whether an alleged misrepresentation is a statement of fact is mere puffery is appropriate for determination on a Rule 12(b)(6) motion," and dismissing RICO claims predicated on wire and mail fraud.) (citing *Cook, Perkiss, Liehe v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 245 (9th Cir. 1990)). Because the allegedly fraudulent statements are non-actionable opinion or puffery, the predicate acts of wire fraud and mail fraud have not been satisfied. Thus, LegitScript has failed to allege racketeering activity and its RICO claim should be dismissed.

## II.  LEGITSCRIPT DOES NOT PLEAD A VIOLATION OF THE LANHAM ACT

LegitScript's Lanham Act claim should be dismissed because LegitScript does not adequately allege an injury to its commercial interest in reputation or sales flowing directly from the alleged misrepresentations and the purported misstatements underlying this claim are not actionable as a matter of law.

### A.  The Southern District of New York Dismissed a Similar Lanham Act Counterclaim

In New York, NABP made a similar Lanham Act counterclaim against PharmacyChecker alleging two categories of statements by PharmacyChecker: (1) an alleged campaign to mislead consumers, and (2) a campaign "maliciously and

specifically attack[ing]" NABP (LegitScript's Counterclaim only includes the first category). *See* Dkt. 148 at 52–55, 84–111. Judge Karas dismissed those claims in September 2022, holding that NABP failed to allege a cognizable injury under the Lanham Act. *PharmacyChecker.com LLC v. Nat'l Assoc. of Bds. of Pharmacy*, 7:19-cv-07577, Dkt. 309 (S.D.N.Y. Sept. 20, 2022). NABP's amended counterclaims were ultimately dismissed in May 2023. *Id.* at Dkt. 357, *as amended* Dkt. 373.

### B.    LegitScript Does Not Plead a Proximately Caused Commercial Injury to Reputation or Sales

LegitScript does not state a Lanham Act claim because it does not sufficiently allege facts to plead facts sufficient to show that PharmacyChecker proximately caused such an injury within the zone of interests of the Lanham Act. Not all factually injured plaintiffs may recover for false advertising under the Lanham Act. For a plaintiff "to come within the zone of interests" of the Lanham Act, it "must plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 131–32, 140 (2014). For this commercial injury to be proximately caused by the challenged statement, the injury must flow "directly from the deception wrought by the defendant's advertising." *Id.* at 133–34.

Generally, under the Lanham Act, proximate cause may be shown when plaintiff and defendant are direct competitors and the deception "causes [consumers] to withhold trade from the plaintiff." *Id.*; *see also TrafficSchool.com, Inc. v. Edriver*

*Inc.*, 653 F.3d 820, 825–28 (9th Cir. 2011). Direct competition for the same customers "is not required for proximate cause," if a plaintiff can show the false advertising "necessarily injured" its business. *Lexmark*, 572 U.S. at 138–39. But the showing required by *Lexmark* "is generally not made when the deception produces injuries to a fellow commercial actor that in turn affect the plaintiff." *Id.* at 133–34. Instead, the plaintiff must allege either (1) direct disparagement of the plaintiff or its products, or (2) an inferential chain showing how the defendant's alleged false advertising competitively harmed or could competitively harm the plaintiff's business. *TrafficSchool.com*, 653 F.3d at 825–28; *see also HomeLight, Inc. v. Shkipin*, 694 F. Supp. 3d 1242, 1254–55 (N.D. Cal. 2023). To plead that they were necessarily injured, the plaintiff must ultimately demonstrate "something very close to a 1:1 relationship" between the transactions diverted to the defendant and the plaintiff's losses. *Lexmark*, 572 U.S. at 139.

In *HomeLight*, the defendant/counter-plaintiff ("HomeOpenly") brought counterclaims for false advertising, among other things, against plaintiff/counter-defendant ("HomeLight"). *HomeLight*, 694 F. Supp. 3d at 1248–49. In its counterclaim, HomeOpenly alleged that both parties competed by operating online platforms to match real estate agents with homebuyers, but with slightly different business models: HomeLight charges referral fees to agents (25% of their commission), whereas HomeOpenly is free for agents and homebuyers and "instead obtains revenue from advertising and auxiliary services." *Id.* at 1248. HomeOpenly alleged that HomeLight "enticed consumers to use its services with a series of false

claims about how its referrals are made and paid for." *Id.* at 1248–49. These statements allegedly caused "HomeOpenly to lose network effects and ad revenues, and also to lose goodwill value associated with its 100% free services to real estate agents and consumers." *Id.* at 1255.

The court held that HomeOpenly alleged commercial injuries under the Lanham Act but failed to "establish a sufficiently direct chain of causation between HomeLight's statements and the commercial harm alleged." *Id.* None of the statements disparaged or even referred to HomeOpenly, so it "cannot plausibly allege any reputational harm." *Id.* HomeOpenly also failed to "show how deceptive statements about HomeLight directed at shoppers on HomeLight's own website ***necessarily*** caused advertisers not to buy ads from HomeOpenly." (emphasis added). Indeed, while HomeOpenly did not allege a direct relationship between the number of HomeOpenly users and its ability to sell ads or that the statements resulted in fewer users visiting HomeOpenly, the court reasoned that even if it had, this connection would be "too attenuated to establish proximate cause." *Id.* There were other, more plausible reasons why users found HomeLight instead of HomeOpenly, including its large advertising budget. *Id.*

LegitScript's allegations are even more attenuated. They fail to show any plausible link between PharmacyChecker's statements and harm to LegitScript's business. LegitScript does not allege PharmacyChecker disparaged LegitScript by name. None of the alleged statements was directed at LegitScript. LegitScript does not identify a single customer, contract, or deal lost as a result. LegitScript does not

allege that anyone withheld trade from LegitScript because of PharmacyChecker. At most, LegitScript concludes without plausibly explaining that its business, reputation, and goodwill have been harmed. ¶ 223.

The problem runs deeper. LegitScript does not even allege that the two companies serve the same customers. Its business is with U.S. pharmacies and gatekeepers like banks, card networks, and regulators. PharmacyChecker's customers are allegedly primarily foreign pharmacies. ¶ 166. The counterclaims do not allege that PharmacyChecker competes for the same pharmacies or that any of LegitScript's gatekeeping relationships were lost to PharmacyChecker. Indeed, the impression LegitScript gives is that they do not overlap at all. Without overlapping customers, there is no plausible basis to infer that PharmacyChecker's alleged advertising diverted trade from LegitScript.

In fact, the supposed "False and Deceptive Statements" do not even concern any product offered by either company—further undermining any inference that PharmacyChecker caused a competitive injury to LegitScript. The statements are not about LegitScript's credentialing services, nor about PharmacyChecker's listing business; rather, they are general statements about the safety and importation of goods that neither party sells. *See* ¶ 160 ("PharmacyChecker is not a pharmacy and does not sell, dispense, or distribute drugs but rather connects consumers with third-party pharmacies where consumers can order drugs directly."). That disconnect makes it impossible to plausibly allege that the statements diverted sales or damaged reputation in a way the Lanham Act recognizes.

That is exactly the gap *Lexmark* warns against. LegitScript's theory is reputational harm in the abstract, not injury flowing "directly from the deception wrought by the defendant's advertising." 572 U.S. at 133–34. There is no "1:1 relationship" between the supposed deception and any loss to LegitScript. *Id.* at 139. Contrasted with *HomeLight*, it is even clearer that LegitScript has not plausibly alleged that PharmacyChecker caused a competitive injury within the zone of interests of the Lanham Act. For its part, the plaintiff in *Homelight* at least alleged that false statements induced consumers to use a competing platform, which supposedly weakened its network effects and ad revenue. 694 F. Supp. 3d at 1255. Even that was too attenuated, and the court dismissed. LegitScript alleges far less: No diverted users, no diminished revenue stream, not even the same customers. If *HomeLight* could not bridge the gap on proximate cause, LegitScript has not even found the river.

### C. The Alleged Statements Are Not Actionably False Statements Under the Lanham Act

LegitScript's Lanham Act claim separately fails because the statements it challenges are not actionable under the Lanham Act. Courts regularly dismiss Lanham Act claims when the challenged statements are non-factual puffery, legal opinions, or otherwise incapable of being proven false. In the Ninth Circuit, conclusory, subjective, or legal assertions cannot support liability.

### 1. The Alleged Statements About the Safety of Ordering from International Pharmacy Websites Are Subjective Characterizations

The first category of statements that LegitScript challenges concern the safety of the drugs sold using PharmacyChecker, chiefly that (1) ordering drugs from international pharmacies is safe "as long as you buy from the safest international online pharmacies" and (2) PharmacyChecker asserts its verified pharmacies are "exceedingly safe," ¶¶ 184–85, among other, similar statements about safety. *See supra* at 5.

None of these statements contain verifiable facts; they are subjective judgments and general exhortations. Courts treat terms like "safe" and "verified" as paradigmatic puffery—subjective characterizations of quality, not measurable claims. *See, e.g.*, *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997) ("general assertions of superiority" not actionable); *Mandani v. Volkswagen Group of Am., Inc.*, No. 17-cv-07287-HSG, 2019 WL 652867, at *4 (N.D. Cal. Feb. 15, 2019) ("As many cases have found before, general 'safety' claims are nonactionable puffery.").

PharmacyChecker's characterizations of its service—verifying pharmacies to help consumers avoid dangerous or rogue websites—is likewise aspirational. It describes the purpose of PharmacyChecker's services, not a factual guarantee of results. Such claims, framed as what a product "helps" or "aims" to achieve, are classic puffery. *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008).

### 2. The Alleged Statements About the Legality of Drug Importation Are Opinions

LegitScript also alleges that PharmacyChecker makes statements about the legality of personal drug importation, such as "There is no law against ordering medication online," and other statements (described rather than quoted) that allegedly "downplays the illegality" of personal drug importation. ¶¶ 184–85, 189. These statements are non-actionable for two independent reasons.

***First***, they are legal conclusions. The Ninth Circuit has made clear: "[a]bsent a clear and unambiguous ruling from a court or agency of competent jurisdiction, statements by laypersons that purport to interpret the meaning of a statute or regulation are opinion statements, and not statements of fact" and therefore "not generally actionable under the Lanham Act." *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999).

***Second***, the Ninth Circuit has already rejected LegitScript's claim that personal importation is categorically unlawful. In affirming this Court's denial of summary judgment on PharmacyChecker's antitrust claim, the Ninth Circuit explained that there are circumstances in which personal importation is permitted, and even where drugs are unapproved, misbranded, or mislabeled, importation is illegal only in "most circumstances." *PharmacyChecker.com LLC v. LegitScript LLC*, No. 24-2697, Dkt. 29.1 at 4–6 (9th Cir. May 23, 2025). It is therefore law of the case that statements such as "it is not against the law for U.S. consumers to order certain medications from abroad" do not qualify as false or misleading, *see Leslie Salt Co. v.*

*United States*, 55 F.3d 1388, 1393 (9th Cir. 1995), and cannot support LegitScript's Lanham Act claim as a matter of law.

## CONCLUSION

For these reasons, Defendant's Counterclaims to Amended Complaint should be dismissed. Because LegitScript cannot cure the deficiencies in either of its claims, the Court should order such dismissal with prejudice. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532–33 (9th Cir. 2008) (affirming district court's dismissal without leave to amend "because any amendment would be futile").

Dated: September 15, 2025            Respectfully submitted,

/s/ Aaron Gott
Aaron Gott (admitted *phv*)
aaron.gott@bonalawpc.com
BONA LAW PC
331 2nd Avenue, Suite 420
Minneapolis, MN 55401
Telephone: (612) 968-7758

James F. Lerner (admitted *phv*)
james.lerner@bonalawpc.com
Aaron Lawrence (admitted *phv*)
aaron.lawrence@bonalawpc.com
BONA LAW PC
16 Madison Square Park West
9th Floor
New York, NY 10010
Telephone: (212) 634-6861

Philip S. Van Der Weele, OSB #863650
phil.vanderweele@klgates.com
K&L GATES LLP
One SW Columbia Street, Suite 1900
Portland, Oregon 97204

Telephone: (503) 228-3200

*Counsel for Plaintiff/Counter-Defendant PharmacyChecker.com LLC*

## CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 8,529 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

By: */s/ Aaron Gott*
Aaron Gott (admitted *phv*)
Bona Law PC
331 Second Avenue South,
Suite 420
Minneapolis, MN 55401
aaron.gott@bonalawpc.com
(612) 284-5001

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of September, 2025, the above Plaintiff's Motion to Dismiss Defendant's Counterclaims to Amended Complaint was filed electronically with the Clerk of the Court using the CM/ECF system which will send a notification of such filing to all counsel of record here.

By: _/s/ Aaron Gott_
Aaron Gott (admitted _phv_)
Bona Law PC
331 Second Avenue South,
Suite 420
Minneapolis, MN 55401
aaron.gott@bonalawpc.com
(612) 284-5001