Philip S. Van Der Weele, OSB #863650
phil.vanderweele@klgates.com
K&L GATES LLP
One SW Columbia Street, Suite 1900
Portland, Oregon 97204
Telephone: (503) 228-3200

Aaron Gott (admitted *pro hac vice*)
aaron.gott@bonalawpc.com
BONA LAW PC
331 2nd Avenue South, Suite 420
Minneapolis, MN 55401
Telephone: (612) 968-7758

James Lerner (admitted *pro hac vice*)
james.lerner@bonalawpc.com
Aaron Lawrence (admitted *pro hac vice*)
aaron.lawrence@bonalawpc.com
16 Madison Square Park West, 9th Floor
New York, NY 10010
Telephone: (212) 634-6861

***Counsel for Plaintiff***

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| PHARMACYCHECKER.COM LLC, | Civil Action No.3:22-cv-00252-SI |
| *Plaintiff*, | |
| vs. | PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS TO AMENDED COMPLAINT |
| LEGITSCRIPT LLC, | |
| *Defendant*. | Judge Michael H. Simon |

## TABLE OF CONTENTS

ARGUMENT .................................................................................................. 2

I.     PHARMACYCHECKER'S RULE 12(b)(6) MOTION WAS TIMELY................ 2

II.    LEGITSCRIPT'S RICO CLAIM FAILS AS A MATTER OF LAW.................... 5

       A.    LegitScript Fails to Allege Cognizable Harm. ............................................... 5

       B.    LegitScript Fails to Allege Direct Proximate Causation. ........................... 9

       C.    LegitScript Fails to Plead a Cognizable Enterprise.................................. 14

       D.    LegitScript Fails to Allege Racketeering Activity..................................... 18

III.   LEGITSCRIPT'S LANHAM ACT CLAIM FAILS AS A MATTER OF LAW... 18

       A.    LegitScript Still Does Not Explain How and Why It Was Commercially
             Injured............................................................................................................ 18

       B.    LegitScript Alleges Non-Actionable Statements. ...................................... 20

             1.    Subjective Characterizations Are Not Actionable. .............................. 20

             2.    Legal Opinions Are Not Actionable...................................................... 21

IV.    AMENDMENT WOULD BE FUTILE, SO DISMISSAL SHOULD BE WITH
       PREJUDICE..................................................................................................... 22

       CONCLUSION.................................................................................................. 23

## TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*Ahanchian v. Xenon Pictures, Inc.*,
624 F.3d 1253 (9th Cir. 2010) ............................................................. 3, 4

*Anza v. Ideal Steel Supply Corp.*,
547 U.S. 451 (2006) ...................................................................... 8, 9, 12

*Bridge v. Phx. Bond & Indemnity Co.*,
553 U.S. 639 (2008) .................................................................. 10, 11, 12

*Canyon Cnty. v. Syngenta Seeds, Inc.*,
519 F.3d 969 (9th Cir. 2008) ..................................................................... 6

*Cedar Swamp Holdings, Inc. v. Zaman*,
487 F. Supp. 2d 444 (S.D.N.Y. 2007) ..................................................... 17

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
173 F.3d 725 (9th Cir. 1999) .......................................................... 21, 22

*Harmoni Int'l Spice, Inc. v. Bai*,
No. 2:16-cv-00614-AB(ASX), 2019 WL 4194306 (C.D. Cal. July 2,
2019) ......................................................................................................... 6

*Harmoni Int'l Spice, Inc. v. Hume*,
914 F.3d 648 (9th Cir. 2019) ............................................................6, 8, 12

*Hemi Grp., LLC v. City of N.Y.*,
559 U.S. 1 (2010) ......................................................................... 9, 10, 12

*Holmes v. Sec. Inv. Prot. Corp.*,
503 U.S. 258 (1992) .............................................................. 9, 10, 12, 14

*In re HomeAdvisor, Inc. Litig.*,
491 F. Supp. 3d 879 (D. Colo. 2020) ...................................................... 17

*In re Ins. Brokerage Antitrust Litig.*,
618 F.3d 300 (3d Cir. 2010) .................................................................... 17

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) .................................................................... 2, 19, 23

*Mandani v. Volkswagen Grp. of Am., Inc.*,
No. 17-CV-07287-HSG, 2019 WL 652867 (N.D. Cal. Feb. 15, 2019) ............. 20, 21

*Med. Marijuana, Inc., v. Horn,*
    604 U.S. 593 (2025) ........................................................................ 9, 10

*Newcal Indus., Inc. v. Ikon Off. Sol.,*
    513 F.3d 1038 (9th Cir. 2008) ............................................................... 21

*Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda
    Pharms. Co.,*
    943 F.3d 1243 (9th Cir. 2019) ................................................... 10, 11, 12

*Palantir Techs., Inc. v. Abramowitz,*
    No. 19-cv-06879-BLF, 2020 WL 9553151 (N.D. Cal. July 13, 2020) ..................... 8

*Pincay v. Andrews,*
    389 F.3d 853 (9th Cir. 2004) ................................................................. 4

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,*
    507 U.S. 380 (1993) ........................................................................... 3

*TrafficSchool.com, Inc. v. Edriver Inc.,*
    653 F.3d 820 (9th Cir. 2011) ................................................................ 19

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab.
    Litig.,*
    No. 15-md-02672-CRB, 2017 WL 4890594 (N.D. Cal. Oct. 30, 2017)............. 5, 6, 7

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab.
    Litig.,*
    No. 15-md-02672-CRB, 2019 WL 6749534 (N.D. Cal. Dec. 6, 2019),
    *aff'd*, 842 F. App'x 112 (9th Cir. 2021).................................................... 8

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab.
    Litig.,*
    No. 15-md-02672-CRB, 2025 WL 1083215 (N.D. Cal. Apr. 10, 2025) ................... 7

**Statutes and Rules**

15 U.S.C. §§ 1 et seq. (Sherman Act) ........................................................ 17

15 U.S.C. §§ 1051 et seq. (Lanham Act)..............................................*passim*

18 U.S.C. §§ 1961 et seq. (Racketeer Influenced and Corrupt Org Act)............*passim*

Fed. R. Civ. P. 1 ............................................................................... 4

Fed. R. Civ. P. 12 ........................................................................... 2, 4

LegitScript does not accept this Court's January 2024 conclusion that "PharmacyChecker's business is legal," Dkt. 292 at 24, and that PharmacyChecker has a "legal right in its business." *Id.* at 38. Instead, LegitScript doubles-down on its narrative that PharmacyChecker facilitates a black market by way of misleading advertising. To be sure, LegitScript has the right to make counterclaims with well-pleaded allegations. But it does not do that. LegitScript fails to proffer any basis in law or fact to revive this tired, already-rejected theory.

Rather, LegitScript leads with concessions, obfuscations, and pivots—all of which confirm what PharmacyChecker's opening brief exposed: LegitScript's retaliatory claims under RICO and the Lanham Act maintain multiple fatal and incurable defects. ***First***, recognizing that it cannot, as a matter of law, recover for lost reputation or resulting lost sales under RICO, LegitScript now abandons those theories of harms in favor of some unspecified "mitigation expenses." But LegitScript never alleges any such expenses, thus putting them outside the scope of this motion. ***Second***, appreciating that its alleged seven-step causal chain of events linking the purported misstatements to claimed harms is anything but direct, LegitScript asks this Court to apply an unspecified "foreseeability" standard and treat multiple discrete events in its alleged causal chain as occurring "simultaneously." But because this invitation is in tension with long-established Supreme Court precedent, inconsistent with the counterclaim's actual allegations, and illogical, the Court should decline. ***Third***, despite the opportunity, LegitScript still fails to explain how its proffered RICO enterprise maintains a common purpose or actionable structure.

Page 1 - Plaintiff's Reply ISO MTD Defendant's Counterclaims to Am. Compl.

That failure is unsurprising: as a logical matter, foreign and domestic pharmacies have diametrically opposed interests with respect to foreign prescription drug importation and, even if that were not the case, there is no plausible reason to suggest that they have coordinated toward that end. *Fourth*, LegitScript's Lanham Act claim collapses under *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). LegitScript never alleges PharmacyChecker's statements diverted any customer, influenced any buyer's decision, or even targeted the same market— and that would not make sense because it affirmatively describes that it has an entirely different business model, foreclosing any possible inference of competitive harm. The alleged statements do not reference LegitScript, do not concern any LegitScript service, and are non-actionable subjective or legal characterizations. The counterclaims should be dismissed with prejudice.

## ARGUMENT

### I.    PHARMACYCHECKER'S RULE 12(b)(6) MOTION WAS TIMELY.

In its opening brief, PharmacyChecker explains how and why the unique circumstances surrounding this dispute—particularly an extensive stay pending an interlocutory appeal—support the timeliness of the motion. Dkt. 314 at 3–4. LegitScript itself agrees that, once the Court lifted that stay, no deadline controlled when the motion was due. Dkt. 319 at 14 ("It is true (as PharmacyChecker notes) that the Court's case management schedule did not list a post-appeal deadline for PharmacyChecker's response to the counterclaims. [ECF No. 309]."). Under these

circumstances, there is no question that PharmacyChecker's motion is timely and now appropriately before the Court.

But even if the Court were to find the motion untimely, all four factors articulated in *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1261 (9th Cir. 2010) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)) favor finding any delay excusable here.

***First***, LegitScript has not suffered any prejudice. LegitScript does not articulate any harm except to say that "LegitScript has had significantly less time to consider PharmacyChecker's motion than PharmacyChecker had to consider the Counterclaims." Dkt. 319 at 14. It cites no authority to support the cognizability of such harm and, candidly, it appears from the joint scheduling proposal (Dkt. 308) that neither party was considering the counterclaims or the motion during that time, thus undermining any suggestion that PharmacyChecker did, in fact, dedicate extra time to "consider" the counterclaims. Further, LegitScript surely knew that PharmacyChecker would move to dismiss its counterclaims, and thus could have been considering how to oppose that inevitable motion ***as the counterclaims were being written***, before PharmacyChecker even knew of the counterclaims.

***Second***, the length of delay was not significant. ***At most***, PharmacyChecker took 79 days to file its motion (13 days between the filing of the counterclaims and the beginning of the stay, and 66 days between entry of the Scheduling Order and the filing of the motion), including 30 days that it was expressly ***allowed to have*** under

the Rules and the court-ordered extension. And in those 49 other days, there was no explicit deadline, and no action took place in this Court by either party.

***Third***, the reason for the delay was that no deadline was set or known. Both parties inadvertently omitted this aspect of the proposed Scheduling Order, which was entered. This was never raised by LegitScript or the Court until now.

***Fourth***, PharmacyChecker's conduct was in good faith, as LegitScript concedes. Dkt. 319 at 15.

LegitScript's authorities do not help it. In *Ahanchian*, the Ninth Circuit found excusable neglect and permitted the late filing. 624 F.3d at 1261. And in *Pincay v. Andrews*, the lawyer misread the Rules regarding deadlines; here, the Rules were supplanted by a Scheduling Order, which contained an inadvertent omission by the parties. 389 F.3d 853, 858 (9th Cir. 2004). Further, the *Pincay* court ***affirmed*** the lower court's finding of excusable neglect and granting of a filing extension despite the "egregious" error by counsel. *Id.* at 858, 860. PharmacyChecker has made no similarly egregious mistake.

Accordingly, the Court should consider the motion timely or excusably belated and consider it now.[1]

---

1.    LegitScript's hyper-technical suggestion that, to consider a motion under Rule 12(c), PharmacyChecker must first answer the counterclaims wastefully elevates form over function. LegitScript is arguing that PharmacyChecker is both too early ***and*** too late. Dkt. 319 at 13. There is no credible dispute that PharmacyChecker's challenges to LegitScript's lacking pleadings are ripe and, however labeled, appropriate for decision now. *See* Fed. R. Civ. P. 1 ("These rules . . . should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.").

Page 4 - Plaintiff's Reply ISO MTD Defendant's Counterclaims to Am. Compl.

## II.     LEGITSCRIPT'S RICO CLAIM FAILS AS A MATTER OF LAW.

### A.     LegitScript Fails to Allege Cognizable Harm.

As PharmacyChecker previously articulated in its motion (Dkt. 314 at 17–19), the harms asserted by LegitScript in its counterclaims are not cognizable under RICO.

***First***, LegitScript asserts for the first time in its opposition that its costs in "mitigating the harm" allegedly caused by PharmacyChecker can be recovered. Dkt. 319 at 18. But no such mitigation costs were ever sought in the counterclaims— LegitScript asserted a claim for "lost revenue to its business" (Dkt. 319 at 20, citing Dkt. 299 ¶¶ 202(c) and 203), and does not mention mitigation even a single time. LegitScript has also not provided any specificity regarding its so-called mitigation expenses, or any attempt to quantify them. LegitScript even acknowledges that such mitigation costs were "not specifically alleged as an injury" and that it might need to amend its pleadings to meet the requisite level of detail. Dkt. 319 at 20 and n.3. PharmacyChecker is happy to fully brief this issue once LegitScript actually makes a properly detailed claim for these purported costs. Until then, PharmacyChecker's motion should be granted.[2]

***Second***, LegitScript is flatly incorrect that injury to business reputation or goodwill are recoverable under RICO, and its own authorities prove as much. In *In re*

---

[2]     PharmacyChecker also notes that the plaintiffs at issue in LegitScript's cited cases were government entities, and there were conflicting rulings on the significance of that. LegitScript has cited no authority upholding a RICO claim under circumstances similar to these, where a private party has self-selected to perform a quasi-governmental "market cleanup" function, and the Court should decline to do so here—especially without the benefit of proper pleadings and full briefing on the issue. Further, even if LegitScript ***could*** plausibly allege mitigation expenses, that would only add to its preexisting issues regarding direct proximate causation. *See* § II.B., *infra*.

*Volkswagen "Clean Diesel" Marketing, Sales Practices, & Products Liability Litigation*, No. 15-md-02672-CRB, 2017 WL 4890594, at *5–8 (N.D. Cal. Oct. 30, 2017), Judge Breyer noted that it is not enough to "plead an injury to a specific business or property interest [that is recognized under state law], but the injury must also be 'tangible' or 'concrete.'" *Id.* at *5 (citing *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 975 (9th Cir. 2008)). Judge Breyer went on to specifically call out that "[d]amage to goodwill has been recognized as an intangible injury . . . so a loss of goodwill is not recoverable" under RICO. *Id.* at *6. Judge Breyer specifically rejected the argument that "California recognizes goodwill as a property interest" because "[g]oodwill is an intangible injury and so does not satisfy this [RICO] standard." *Id.* at *7 (citation omitted).

Accordingly, it is irrelevant that, in a vacuum, Oregon law recognizes goodwill as a property interest or that federal courts look to state law to determine the contours of property interests under RICO (Dkt. 319 at 21–22), because injury to goodwill is not sufficiently tangible to be recovered under RICO even if it is a state-recognized property interest.[3] PharmacyChecker's motion should be granted with respect to these asserted damages. *See* Dkt. 314 at 17–18.

---

3.     The Ninth Circuit in *Harmoni International Spice, Inc. v. Hume*, with the parties there making very similar arguments to the Parties here, specifically declined to resolve whether reputation was a compensable harm under RICO and assumed without deciding that it could be adequately re-pled. 914 F.3d 648, 653–54 (9th Cir. 2019). On remand, the plaintiff abandoned that theory of harm. *See Harmoni Int'l Spice, Inc. v. Bai*, No. 2:16-cv-00614-AB(ASX), 2019 WL 4194306, at *8 (C.D. Cal. July 2, 2019) ("While the Third Amended Complaint references lost profits and reputational harm, 'Plaintiffs no longer seek recovery for these categories of damages.'").

**Third**, and for much the same reasons, LegitScript's claim for lost sales and lost customers is also not recoverable, as shown by LegitScript's own authorities. In *Volkswagen*, Judge Breyer noted that California law defines goodwill as "the positive reputation a business may enjoy in the eyes of the public that creates a probability that old customers will continue their patronage." 2017 WL 4890594, at *6. And in turn, the plaintiff in that case alleged that "loss of goodwill has become '[l]oss of sales associated with replacement vehicles for existing customers.' While cast in different language, the theory is the same: the emissions fraud reduced the likelihood that old customers would return. That is goodwill." *Id.* at *7. Accordingly, loss of customers and loss of goodwill are sides of the same coin, and to the extent those lost sales are the result of that diminished reputation, not recoverable under RICO. Indeed, as part of the same litigation, Judge Breyer recently held that "[b]ecause Plaintiffs' injuries are either intangible (lost goodwill or brand value) or intractably tied up with intangible injuries (lost sales or property value), Plaintiffs have failed to establish that they suffered an injury to business or property." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 15-md-02672-CRB, 2025 WL 1083215, at *3 (N.D. Cal. Apr. 10, 2025).

Judge Breyer did note that not **all** lost sales are necessarily the result of lost goodwill, and thus might be recoverable, *Volkswagen*, 2017 WL 4890594 at *7, but that is not so here. Under LegitScript's formulation, "[t]he success of [LegitScript's] products and services, which span a wide range of internet businesses and economic markets, **depends on LegitScript's reputation** . . . ." Dkt. 299 ¶ 200 (emphasis

added). LegitScript has explicitly tied its business success to its reputation, and damages stemming from a loss of reputation are not compensable under RICO. LegitScript has also provided no way for PharmacyChecker or the Court to disentangle which customers might have been lost due to diminished reputation, versus some other (including potentially lawful) reason—LegitScript has failed to identify *any* specific customer that it lost, the monetary value associated with that customer, or the reason that customer was lost. And as the Supreme Court has noted, "[b]usinesses lose and gain customers for many reasons." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 459 (2006); *see also* Dkt. 314 at 18–19.

Further, and also related to LegitScript's claim for lost sales, LegitScript's authorities again show its pleadings are deficient with respect to its financial losses. A RICO plaintiff must identify a *concrete* financial loss or a *specific* business opportunity or contract that was lost. *See* Dkt. 319 at 22 (citing *Harmoni*, 914 F.3d at 654 (plaintiff could state a RICO claim by pleading "canceled purchases [customers] *were otherwise planning to make*") (emphasis added); *Palantir Techs., Inc. v. Abramowitz*, No. 19-cv-06879-BLF, 2020 WL 9553151, at *6 (N.D. Cal. July 13, 2020) ("A loss of business opportunity may constitute a RICO injury *if the plaintiff alleges a concrete financial loss based on that loss of business opportunity*.") (emphasis added); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 15-md-02672-CRB, 2019 WL 6749534, at *4 (N.D. Cal. Dec. 6, 2019), *aff'd*, 842 F. App'x 112 (9th Cir. 2021) ("damages from the loss of '*specific business opportunities and contracts*' are recoverable under RICO")

(emphasis added). LegitScript has failed to identify ***any*** specific customer, contract, or business opportunity that it has lost, the financial value of that specific customer, contract, or opportunity, or the reason (other than reputation, which is not recoverable) for such a loss.

For these reasons and those articulated in its motion (Dkt. 314 at 17–19), PharmacyChecker's motion should be granted.

### B.    LegitScript Fails to Allege Direct Proximate Causation.

LegitScript's opposition also does nothing to cure the shortcomings in its alleged causal theory. ***First***, in attempting to inject foreseeability as a dimension for the Court to vacuously "consider," Dkt. 319 at 23–25, LegitScript invites error. As emphasized in *Hemi Group*, *LLC v. City of New York,* 559 U.S. 1, 12 (2010), "[o]ur precedents make clear that in the RICO context, the focus is on the directness of the relationship between the conduct and the harm. Indeed, *Anza* and *Holmes* [*v. Securities Investor Protection Corp*., 503 U.S. 258 (1992)] never even mention the concept of foreseeability." While LegitScript may quibble about the precedential value of this statement as "4-1-3 decision," Dkt. 319 at 24, LegitScript cannot dispute the truth of the underlying statement: neither *Holmes* nor *Anza*—both foundational Supreme Court precedents on RICO's proximate cause analysis—consider foreseeability as relevant to that analysis.

And if the *Hemi* Court's directive on that point is not clear enough, then the Supreme Court's recent decision in *Medical Marijuana, Inc. v. Horn* dispels any doubt, unequivocally stating that: "Time and again, we have reiterated that

§ 1964(c)'s 'by reason of' language demands some direct relation between the injury asserted and the injurious conduct alleged. ***The key word is direct; foreseeability does not cut it***. Rather, whenever the plaintiff's theory of causation requires moving well beyond the first step, it cannot meet RICO's direct relationship requirement." 604 U.S. 593, 612 (2025) (citing *Holmes* and *Hemi*) (citation modified) (emphasis added). Thus, there is no question that RICO's proximate cause analysis rises or falls on whether the alleged misconduct directly caused the claimed injury—foreseeability is neither necessary nor sufficient.

***Second***, contrary to its contention, Dkt. 319 at 25, LegitScript's alleged causal theory is nothing like those at issue in *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008) or *Painters & Allied Trades District Council 82 Health Care Fund v. Takeda*, 943 F.3d 1243 (9th Cir. 2019). In *Bridge*, the Supreme Court considered a "zero-sum" situation in which defendants' fraud on a non-party county in a rotating auction meant that competing plaintiffs were "necessarily passed over" for certain bids. *Hemi*, 559 U.S. 1, 14–15 (discussing *Bridge*). In *Bridge*, the Supreme Court emphasized that there were "no independent factors that account for [plaintiffs'] injury, there is no risk of duplicative recoveries by plaintiffs removed at different levels of injury from the violation, and no more immediate victim is better situated to sue." 553 U.S. at 657–58. Only because of these unique circumstances, the *Bridge* Court found that plaintiffs' injury "is the direct result of [defendants'] fraud. It was a foreseeable and natural consequence of [defendants'] scheme to obtain more liens for themselves that other bidders would obtain fewer liens." *Id.*

Page 10 - Plaintiff's Reply ISO MTD Defendant's Counterclaims to Am. Compl.

The counterclaims, by contrast, do not present a zero-sum situation. LegitScript does not allege that, absent PharmacyChecker's accredited pharmacies, consumers looking to purchase prescriptions would "necessarily" have made such purchases from a LegitScript-certified pharmacy. Nor could it. Because the unfortunate reality is that such consumers may simply forego their prescription and not purchase any medicine or, if they do, make such purchases through a pharmacy other than those certified by LegitScript or PharmacyChecker. But worse, unlike plaintiffs in *Bridge*, LegitScript cannot show that there were "no independent factors that account for [its] injury . . . and no more immediate victim is better situated to sue." 553 U.S. at 657–58. Indeed, despite the fact that PharmacyChecker thoroughly addressed these shortcomings in its opening brief, Dkt. 314 at 24–25, LegitScript ignores these points in its opposition.

For its part, the Ninth Circuit's decision in *Painters* also says nothing about the defective causal theory at hand. There, the panel narrowly recognized that, because a third-party physician must prescribe certain medication, that prescription does not break the direct relationship between a defendant's pharmaceutical company's purported fraudulent statements regarding that medication and a plaintiff-third-party payor's payment on behalf of patients for that medication. 943 F.3d at 1257–58. Any other interpretation of this decision would be inconsistent with the Supreme Court's longstanding rules that RICO causal theories (i) generally

should not go beyond the first step,[4] and (ii) should not rely on "independent actions" of non-parties. Dkt. 319 at 24.[5] But LegitScript's alleged causal theory violates both these rules, putting *Painters* beside the point.

As PharmacyChecker explains in its opening brief, LegitScript's causal theory is indistinguishable from that rejected by the Supreme Court in *Anza* and *Hemi*. Indeed, while LegitScript disagrees with the precedential import of *Hemi*'s statement that foreseeability analytics do nothing to satisfy the direct proximate cause requirement, LegitScript makes **no** actual attempt to distinguish that case or *Anza*— thus effectively conceding that both holdings are on point here. That concession makes good sense because, as previously explained, the conduct "directly responsible" for LegitScript's allegedly diminished reputation and lost sales are different than the fraudulent statements LegitScript sues on and, like *Anza*'s lower-priced offers and *Hemi*'s failure by customers to pay taxes, each such direct cause rests on different conduct by different persons. Dkt. 314 at 22–23.[6]

---

4.     *Holmes*, 503 U.S. at 271 ("The general tendency of the law, in regard to damages at least, is not to go beyond the first step.").

5.     *Id.* at 269 ("First, the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors."); *Hemi*, 559 U.S. at 15 ("The City's theory in this case is anything but straightforward: Multiple steps, as we have detailed, separate the alleged fraud from the asserted injury."); *Bridge*, 553 U.S. at 658 ("And here, unlike in *Holmes* and *Anza*, there are no independent factors that account for respondents' injury, there is no risk of duplicative recoveries by plaintiffs removed at different levels of injury from the violation, and no more immediate victim is better situated to sue.").

6.     LegitScript's remaining district court decisions discussed in support of the argument that its alleged causal chain is "sufficiently direct," Dkt. 319 at 25-26, are non-precedential and distinguishable. Worse, LegitScript's parenthetical quote from *Harmoni* discusses a potential amendment to causal theories decidedly insufficient to satisfy RICO's direct proximate cause standard. 914. F.3d at 653–54 ("Nevertheless, as it stands now, Harmoni's complaint does not plausibly allege proximate cause with respect to damages for lost sales or harm to its business reputation (assuming such harm is compensable under RICO)."). These authorities do nothing to salvage LegitScript's

**Third**, LegitScript's *ex post* attempt to recast its causal theory as a "two or three step" inquiry, Dkt. 319 at 26–27, is belied by its counterclaim allegations and common sense. As alleged, consumers must first rely on PharmacyChecker's purported fraud (PharmacyChecker's step 2). *See, e.g.,* Dkt. 299 ¶ 222 ("On information and belief, the False and Deceptive Statements were material to U.S. consumers' (and others') decision to purchase (or to allow such purchase of) foreign pharmaceuticals from the PharmacyChecker-Accredited Pharmacies."). Then, and only then, consumers stop relying on LegitScript's statements and certification (PharmacyChecker's step 3). *See, e.g., id.* ¶ 202(b) ("Deceiving US consumers into believing that importing drugs from foreign pharmacies is safe and legal, regardless of the absence of LegitScript certification of those foreign pharmacies, ***thereby encouraging participation in an alternate and illegal stream of commerce and driving merchants and potential market participants away from LegitScript's products* . . . .") (emphasis added). LegitScript's original decision to allege each event as a discrete step is both logically inescapable and telling: LegitScript's new argument that these steps are one-in-the-same, Dkt. 319 at 26–27, is just a thinly veiled, semantic attempt to tighten its attenuated causal chain.

LegitScript's attempt to collapse PharmacyChecker's step 4 (consumer purchases medicine from an "accredited pharmacy" in violation of U.S. law) with its step 5 (merchant using LegitScript's certification does not obtain the sale) suffers

---

defective theory, which, in any event, must be rejected under the Supreme Court's on point holdings in *Hemi* and *Anza*.

from a similar logical defect. Critically, for LegitScript to show that the purported fraud delegitimized its certification, LegitScript *must* first show that an accredited pharmacy obtained some sale that the LegitScript certified merchant did not. Absent that, LegitScript's theories of harms, that is, lost reputation and, incidentally, sales, simply cannot hold. But even if the Court were to consider LegitScript's newly contrived, three-step causal theory as an accurate recitation of the chain of events linking the alleged fraud to claimed harms, Dkt. 319 at 26–27, that theory, too, would not survive. *Holmes*, 503 U.S. at 271–72 ("The general tendency of the law, in regard to damages at least, is not to go beyond the first step.").

### C.    LegitScript Fails to Plead a Cognizable Enterprise.

While LegitScript summarily asserts that the purported RICO enterprise maintains a common purpose and structure, it fails to provide any detail or otherwise explain the facial implausibility of its allegations.

**No Common Purpose:** LegitScript asserts that "the False Marketing Enterprise shares the common purpose of convincing U.S. consumers (and others) that foreign drug importation is safe and legal and to purchase such drugs." Dkt. 319 at 28. But, as previously explained, that assertion is facially implausible. Dkt. 314 at 26–29. The alleged enterprise includes *every* PharmacyChecker-accredited pharmacy, whether foreign or domestic. *Id.* at 26 (citing Dkt. 299 ¶¶ 163, 166, 170, 192). There is no dispute, though, that domestic pharmacies not only are competing with foreign pharmacies for sales but also that their business interests are diametrically opposed to the supposed shared purpose of facilitating illegal foreign

drug imports. Domestic pharmacies plainly ***do not want foreign drug imports***. LegitScript does not grapple with this fundamental inconsistency. LegitScript's cases (Dkt. 319 at 29) stand for the unremarkable proposition that competitors could, theoretically, share a common purpose. But LegitScript fails to articulate how that could plausibly be the case here when (i) the interests of some members of that enterprise directly (and uncontestably) conflict with that alleged shared purpose ***and*** (ii) LegitScript admits those pharmacies are business competitors.[7] Courts within this Circuit have routinely held that entities with competing interests pursuing ordinary business relationships are not a RICO enterprise (*see* Dkt. 314 at 26–29), and LegitScript's conclusory labels may not permit otherwise.

**No Structure:** LegitScript claims that "the False Marketing Enterprise has sufficient structure because there is coordination between the affiliated pharmacies and through their listing on PharmacyChecker's website." Dkt. 319 at 28–29. LegitScript now appears to tacitly admit that "rimless" hub-and-spoke conspiracies are not actionable enterprises under RICO and there must be "coordination among the spokes." *Id*. at 30; *see also* Dkt. 314 at 30–32. But LegitScript's only allegation of coordination is that pharmacies competitively bid ***against each other*** for placement on PharmacyChecker's website, and then post separate links and prices on that site. Dkt. 319 at 30.

---

7.      LegitScript's argument about the number of links PharmacyChecker provides (Dkt. 319 at 29) is Kafkaesque. According to LegitScript, providing a link to only one pharmacy would be suspicious, so PharmacyChecker linked to multiple pharmacies, which LegitScript claims is somehow also suspicious. Apparently, anything PharmacyChecker does is to be regarded as suspicious. LegitScript is just starting with its conclusion and working backwards.

Page 15 - Plaintiff's Reply ISO MTD Defendant's Counterclaims to Am. Compl.

LegitScript fails to explain how this qualifies as coordination between the pharmacies, providing no detail regarding whether any one pharmacy even knows that another pharmacy is bidding or what its bid is, or made their bids in concert, or ever made any communication with one another whatsoever. And because domestic pharmacies are also competing in this bidding process, LegitScript also fails to explain how pharmacies that are competing with one another for website placement **and** for subsequent sales, many of whom **do not want foreign imports to occur**, are somehow "coordinat[ing]" through this bidding process.[8]

LegitScript also makes the half-hearted argument that "PharmacyChecker and members of the False Marketing Enterprise to respond to and address consumer complaints over incorrect or unmarked medication—a result that demonstrates the success (so to speak) of the common purpose." Dkt. 319 at 31. It is unclear whether this is supposed to represent coordination itself, or evidence of coordination elsewhere, or evidence of common purpose, but in any event, it is left unexplained how PharmacyChecker and one of its pharmacies participating in customer service together shows that the **pharmacies** are coordinating with one another to form the required "rim" of a hub-and-spoke conspiracy.

Taken to its conclusion, LegitScript is essentially asking this Court to adopt a test for structure that would mean **any merchants posting on the same website**

---

8.    LegitScript's argument that bids "fraudulently imply (together with the False and Deceptive Statements) that U.S. consumers can safely and legally purchase those drugs" (Dkt. 319 at 30) makes no sense. By LegitScript's own allegations, the bidding process for placement on PharmacyChecker's website is non-public. Dkt. 299 ¶ 164 ("This bidding system is not disclosed to consumers using the Website."). Accordingly, the placing of bids themselves cannot be a "statement" of anything, much less an adoption of PharmacyChecker's statements.

are "coordinating" and thus in an "enterprise" with one another for RICO purposes. Every single one of the millions of third-party advertisers on Google's advertising platform, for example, would be "coordinating" with each other by mere virtue of bidding for placement in Google's advertising algorithm and posting advertisements, despite never having seen, met, spoken with, or worked with one another, with no regard for whether they each are selling wholly unrelated products or even competing products. Logic and case law dictate this result be rejected.

LegitScript's authorities do not help it. In *In re Insurance Brokerage Antitrust Litigation*, the court held that the plaintiff ***failed*** to plead the required rim of a hub-and-spoke conspiracy for purposes of both its Sherman Act and RICO claims, noting that "one cannot plausibly infer a horizontal agreement among a broker's insurer-partners from the mere fact that each insurer entered into a similar contingent commission agreement with the broker." 618 F.3d 300, 327, 374–76 (3d Cir. 2010). *Cedar Swamp Holdings, Inc. v. Zaman* held similarly, finding no "hub-and-spoke" conspiracy where the participants "appear to have had no relationship to one another, and their actions and involvement in [defendants'] schemes appear to have been isolated and independent." 487 F. Supp. 2d 444, 451 (S.D.N.Y. 2007). And in *In re HomeAdvisor, Inc. Litigation*, the court held a plaintiff could state a RICO claim ***if*** they alleged "Venture defendants communicated with, collaborated with, or otherwise had contact with the other enterprise defendants so as to demonstrate that the Venture defendants worked with the other enterprise members as a unit." 491 F. Supp. 3d 879, 891 (D. Colo. 2020). LegitScript has plainly failed to do so here, and in

fact has only alleged that the "spokes" had contact with the "hub," rather than each other. *See* Dkt. 314 at 30–32.

### D. LegitScript Fails to Allege Racketeering Activity.

In its opening brief, PharmacyChecker showed that most of its purported statements are not actionable, either because they are subjective, or legal opinions. *See id.* at 32–33, 38–41; *see also* § III.B., *infra*. LegitScript does not dispute that characterization of most purported misstatements, instead hyper-focusing on a handful of statements they contend fall outside these buckets. Dkt. 319 at 31–33, 38–42. But for even those cherry-picked statements, LegitScript fails to allege or otherwise identify in its counterclaims any way in which they are linked to their purported harms.

## III. LEGITSCRIPT'S LANHAM ACT CLAIM FAILS AS A MATTER OF LAW.

LegitScript's opposition to the motion to dismiss also confirms that the counterclaims do not plead a viable Lanham Act claim.

### A. LegitScript Still Does Not Explain How and Why It Was Commercially Injured.

LegitScript argues that it is "differently situated" than NABP because PharmacyChecker allegedly competes with LegitScript in "the market for pharmacy accreditation." *Id.* at 36 (quoting S.D.N.Y. Order at 17). But that attempt at distinction is illusory. PharmacyChecker alleged in the New York action that NABP—like LegitScript—is a competitor in online-pharmacy accreditation. *See* Dkt. 82 ¶ 6 ("NABP is a direct competitor of PharmacyChecker.com in the market for

online pharmacy accreditation and information.").[9] The SDNY court nevertheless dismissed NABP's Lanham Act counterclaim for failing to plead cognizable commercial injury. LegitScript offers no basis to depart from that reasoning.

More importantly, LegitScript's own counterclaim eliminates any inference of direct competition. It alleges no overlapping customer, no lost sale, and no gatekeeping relationship diverted from LegitScript to PharmacyChecker. Quite the opposite: LegitScript emphasizes that its business model, its relationships with payment processors and online platforms, and its accreditation service operate in entirely different commercial channels. Its pleadings portray two entities that do not compete for the same buyers and do not sell substitutable products.

Where direct competition is not alleged, *Lexmark* requires a plaintiff to plead a **necessary** and **non-speculative** chain of proximate causation. 572 U.S. at 138–39. Ninth Circuit precedent is equally clear: a plaintiff must plausibly allege "how and why" the defendant's advertising caused buyers to withhold trade from the plaintiff. *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 825–28 (9th Cir. 2011). LegitScript never engages with this requirement. It simply asserts that statements about PharmacyChecker's own accreditation process "attempt to divert sales," Dkt. 319 at 37—but does not explain how that could be so when the counterclaim affirmatively disclaims overlap in customers or services.

---

9.     The operative complaint in S.D.N.Y. is the same as the operative complaint in this case, as they share a common docket through January 26, 2022. *See* Dkts. 219, 225.

Its fallback theory—that "every internet platform that has hired or hires PharmacyChecker" might be a lost customer, Dkt. 319 at 38—is both inconsistent with its own allegations and far too speculative to state proximate cause. The counterclaim never alleges a single diverted customer, and the alleged statements do not reference LegitScript or any LegitScript product.

Absent direct competition, traceable deception, or a non-attenuated causal chain, LegitScript's alleged harm falls outside the Lanham Act's zone of interests and fails as a matter of law.

### B.    LegitScript Alleges Non-Actionable Statements.

#### 1.    Subjective Characterizations Are Not Actionable.

LegitScript does not dispute the governing Ninth Circuit rule: subjective, non-verifiable statements—particularly those framed as qualitative assessments of safety—are not actionable under the Lanham Act. But LegitScript does claim *Mandani v. Volkswagen Group of America, Inc.* "stands only" for the proposition that certain "general claims of safety" cannot form the basis for an actionable express warranty. *Mandani* actually says that general claims of "safety" are "nonactionable puffery" and that "[d]istrict courts within the Ninth Circuit have found that words such as 'reliable' and 'dependable' are inherently vague and general, and therefore are non-actionable, and that words regarding 'safety' and 'fitness for use' are not the unequivocal sorts of statements that can give rise to contractual obligations." No. 17-cv-07287-HSG, 2019 WL 652867, at *4 (N.D. Cal. Feb. 15, 2019). As LegitScript appears to recognize, what makes puffery so is that it is not measurable or verifiable.

*See* Dkt. 319 at 39; *see also Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008) ("[A] statement that is quantifiable, that makes a claim as to the 'specific or absolute characteristics of a product,' may be an actionable statement of fact while a general, subjective claim about a product is non-actionable puffery."). Statements like ordering drugs from international pharmacies is safe "as long as you buy from the safest international online pharmacies" and that PharmacyChecker's verified pharmacies are "exceedingly safe" are general, subjective claims and therefore puffery. *Mandani* confirms that generalized claims of safety, reliability, or trustworthiness are classic puffery because they cannot be measured or disproved. 2019 WL 652867, at *4. That principle applies with full force here. Statements that a pharmacy is "safe," or that particular foreign pharmacies are "exceedingly safe" are not framed as quantitative, comparative claims; they are the kind of qualitative judgments that courts consistently treat as non-actionable.

LegitScript's attempt to distinguish *Southland Sod* likewise misfires. The actionable claims in Southland were concrete, test-based, and measurable ("50% less mowing"), not generalized descriptions of quality. 108 F.3d at 1137. Nothing in LegitScript's counterclaim resembles that kind of measurable, verifiable assertion.

### 2.    Legal Opinions Are Not Actionable.

LegitScript's theory also rests on statements about what U.S. law "permits," whether FDA enforcement is "rare," and whether personal importation falls within specific statutory exceptions. These are paradigmatic statements of legal interpretation. As the Ninth Circuit held in *Coastal Abstract Service, Inc. v. First*

*American Title Insurance. Co.*, "[a]bsent a clear and unambiguous ruling from a court or agency of competent jurisdiction, statements by laypersons that purport to interpret the meaning of a statute or regulation are opinion statements, and not statements of fact." 173 F.3d 725, 731 (9th Cir. 1999). LegitScript's opposition never identifies any contrary rule. LegitScript also mischaracterizes the statutes it cites, suggesting—incorrectly—that imported drugs are necessarily adulterated, misbranded, or unapproved.

Because the purported misstatements are either subjective characterizations or legal interpretations, they are not actionable as a matter of law.

## IV. AMENDMENT WOULD BE FUTILE, SO DISMISSAL SHOULD BE WITH PREJUDICE.

Numerous aspects of LegitScript's Counterclaim suffer from defects that—as a structural matter—cannot be cured by amendment. On these grounds, the Court should dismiss the counterclaim with prejudice.

***First***, LegitScript's claims for lost customers and damaged reputation are not, as a matter of law, recoverable under RICO. *See* § II.A., *supra*. No additional amount of detail will change that shortcoming. Thus, at least with respect to these alleged theories of harms, the Court should dismiss the RICO claim with prejudice.

***Second***, LegitScript cannot cure the flaws in its causal theory. *See* § II.B., *supra*. The chain of events underlying that theory is a raw fact. The Court need not go through another round of motion practice to again decide whether some recast version of these events—however spun or tortured—tightens a causal chain that, by LegitScript's own construction, will always comprise at least three steps. Because no

Page 22 - Plaintiff's Reply ISO MTD Defendant's Counterclaims to Am. Compl.

credible amendment consistent with LegitScript's initial counterclaim allegations could shorten the attenuation inherent in that theory, the Court should dismiss the RICO claim in its entirety with prejudice.

**Third**, LegitScript cannot cure the flaws in its alleged enterprise. *See* § II.C., *supra*. Even if LegitScript excludes domestic pharmacies from its enterprise definition, it fails to offer any reason to suggest that it could allege the requisite coordination between each of the foreign pharmacies to satisfy the structure requirement of an enterprise, providing yet another ground for the Court to dismiss the RICO claim in its entirety with prejudice.

**Fourth**, amendment cannot cure the structural defects in LegitScript's Lanham Act claim. It alleges it does not directly compete with PharmacyChecker, the challenged statements are non-actionable and do not reference LegitScript, and its alleged harm depends on a speculative multi-step causal chain far too attenuated to satisfy *Lexmark*. These are inherent structural defects in the claim, not factual holes that can be filled by amendment.

## CONCLUSION

For these reasons and those articulated in its motion (Dkt. 314), Plaintiff's Motion to Dismiss Defendant's Counterclaims to Amended Complaint should be granted.

Dated: November 14, 2025                Respectfully submitted,

    */s/ Aaron Gott*

Aaron Gott (admitted *pro hac vice*)
aaron.gott@bonalawpc.com
BONA LAW PC

Page 23 - Plaintiff's Reply ISO MTD Defendant's Counterclaims to Am. Compl.

331 2nd Avenue South, Suite 420
Minneapolis, MN 55401
Telephone: (612) 968-7758

James Lerner (admitted *pro hac vice*)
james.lerner@bonalawpc.com
Aaron Lawrence (admitted *pro hac vice*)
aaron.lawrence@bonalawpc.com
BONA LAW PC
16 Madison Square Park West
9th Floor
New York, NY 10010
Telephone: (212) 634-6861

Philip S. Van Der Weele, OSB #863650
phil.vanderweele@klgates.com
K&L GATES LLP
One SW Columbia Street, Suite 1900
Portland, Oregon 97204
Telephone: (503) 228-3200

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of November, 2025, the above Plaintiff's Reply in Support of Motion to Dismiss Defendant's Counterclaims to Amended Complaint was filed electronically with the Clerk of the Court using the CM/ECF system which will send a notification of such filing to all counsel of record here.

By: /s/ *Aaron Gott*
Aaron Gott (admitted *phv*)
Bona Law PC
331 Second Avenue South,
Suite 420
Minneapolis, MN 55401
aaron.gott@bonalawpc.com
(612) 284-5001

Page 1-   CERTIFICATE OF SERVICE